**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

NABRICO Marine Products, Inc.

      Plaintiff,

v.

W. W. Patterson Company,

      Defendant.

-------------------------------------------------------------

Case No. 2:26-cv-1657

**Jury Trial Demanded**

<u>**COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff NABRICO Marine Products, Inc., f/k/a Arcosa Marine Products, Inc. ("NABRICO" or "Plaintiff") alleges as follows for its Complaint against Defendant W. W. Patterson Company ("Patterson" or "Defendant"):

## PARTIES

1.      Plaintiff NABRICO is a Delaware corporation having its principal place of business in Covington, Louisiana.

2.      Defendant Patterson is a Pennsylvania corporation having its principal place of business in Pittsburgh, Pennsylvania.

## JURISDICTION AND VENUE

3.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271, which gives rise to the remedies specified under 35 U.S.C. §§154(d), 281, and 283-285.

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

5.      This Court has personal jurisdiction over Patterson because, upon information and belief, Patterson conducts substantial business in this Commonwealth and maintains a regular and established place of business in the Commonwealth which is located at 870 Riversea Road Pittsburgh, Pennsylvania.

6.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because Patterson resides in this District in that it is subject to personal jurisdiction in this District and because Patterson offers to sell infringing products in this District and maintains a regular and established place of business located within the District.

1

## FACTUAL ALLEGATIONS

7.    Defendant Patterson is a direct competitor of NABRICO in the barge winch and marine hardware industry. In May 2026, at an industry trade show, Patterson debuted a new winch design that is nearly identical to NABRICO's FASST Winder Winch design and directly infringes on NABRICO's patents.   Alarmingly, NABRICO has also recently learned that Patterson approached an existing NABRICO customer and offered a different copycat winch that incorporates NABRICO's patented FASST Winder Winch design. As a result, the customer has cancelled, or at a minimum postponed, a substantial order with NABRICO for the FASST Winder Winch, to evaluate Patterson's offer.   Immediate injunctive relief is necessary to address the irreparable harm caused by Patterson's infringement.

8.    NABRICO is a leading manufacturer of barges, winches, and marine hardware used to transport cargo on U.S. inland waterways. Founded in 1902, NABRICO has shaped marine manufacturing for over a century and has often set the industry standard for safety and innovation. NABRICO operates from six facilities across the U.S. inland waterways.

9.    In recognition of its innovation in the industry, NABRICO has applied for and obtained numerous patents directed at barge manufacture, maintenance, and marine hardware, including the patents at issue in this action which are directed to innovative winches.

10.    There are predominantly two types of barges in U.S. inland waterways: tank barges, which are primarily designed to store and transport gas and petroleum products; and hopper barges, which are primarily designed to store and transport grain.

11.    The barge industry uses winches to connect barges to each other in a barge tow and to connect the barge tow to a tow vessel. Barges often have to be disconnected and reconnected multiple times in a single trip to get past canal locks and often are operated in inclement weather

such as rain or excessive heat. Tank barges and hopper barges require different winches due to the weight of the barges and the water conditions the respective barges navigate.

12.    In a typical barge winch, a geared drive mechanism typically rotates a winch drum to spool a wire line around the winch drum. As the drive mechanism rotates the winch drum, a winch locking gear, such as a pawl and ratchet gear, maintains tension on the winch line by preventing the winch drum from rotating in the opposite direction.

13.    Conventional manual winches used two different methods to increase leverage to turn the drive mechanism: (1) a large spoked handwheel or (2) a ratchet extension bar – an extender bar attached to the pull lever often called a "Johnny bar" or a cheater bar.  Both options have marked downsides.

14.    The spoked handwheel is bulky, takes up deck space, and has an increased risk of injuries to the operator if their arm or leg becomes stuck in the spokes of the wheel as they are turning it.

15.    The ratchet extension bar has to be manually attached to each winch and then stowed between uses. The bar itself is heavy and can be lost in between uses. Moreover, the improper motion or use of the ratchet extension bar can cause operators to overextend and suffer serious injury, which can lead to increased liability to the barge company.

16.    In order to improve safety, NABRICO expended significant resources and years in research and development to create and improve the FASST (Fast, Accessible, Safe, Secure, Tensioning) Winder Winch, which is an innovative barge winch that quickly became the new standard for safety in the market.

17.    Rather than using a conventional single ratchet handle, the FASST Winder Winch incorporates both a hand lever and a foot pedal to maximize return on energy, harnessing the

3

unused power of the operator's arms and legs, as well as gravity. The result is a winch that takes the stress off the operator's back and shoulders by engaging the leg muscles in the process.

18.     The FASST Winder Winch's innovative new design allows for more than a 50 percent reduction in force required to operate the winch, allows four times less back stress, and reduces shoulder stress by half, when compared to the previous ratchet models.

19.     NABRICO introduced the FASST Winder Winch to address both barge types— tank barges and hopper barges.  NABRICO has incorporated the FASST Winder Winch into four separate product lines: the DF-356 and EX-40 (designed for use by tank barges), and the DF-629 and FASST40 (designed for use by hopper barges).



Figure 1. NABRICO's DF-356 for tank barges (left) and FASST 40 for hopper barges (right) lines of FASST Winder Winches

20.     Since 2017, NABRICO has been selling the FASST Winder Winch and enjoyed critical acclaim for its innovative improvement to safety and efficiency and commercial success for its improved winch system.

21.     In the inland and intercoastal marine industry, sales of barge winches can establish long-term relationships with customers which results in future potential revenue – including

revenue from repairs, sales of other marine hardware such as hatches and castings, and sales of additional winches for newly built barges.

22.    For example, in 2017, Tidewater Barge Lines Inc., ("Tidewater") which has purchased NABRICO products since the 1960s, reached out to NABRICO as part of an effort to update the winches used on its entire fleet of barges. Initially, Tidewater ordered a few FASST Winder Winches per year to assess them.  In 2024, Tidewater selected NABRICO's FASST Winder Winches to update its fleet, purchasing a substantial number of DF-356 FASST Winder Winches from NABRICO, designed for tank barges. In May 2026, Tidewater further indicated it would place another even larger order of FASST Winder Winches to complete its replacement of all the winches on its fleet.

## THE PATENTS IN-SUIT

23.    Clint Bryan and Arnold Peek (collectively, the "Inventors") are the inventors of a variety of winches and improvements that comprise the FASST Winder Winch which have resulted in numerous issued patents.

24.    Figure 1 of U.S. Patent No. 10,752,476 provides an example of the improved winch that allows operators to pull the upper winch arm with one or both of the operator's hands and push down on the lower winch arm with the operator's foot:



FIG. 1

5

25.    On August 25, 2020, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 10,752,476 ("the '476 patent") entitled "WINCH TIGHTENING MECHANISM" to Arcosa, Inc. A true and correct copy of the '476 patent is attached to this Complaint as Exhibit A.

26.    NABRICO owns the entire right, title, and interest in and to the '476 patent, including the right to seek damages for past and ongoing infringement and to pursue preliminary and permanent injunctive relief.

27.    Claim 1 of the '476 patent recites an example of NABRICO'S innovative winch, stating:

*1. a winch apparatus comprising:*

*a winch housing;*

*a winch drum rotationally coupled to the winch housing by a draft shaft;*

*a ratchet gear coupled to the drive shaft for rotating the winch drum;*

*a mounting plate rotationally coupled to the drive shaft;*

*a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;*

*a pawl pivotally coupled to the mounting plate that engages the ratchet gear via the mounting plate when rotated in a first direction and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction; and*

*a counterweight coupled to the mounting plate positioned to rotate the mounting plate in a second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position.*

28.    On March 5, 2024, the USPTO issued U.S. Patent No. 11,919,753 ("the '753 patent") entitled "WINCH TIGHTENING MECHANISM" to Arcosa Marine Products, Inc., a continuation of the patent application which resulted in the'476 patent. A true and correct copy of the '753 patent is attached to this Complaint as Exhibit B.

29.   NABRICO owns the entire right, title, and interest in and to the '753 patent, including the right to seek damages for past and ongoing infringement and to pursue preliminary and permanent injunctive relief.

30.   Claim 1 of the '753 patent recites an example of NABRICO'S innovative winch, stating:

*1. a winch apparatus comprising,*

*a winch housing;*

*a winch drum rotationally coupled to the winch housing by a draft shaft;*

*a ratchet gear coupled to the drive shaft for rotating the winch drum;*

*a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft;*

*a pawl coupled to the drive shaft that engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and*

*a counterweight coupled to the drive shaft the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.*

## PATTERSON'S INFRINGING ACTIVITY

31.   Patterson manufactures winches and marine hardware. The marine hardware and winch market is effectively a two-competitor market comprising NABRICO and Patterson such that Patterson is effectively NABRICO's only competitor in the market.

32.   Both NABRICO and Patterson typically participate in a yearly exposition known as the Inland Marine Expo ("IMX") held by the inland and intercoastal marine industry.  In 2026, IMX was held in Nashville, Tennessee from May 27 to May 29.

33.   At the 2026 IMX trade show, Patterson debuted a winch strikingly similar, if not identical, to NABRICO's patented FASST Winder Winch, designed for hopper barges:



Figure 2. Patterson's winch debuted at the 2026 IMX trade show (left) and NABRICO's FASST 40 Winder Winch (right).

34.    In 2024, Tidewater selected NABRICO's FASST Winder Winches to update its barge fleet, purchasing a substantial number of DF-356 FASST Winder Winches from NABRICO, designed for tank barges. In May 2026, Tidewater further indicated it would place another even larger order of FASST Winder Winches to complete its replacement of all the winches on its fleet.

35.    Approximately a month after IMX, on June 26, 2026, Tidewater informed NABRICO that Patterson had offered to sell them a new winch – a tank barge winch which incorporates NABRICO's patented hand lever and foot pedal design, similar to NABRICO's DF-356.

36.    As a result of Patterson's offer, Tidewater has put on hold its decision to purchase additional NABRICO FASST Winder Winches as it gets price quotes and evaluates Patterson's winch.

37.    Patterson has thus introduced and offered for sale tanker and hopper barge winches—the entire market NABRICO serves—which incorporate NABRICO's patented hand

lever and foot pedal design. Patterson's introduction of winches using NABRICO's patented hand lever and foot pedal design has already resulted in a substantial order of NABRICO's FASST Winder Winch to be cancelled, or at a minimum postponed. As winches create a long-term relationship between the manufacturer and the barge operators, any lost sales of winches could result in over a decade of lost sales, including repairs and convoyed sales.

38.    From 2019 through September 2022, Erik Arlet was employed by NABRICO as a Sales Manager responsible for sales of marine equipment including FASST Winder Winches. As part of his duties, Mr. Arlet made many sales calls to Tidewater on behalf of NABRICO including for sales of the FASST Winder Winches.

39.    In September 2022, Mr. Arlet left NABRICO and immediately began working for Patterson. On information and belief, Patterson has been on notice of the FASST Winder Winches and patents-in-suit since at least September 2022.

## CAUSES OF ACTION
### COUNT I
(U.S. Patent No. 10,752,476)

40.    Plaintiff realleges and incorporates by reference the preceding paragraphs in this Complaint as though fully set forth herein.

41.    Patterson has infringed and continues to infringe directly, by inducement, and/or contributorily by, without permission or authority from Plaintiff, manufacturing, using, selling, offering to sell, or importing winches embodying one or more claims of the '476 patent. Attached as Exhibit C is the Declaration of Andrew Smith, including a claim chart detailing Patterson's infringement of the '476 patent based on photographs from the 2026 IMX trade show.

42.    Patterson has and has had actual notice and/or constructive notice of the '476 patent under 35 U.S.C. § 287(a).

9

43.     Patterson knew of or has been willfully blind to the existence the '476 patent and the fact that its actions would induce or contribute to direct infringement by its customers of the '476 patent and intended that its action would induce and contribute to such direct infringement.

44.     In committing these acts of infringement, Patterson has acted recklessly and willfully with regard to Plaintiff's rights in the '476 patent.

45.     Patterson's acts of willful infringement of the '476 patent will continue as alleged in this Complaint unless enjoined by the Court.

46.     As a direct and proximate cause of Patterson's willful infringement of the '476 patent, Plaintiff has suffered and will continue to suffer monetary damages and Plaintiff is entitled to a monetary judgment in an amount adequate to compensate it for Patterson's infringement to be determined at trial, together with enhanced damages, attorneys' fees, interest and costs.

47.     Plaintiff has suffered irreparable harm as a result of Patterson's willful infringement of the '476 patent.

48.     Unless Patterson is enjoined by this Court from continuing its willful infringement of the '476 patent, Plaintiff will continue to suffer irreparable harm and impairment of the value of its patent rights. Thus, Plaintiff is entitled to a preliminary and permanent injunction against further infringement.

## COUNT II
(U.S. Patent No. 11,919,753)

49.     Plaintiff realleges and incorporates by reference the preceding paragraphs in this Complaint as though fully set forth herein.

50.     Patterson has infringed and continues to infringe directly, by inducement, and/or contributorily by, without permission or authority from Plaintiff, manufacturing, using, selling, offering to sell, or importing winches embodying one or more claims of the '753 patent. Attached

as Exhibit C is the Declaration of Andrew Smith, including a claim chart detailing Patterson's infringement of the '753 patent based on photographs from the 2026 IMX trade show.

51. Patterson has and has had actual notice and/or constructive notice of the '753 patent under 35 U.S.C. § 287(a).

52. Patterson knew of or has been willfully blind to the existence the '753 patent and the fact that its actions would induce or contribute to direct infringement by its customers of the '753 patent and intended that its action would induce and contribute to such direct infringement.

53. In committing these acts of infringement, Patterson has acted recklessly and willfully with regard to Plaintiff's rights in the '753 patent.

54. Patterson's acts of willful infringement of the '753 patent will continue as alleged in this Complaint unless enjoined by the Court.

55. As a direct and proximate cause of Patterson's willful infringement of the '753 patent, Plaintiff has suffered and will continue to suffer monetary damages and Plaintiff is entitled to a monetary judgment in an amount adequate to compensate it for Patterson's infringement to be determined at trial, together with enhanced damages, attorneys' fees, interest and costs.

56. Plaintiff has suffered irreparable harm as a result of Patterson's willful infringement of the '753 patent.

57. Unless Patterson is enjoined by this Court from continuing its willful infringement of the '753 patent, Plaintiff will continue to suffer irreparable harm and impairment of the value of its patent rights. Thus, Plaintiff is entitled to a preliminary and permanent injunction against further infringement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff NABRICO prays for judgment against Patterson, as follows:

11

1. For judgment that Patterson has directly infringed the '476 patent and the '753 patent;

2. For judgment that Patterson has indirectly infringed the '476 patent and the '753 patent;

3. For profits and damages resulting from Patterson's past and present infringement of the '476 patent and the '753 patent;

4. For injunctive relief, preliminary and permanently enjoining against the continuing infringement of the '476 patent and the '753 patent by Patterson, its officers, agents, servants, employees, affiliates, successors, assigns, subsidiaries, aliases, parent companies, and those persons acting in active concert or in participation with it, under 35 U.S.C. § 283;

5. For increased damages, interests, and costs under 35 U.S.C. § 284;

6. For judgment that this is an exceptional case under 35 U.S.C. § 285;

7. For an award of reasonable attorneys' fees under 35 U.S.C. § 285;

8. For costs and disbursements incurred by Plaintiff;

9. For an assessment of pre-judgment and post-judgment interest at the maximum rate allowed by law; and

10. For any other and further relief as the Court deems just and proper.

12

## JURY TRIAL DEMANDED

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues that are triable by a jury.

Dated: August 6, 2026                    Respectfully submitted,


                                         */s/ Christopher M. Verdini*
                                         Patrick J. McElhinny (Pa. ID 53510)
                                         Christopher M. Verdini (Pa. ID 93245)
                                         Rachel Ellenberger (Pa. ID 329132)
                                         K&L Gates LLP
                                         K&L Gates Center
                                         210 Sixth Avenue
                                         Pittsburgh, PA 15222
                                         Telephone: (412) 355-6500
                                         patrick.mcelhinny@klgates.com
                                         christopher.verdini@klgates.com

                                         Douglas Sawyer (*pro hac vice forthcoming*)
                                         John Cotiguala (*pro hac vice forthcoming*)
                                         Devon Holthaus (*pro hac vice forthcoming*)
                                         **PAUL HASTINGS LLP**
                                         71 S Wacker Drive, Suite 4500
                                         Chicago, IL, 60606

                                         Boris Lubarsky (*pro hac vice forthcoming*)
                                         **PAUL HASTINGS LLP**
                                         1117 S California Ave
                                         Palo Alto, CA, 94304

                                         *Attorneys for Plaintiff NABRICO Marine
                                         Products, Inc.*

13