# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NABRICO Marine Products, Inc.

      Plaintiff,

v.

W. W. Patterson Company,

      Defendant.

-----------------------------------------------------------

Case No. 2:26-cv-1657

## DECLARATION OF ANDREW W. SMITH, PH.D., P.E.

2606003.000 - 3327

I, Andrew W. Smith, Ph.D., P.E, being over the age of 18 and competent to make the statements herein, hereby declare the following:

1.  Exponent, Inc. ("Exponent") was retained by counsel for Nabrico Marine Products, Inc. f/k/a/ Arcosa Marine Products, Inc. (herein, "Nabrico") to provide technical services relating to U.S. Patent Nos. 10,752,476 ("the '476 Patent") and 11,919,753 ("the '753 Patent"), both titled "Winch Tightening Mechanism," collectively "the Asserted Patents."

2.  Specifically, I have been asked to review the Asserted Patents, as well as their prosecution histories, and to determine whether a certain marine winch ("the Accused Product") manufactured by Patterson Manufacturing ("Patterson") practices each and every limitation of claims 1, and 3-5 of the '476 Patent and claims 1, 3, and 4 of the '753 Patent (collectively, "the Asserted Claims") as they would have been understood by a person of ordinary skill in the art.

## I.    BACKGROUND, EXPERIENCE, AND QUALIFICATIONS

3.  I am a salaried employee of Exponent, Inc. ("Exponent"). With over 900 employees, approximately 600 of whom hold doctorates in their field of science and engineering, Exponent is the largest engineering and scientific firm in the nation dedicated primarily to the analysis of problems of an engineering or scientific nature. Exponent has significant experience in intellectual property (IP) and patent issues. Many of the staff are named inventors on patents. In addition, Exponent regularly provides consulting services regarding patent claim construction, infringement analysis, invalidity analysis, and patent valuation to attorneys, investors, manufacturers, and government entities. Exponent staff have provided laboratory testing, technical reports, and sworn testimony in thousands of IP-related matters since Exponent's founding in 1967.

1

4. I am a Principal Engineer based in Exponent's Chicago, Illinois, office where I have worked in the mechanical engineering practice since 2017. During this time, I have developed extensive experience investigating the mechanical design and performance of machinery and equipment used in a variety of contexts such as manufacturing, agriculture, fabrication, construction, and the oil and gas industry. I have provided analysis and testimony in disputes pertaining to the mechanical design of a wide range of specialized equipment, including, but not limited to, metal fabrication machinery, drilling equipment, construction tools, packaging tools, industrial mixers and molders, food processing equipment, material bagging and conveying systems, and pressurized connections used in the oil, gas, and chemical manufacturing industry.

5. I am a mechanical engineer holding a Professional Engineer license in California and Texas. I hold three academic degrees: a B.A. in astrophysics from the University of California at Berkeley, an M.Sc. in particle physics from Durham University, and a Ph.D. in experimental astrophysics from Leeds University. My CV is attached to this declaration as Exhibit A and a list of all matters in which I have offered testimony in the last four years is attached as Exhibit B.

6. In forming my opinions set forth herein, I have relied upon my education, knowledge of mechanical engineering, and professional experience. In preparing this declaration, I have reviewed and am familiar with the following:

- U.S. Patent No. 10,752,476 ("the '476 Patent") (Exhibit C), as well as the prosecution history of the '476 Patent (Exhibit D).

- U.S. Patent No. 11,919,753 ("the '753 Patent") (Exhibit E), as well as the prosecution history of the '753 Patent (Exhibit F).

2

2606003.000 - 3327

- Various photographs of the Accused Product (Exhibit G).

7. Exponent charges an hourly rate of $550 for my work performed in connection with this matter in 2026.[1] I have received no additional compensation for my work in this matter, and my compensation does not depend on the contents of this declaration, any testimony I may provide, or the ultimate outcome of this dispute.

8. This declaration contains a statement of the opinions that I have formed to date and provides the bases and reasons for my opinions. I reserve the right to modify or supplement my opinions, as well as the bases for my opinions, based on further review of materials, including the opinions and/or testimony of other expert witnesses.

9. The opinions formulated during this assessment are based on my education, career, relevant experiences, and materials reviewed. If called upon to testify, I could and would provide testimony about the substance, contents, reasons, and bases for the statements and opinions in this report.

## II.    UNDERSTANDING OF THE LAW

10. I am not an attorney, but I have been advised of the following principles of law to be considered in formulating my opinions:

### A.    Ordinary Skill in the Art

11. I am informed that in patent law many issues are assessed from the perspective of "a person of ordinary skill in the art." I understand that the term "art" refers to the field to which the subject matter of the claims of the patent relates.

---

[1] This same rate applies to all the work I perform at Exponent in 2026, regardless of the type of work or the client. My rate is modified annually on or about January 1.

2606003.000 - 3327

12. I am informed that the person of ordinary skill in the art is a hypothetical person working in the field at the time of the invention. I understand that the factors that may be considered in determining the level of ordinary skill in the art include the: (i) educational level of the inventor; (ii) type of problems encountered in the art; (iii) prior art solutions to those problems; (iv) rapidity with which innovations are made; (v) sophistication of the technology; and (vi) educational level of active workers in the field. I understand that in a given case, every factor may not be present, and one or more factors may predominate.

### B.    Patent Claims

13. I understand that the claims of a patent are the numbered paragraphs at the end of the patent that define in words the legal scope of the patent rights. Each claim defines a separate invention.

14. I understand that a claim is a single sentence that contains all of the features that are required to practice the invention as claimed. A typical claim consists of a preamble, a transition phrase such as "comprising," and a body.

15. I understand that the preamble of a claim is an introductory phrase that may summarize the invention, its relation to the prior art, or its intended use. The preamble must be read in the context of the entire claim, and whether the preamble limits the claim can only be resolved upon a review of the entirety of the record to gain an understanding of what the inventors actually invented and intended to encompass by the claim. However, when the preamble recites essential structures or steps that are necessary to give life, meaning, and vitality to the claim, the preamble is a limitation of the claim.

16. I understand that the transition phrase "comprising" means "including" or "having." In other words, a claim reciting the transition phrase "comprising" reads on any apparatus or method, as the case may be, that includes at least the features recited in the body of the claim. In general,

4

a claim is not avoided by an apparatus or method having more features than recited in the body of the claim.

17. I understand that each of the features recited in the body of the claim is referred to as an "element" or a "limitation" of the claim. I will refer to these claim features as claim elements. Generally, all claim elements are required for a claim to read on an apparatus or method.

18. I understand that before considering the issue of infringement, it is important to first determine how the words of a claim should be interpreted. I am told that the process of interpreting patent claims is also referred to as "claim construction."

19. I understand that in district court proceedings, claims should be construed according to the "ordinary and customary meaning" standard. This means that claims should be analyzed from the perspective of a person of ordinary skill as of the effective filing date of the patent application, and that terms of the claims should be interpreted according to their ordinary and customary meaning, as understood by a person of ordinary skill, in the context of the patent under consideration.

### C. Infringement Analysis

20. I understand that there are two basic forms of direct infringement: literal infringement and infringement under the doctrine of equivalents.

21. I understand that an accused product or process literally infringes an asserted patent claim if it comes precisely within the terms of an asserted patent claim.

22. I understand that an accused product or process infringes an asserted patent claim under the doctrine of equivalents if the differences between the patent claim and the accused product are merely insubstantial. I understand that an infringement analysis under the doctrine of equivalents proceeds element-by element; a generalized showing of equivalency between the claim as a whole and the allegedly infringing product or process is not sufficient to show

5

infringement. I understand that one test for equivalency is the "function-way-result" or "triple identity" test, whereby the patentee may show equivalency when the accused product or device performs substantially the same function, in substantially the same way, to achieve substantially the same result, as defined in the claim. Infringement can be found under the doctrine of equivalents when only insubstantial differences exist between the words of the claim and the manner of operation of the accused product.

23. I understand that direct patent infringement, both literal and under the doctrine of equivalents, is a two-step process comprising: (1) interpretation of the patent claims; and (2) comparison of the properly interpreted claims with the accused product.

24. I understand that the second step of the patent infringement analysis requires an application of each element of the properly construed claim to the accused product or method. Infringement may only be present if each claim element is found in the accused product or process, either literally or equivalently. I also understand that this comparison must be performed on an element-by-element basis. I understand that this means that it is inappropriate to compare the claims and the accused device as a whole. Because each element of a patent claim is material, if even a single element is not found in an accused product or process (either literally or equivalently), then there cannot be infringement.

## III.    ANALYSIS

### A.    The '476 and '753 Patents

25. U.S. Patent No. 10,752,476, titled "Winch Tightening Mechanism," was issued August 25, 2020 and U.S. Patent No. 11,919,753, also titled "Winch Tightening Mechanism," was issued on March 5, 2024.

26. I have reviewed the figures, specifications, claims, and respective file histories of both of the '476 and '753 Patents.

27. The '476 and '753 Patents share the same named inventors (Clint Bryan and Arnold Peek), as well as the same figures and specifications. Within this declaration, when citing the specifications of both the '476 and '753 Patents I will solely use citations to the '476 Patent for convenience.

28. Both of the Asserted Patents teach to the field of marine winches, which are well known devices for "tensioning and paying out wire line or rope,"[2] see Illustration 1. Winches can be used for a variety of purposes in the maritime industry such as "assist[ing] with tasks such as loading or unloading cargo or connecting two vessels together"[3] or used by marine vessels to, e.g., "maintain their position in relation to a mooring structure, such as a dock, by using winches."[4]

---

[2] '476 Patent, 1:18-24.

[3] *Id.*

[4] *Id.*

2606003.000 - 3327



Illustration 1:    Annotated Figure 1 from the Asserted Patents showing an example of a marine winch. As can be seen, the wire is stored within the winch on a cylindrical drum and retracted or paid out via the use of a geared drive mechanism discussed in the text, portions of which can be seen above.

29. As described in the Asserted Patents, winches generally function by having "a geared drive mechanism [that] typically rotates a winch drum to spool a wire line around the winch drum."[5] See Illustration 1.

30. The geared drive mechanism to tighten the wire around the drum in a winch generally consists of a "hand wheel or bar shaped handle to turn the drive mechanism"[6] connected to a drive shaft, see Illustration 2. This drive shaft is indirectly connected, via a system of gears, to the winch drum; these gears serve to amplify the torque provided by the user in tensioning the wire as it is wrapped around the winch drum.

---

[5] '476 Patent, 1:39-41.

[6] '476 Patent, 1:44-46.

2606003.000 - 3327



FIG. 1

Illustration 2:    Annotated Figure 1 from the Asserted Patents showing components of a typical manual powered winch including a hand wheel/handle used to rotate the drive shaft (blue) and associated drive mechanism in order to tension a wire wrapped around a winch drum (green).

31. The Asserted Patents disclose embodiments of a manual winch that "provide ergonomic benefits to the winch operator which can reduce injury."[7] For example, the Asserted Patents teach that prior art winches typically use a closed handwheel for tensioning,[8] which can present safety (including ergonomic) hazards. To reduce these hazards, the Asserted Patents disclose embodiments wherein the winch wire is tightened through the use of two moment arms (upper arm 32 and lower arm 34, see Illustration 3) to provide the torque for tensioning:

> "The operator may pull upper arm 32 with one or both hands and may push down on lower arm 34 with a foot. The couple created by upper arm 32 and lower arm 34 is able to generate more winch line tension than closed handwheel 26 can generate. The additional leverage provides the same advantages as a large spoked handwheel or a pipe extension, without the safety disadvantages. For example, the compact and ergonomic position of upper arm 32 and lower arm 34 facilitate an operator exerting considerable force without risk or over extension and injury. An operator may use both hands and feet on at least two leverage points."[9]

---

[7] '476 Patent, 5:33-35.

[8] See, e.g., '476 Patent, 1:44-2:3.

[9] '476 Patent, 6:2-16.

9

See Illustration 3.



Illustration 3:    Annotated Figure 1 from the Asserted Patents identifying the first and second moment arms which provide ergonomic benefits for a user in applying a tension to the winch wire as described in the text.

32. As described above, the Asserted Patents disclose mechanisms for converting user-supplied torque into the ability to tension a wire around a winch drum. Due to the significant tension placed on the wire by the winch apparatus, a mechanism by which the wire can be tightened while reducing the possibility of lost tension (and the associated slipping of the wire) is necessary. To accomplish this, many common manual-powered winches also typically include a ratchet and pawl mechanism, which is a mechanical device that allows a rotational system to be driven in one direction (rotationally) but not the other, see Illustration 4. These systems are typically configured with a shaft rotatably coupled to a ratchet gear, a "driving" pawl (to rotate a ratchet gear during a "power stroke"[10]) and a "locking pawl", to lock the rotation of the ratchet gear in place after the power stroke, see Illustration 4.

---

[10]  E.g., a rotation of mechanical elements so as to provide tensioning.

2606003.000 - 3327





Illustration 4:   An example of a ratchet and pawl mechanism which consist of a ratchet gear directly coupled to a shaft, a driving pawl (capable of translating left and right to rotate the ratchet gear) and a driving pawl (configured to rotate in place to lock the teeth of the ratchet gear). The bottom panel shows an example of a power stroke of this mechanism. At steps (A)-(B) the driving pawl engages with a tooth (shaded) and advances to the left, rotating the ratchet gear and the locking pawl slides up and along a tooth (shaded). Shown in steps (C)-(D), as the locking pawl "clicks" into the next tooth, the driving pawl retracts and slides along an adjacent tooth until it clicks into engagement with another tooth and is ready for another power stroke.

33. Within winches, ratchet and pawl mechanisms can allow a user to drive the system in one direction, or to lock the system from rotating in the opposite direction, or both. For example, "A[s] the drive mechanism rotates the winch drum, a winch locking gear, such as a pawl and ratchet gear, maintains tension on the winch line by preventing the winch drum from rotating in the opposite direction,"[11] and "To finish tightening the winch to [a] desired line tension, the winch operator may attempt to rotate the winch by a few more teeth of the winch locking gear."[12] Accordingly, the use of a ratchet and pawl mechanism for tightening a manual winch can allow for discrete tightening steps, while preventing the system from rotating backwards (or loosening the wire).

34. For example, as shown in Illustration 5, the Asserted Patents disclose embodiments of a manual powered winch with at least one ratchet and (driving) pawl mechanism used for tightening the wire. During a power stroke "A winch operator may rotate winch tightening apparatus 30 using upper arm 32 and lower arm 34 to engage the pawl with ratchet gear 50 and rotate drive shaft 24."[13]

---

[11] '476 Patent, 1:41-44.

[12] '476 Patent, 1:53-56.

[13] '476 Patent, 6:45-47.

2606003.000 - 3327



Illustration 5:    Annotated figures 10a and 2a from the Asserted Patents showing a ratchet and pawl system configured to drive the tightening of a winch wire. During a power stroke (i.e. tightening action), the structure hosting the pawl (e.g. a mounting plate) is rotated clockwise by a user forcing the driving pawl (red) into engagement with a ratchet gear (light blue) and rotating the ratchet gear and drive shaft (dark blue).

35. Therefore, the Asserted Patents generally disclose novel combinations of ratchet and pawl mechanisms capable of driving a winch mechanism to tension a cable. These ratchet and pawl mechanisms are coupled (directly or indirectly) to a drive shaft for rotating a winch drum and are driven by the rotation of a mounting plate and/or moment arm (e.g. a flat bar with a handle).[14]

36. The Asserted Patents also disclose embodiments of a manual winch including a novel counterweight mechanism for returning the mounting plate and user handle to their original position, disengaging the pawl from the ratchet gear: "Particular embodiments include a counterweight coupled to the mounting plate. The counterweight is positioned to rotate the

---

[14] '476 Patent, Abstract.

13

mounting plate in the second direction to automatically disengage the pawl from the ratchet gear."[15] The Asserted Patents teach that such embodiments (i.e. including a counterweight to return the mounting plate and moment arm to their original position, thus disengaging the pawl from the ratchet gear) provide a distinct safety advantage over prior art:

> "if the winch locking gear is accidentally released under load in an uncontrolled manner and the pawl is still engaged with ratchet gear 50, then winch tightening apparatus 30, including upper arm 32 and lower 34, may also spin out of control causing serious injury. If the pawl is not engaged with ratchet gear 50, however, then winch tightening apparatus 30 may remain stationary even if winch drum 22 and drive shaft 24 are spinning out of control."[16]

See Illustration 6.



FIG. 10B

Illustration 6:    An annotated version of Figure 10B from the Asserted Patents showing an embodiment of the disclosed winch tightening apparatus in a configuration where the pawl is decoupled from the ratchet gear. In this configuration if the drive shaft and/or ratchet gear is spinning out of control (represented by light blue curved arrows), the mounting plate (and associated moment arms) would not be affected, reducing the chance of injury to a user, as taught in the Asserted Patents.

---

[15] '476 Patent, 2:55-58.

[16] '476 Patent, 7:38-46.

14

37. Finally, the Asserted Patents disclose the safety advantage in incorporating a stop pin (coupled to the mounting plate) disposed within a slot (coupled to the winch housing) to prevent over-rotation of the mounting plate (ellipses added):

> "Slot 38 may restrict the rotational motion of winch tightening apparatus 30. For example, particular embodiments include stop pin 52 coupled to winch housing 20. Stop pin 52 may extend into slot 38. As winch tightening apparatus 30 rotates with stop pin 52 in slot 38, the length of slot 38 limits the range of motion of winch tightening apparatus 30… One advantage of the limited range of motion is operator safety. For example, if the winch tightening apparatus 30 is accidentally released under load in an uncontrolled manner, the limited range of motion will prevent upper arm 32 and lower arm 34 from spinning out of control, substantially reducing the chance of them striking the operator."[17]

See Illustration 7.



Illustration 7:   An annotated version of Figure 3B from the Asserted Patents. As described in the text, the Asserted Patents disclose embodiments with a stop pin (green) coupled to the winch housing, extending inside of a slot on the mounting plate. If the user were to release the handle (first moment arm) under load, the mounting plate would rotate counterclockwise suddenly. The stop pin would then engage in a terminal end of the slot, thus preventing further rotation of the mounting plate (and first and second moment arms), thus reducing the risk of a user being struck by the first and second moment arms.

---

[17] '476 Patent, 6:50-7:1.

2606003.000 - 3327

38. An exemplary claim for the Asserted Patents is claim 1 of the '476 Patent:

**'476 Patent Claim 1 [pre]: A winch apparatus, comprising:**

> **[1a] a winch housing;**
>
> **[1b] a winch drum rotationally coupled to the winch housing by a drive shaft;**
>
> **[1c] a rachet gear coupled to the drive shaft for rotating the winch drum;**
>
> **[1d] a mounting plate rotationally coupled to the drive shaft;**
>
> **[1e] a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;**
>
> **[1f] a pawl comprising a first end and a second end, wherein the first end of the pawl is pivotally coupled to the mounting plate and positioned such that the second end of the pawl engages the rachet gear via the mounting plate being rotated in a first direction and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction**
>
> **1[g] a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position.**

39. In the following analysis, I have interpreted the terms of the Asserted Claims by applying what the plain and ordinary meaning of the terms would have been to a person of ordinary skill in the art at the time of the inventions of the Asserted Patents. I discuss the level of ordinary skill in the art below.

### B.    Person of Ordinary Skill in the Art ("POSITA")

40. It is my understanding that when interpreting the claims of a patent, I must do so based on the perspective of person of ordinary skill in the art ("POSITA") in the field of the invention at the time of the patent's effective filing date, also known as the patent's priority date. My understanding is that the earliest claimed priority date of the Asserted Patents is April 22, 2016.

16

41. Based on my knowledge, expertise, and my review of the Asserted Patents, it is my opinion that a POSITA would have at least a bachelor's degree in engineering, physics, or a related field, and at least two years of experience with mechanical systems. A person with additional education but less experience (or vice versa) could also be a POSITA.

42. Although I have applied this definition of a POSITA, I am not currently aware of any way in which my opinions would materially change if a POSITA were determined to have somewhat more or less education or experience.

43. I have formed my opinion regarding the level of ordinary skill in the art for the Asserted Patents by reviewing the patents and their file histories and based on my knowledge of the level of skill of many individuals in the field and similar fields.

44. Due to my education and experience, I have expertise beyond the level of a POSITA and am qualified to opine on matters regarding the viewpoint of a POSITA both now and at the time of the invention of the Asserted Patents.

### C.    Components of the Accused Product

45. I have reviewed photographs of the Accused Product provided to me by counsel for Nabrico, see Exhibit G. Certain internal components of the Accused Product are not visible from the available photographs because they are covered by outer casings such as the winch housing (i.e. some components are "under the hood"). However, after reviewing these photographs, analyzing the configuration of the Accused Product, reviewing instructions for use provided on the Accused Product and using my education and experience, I conclude to a reasonable degree of engineering certainty that the Accused Product includes at least the following components that are not visible from the photographic evidence currently available.  It is also my opinion that a POSITA would draw the same conclusions.

17

2606003.000 - 3327

**Hidden Component 1: A Drive Shaft, Disposed Concentrically with a Hand Wheel, Configured to Drive a Winch Drum (not Visible from the Available Photographs)**

46. Shown in Illustration 8 are annotated photographs of the Accused Product showing a hand wheel, and a partial view of a winch drum.



Illustration 8:    An annotated photograph of the Accused Product showing the hand wheel, and a partial view of the winch drum (green highlight).

47. Furthermore, instructions found on the Accused Product explain how to tighten the winch cable through rotating the hand wheel (for initial tightening, or "underwinding"[18]). As can be seen in Illustration 9, the instructions include: "3. Rotate the hand wheel to underwind the wire rope or the strap."

---

[18] In this context, I understand that "underwinding" refers to initial, but generally incomplete, tightening.

18

2606003.000 - 3327



Illustration 9:    Annotated images of labelling found on the Accused Product instructing the user to "Rotate the hand wheel to underwind the wire rope or strap."

48. From the instructions in Illustration 9, it is my opinion that rotating the handwheel results in motion of the winch cable (wire rope or strap). Therefore, I reasonably conclude that the hand wheel is coupled to a drive shaft for driving the retraction of the winch cable (i.e. a drive shaft), so as to dispose the cable around a spool (or winch drum). My opinion of the general location of the drive shaft, as well as the locations of the hand wheel and winch drum are shown in Illustration 10.

19

 

Illustration 10:   Annotated photographs of the Accused Product showing the inferred general location of a drive shaft in the device.

### Two Pivotable Moment Arms, Including a Handle, Both Coupled to a Counterweight Through a Mounting Plate Structure

49. Shown in Illustration 11 is an annotated image of the instruction found on the Accused Product referring to a rotatable "ratchet handle" and its use on the Accused Product.

20



Illustration 11:  An annotated image of instructions found on the Accused Product identifying a ratchet handle and describing how the rotation of the ratchet handle achieves tightening of the winch wire: "Use the ratchet handle (B) to continue tightening until desired tension is achieved."

50. As can be seen in Illustration 11, the instructions found on the Accused Product indicate that the system is tightened by moving the ratchet handle in a rearward direction. That this handle is referred to as a "ratchet handle" indicates to me that the rearward action of the handle serves to engage a ratchet-pawl system to provide a tightening mechanism in the system.

51. In photographs of the Accused Product (Illustration 12), this ratchet handle can be seen welded to a (generally parallel) set of plates (mounting plates) along with what appears to be a solid mass at the opposite end of the plate structure, which I believe serve as a counterweight. This

21

ratchet handle comprises a first moment arm configured to apply leverage to the mounting plates for tensioning. Further, a second moment arm can be seen in Illustration 12 which would allow a user to apply additional leverage for rotation using their foot. Importantly, as can be seen in Illustration 12, both moment arms are configured to pivot about a different axis from the hand wheel/drive shaft.



Illustration 12:  Annotated images of the Accused Product showing the first moment arm (ratchet handle) and second moment arm (blue), coupled to a set of mounting plates (red) and a counterweight. As can be seen the mounting plates, ratchet handle, and counterweight rotate around an axis offset from the hand wheel/drive shaft axis.

**Hidden Component 2: A Pawl Pivotably Disposed on the Mounting Plate Structure Configured to Engage/Disengage a Ratchet Gear When the Ratchet Handle is Rotated**

52. As can be seen in Illustration 13 the instructions found on the Accused Product include: "4. Use the ratchet handle (B) to continue tightening until desired tension is achieved. 5.) Place the ratchet handle (B) in a forward rest position, ensuring the ratchet dog is disengaged."

22



Illustration 13:  An annotated photograph of instructions found on the Accused Product describing the rotation of the ratchet handle as involved in the tightening of the winch, as well as the ability of the ratchet handle to rotate so as to disengage a pawl (ratchet dog).

53. As can be seen, the instructions refer to a "ratchet dog," which is another name for a pawl in a ratchet-pawl system. The instructions also refer to placing the ratchet handle forward (i.e. in an opposite direction to the tightening direction) to disengage the ratchet dog.

54. As described above, the instructions for tightening the winch system of the Accused Product explain to engage the pawl (ratchet dog) through rearward motion of the ratchet handle (and to disengage the pawl with forward motion of the ratchet handle); accordingly, it is my opinion that the Accused Product includes a ratchet gear that receives the pawl to drive the ratchet gear towards tightening the winch system.

23

2606003.000 - 3327

55. Given these instructions and the configuration of the Accused Product observed in the photographs I have been provided, it is my opinion that the structure shown in red in Illustration 14 is the ratchet dog (pawl) referred to in the instructions. As can be seen, this pawl is coupled to the mounting plates by a clevis pin at a single point, indicating to me that the pawl is configured to rotate as the mounting plates rotate so as to engage/disengage a ratchet gear.



Illustration 14:  Annotated photographs of the Accused Product showing the location of the pawl as well as the clevis pin used to couple the pawl to the mounting plates (red highlights) and the likely location of the ratchet gear (light blue highlights).

**A Stop Pin Coupled to the Winch Housing Disposed Inside of a Slots Defined in the Mounting Plates**

56. As can be seen in Illustration 15, photographs of the Accused Product also show a cylindrical pin (stop pin) coupled to the winch housing that extends through two slots defined within the

24

walls of the mounting plates. As described below, the combination of this stop pin and slots

would configure the mounting plates to only rotate within a set range (defined by the range of

travel of the stop pin within the slots).



Illustration 15:   Annotated photographs of the Accused Product showing the stop pin (coupled to the winch housing) disposed within slots defined in the mounting plates.

### D.    Functionality of the Accused Product

57. As described above, it is my opinion that the Accused Product includes elements such as a

ratchet-pawl system wherein the pawl engages the ratchet gear as the ratchet handle. In the

remainder of this declaration (including the attached claim charts), I have created schematics

showing a possible general configuration of the mechanical elements discussed above, as well

as their functionality, for example, see Illustration 16. While it is my opinion that it is more

25

likely than not that the mechanical elements (and their locations and/or functionality) I show in the schematics exist within the Accused Product, my opinions (including the provided schematics) are based on limited information and reasonable engineering assumptions. Accordingly, the following schematics and descriptions should not be construed as limiting the exact locations and/or functionality of the mechanical elements within the Accused Product. I reserve the right to modify my opinions based on further discovery in this matter, including any design drawings of the Accused Product which may be produced in the future.



Illustration 16:  A photograph of the Accused Product (left) and schematics of the components of the Accused Product (right, created by me) as they are likely to be found. On the top right of the schematics is shown the hand wheel, rachet handle, and the inferred location of the drive shaft. On the bottom right (hand wheel removed) the locations of the ratchet-pawl components, counterweight, mounting plate, stop pin, and the pivot axis of the ratchet handle are shown.

2606003.000 - 3327

58. With regards to the functionality of the Accused Product, given the observed position of the ratchet handle pivot point, the apparent geometry of the ratchet dog (pawl), the evidence for a counterweight structure, and the instructions given on the Accused Product for use, it is my opinion that it is likely that the Accused Product includes a pawl (ratchet dog) designed to engage the underside of a ratchet gear. I also conclude it is likely that when the user rotates the ratchet handle in a rearward direction, the pawl engages and drives the ratchet gear in the same direction as the handle rotation; this action tightens the winch rope. Furthermore, based on the configuration of (what I believe to be) the counterweight structure, when the user releases the handle after pulling backwards, the counterweight is likely configured to rotate the handle assembly backwards, disengaging the pawl from the ratchet gear. This sequence is shown in Illustration 17.

27



Illustration 17:  A schematic (created by me) of the likely functionality of the Accused Product. At step (A) the device is at rest and the pawl is disengaged from the ratchet. At step (B) the user applies a rearwards force to the ratchet handle, rotating the mounting plate and causing the pawl to engage the ratchet gear. The user continues applying a rearwards force at step (C) causing the pawl to rotate the ratchet gear (and concomitantly the drive shaft to tighten the winch). After the user releases the ratchet handle at step (D), the force of gravity on the counterweight rotates the mounting plate in the opposite direction (forwards), releasing the ratchet gear and causing the pawl to disengage (steps E and F). Steps D and E can also be accomplished through the user applying a forward force on the rachet handle. It should also be noted that the overall rotation of the ratchet handle is limited in both directions by the travel of the stop pin within the slot defined in the mounting plates.

## E.    Infringement

59. I performed a detailed limitation-by-limitation analysis of the Asserted Claims of the Asserted Patents for the Accused Product. That analysis is provided in the attached claims charts as Exhibit H and Exhibit I (for analysis of the '476 Patent and '753 Patent, respectively).

60. Based on my analysis, it is my opinion that the Accused Product practices at least claims 1, and 3-5 of the '476 Patent and at least claims 1, 3, and 4 of the '753 Patent.

28

## IV.   OTHER TOPICS

61.   I understand that claim construction has not taken place in this matter yet, nor has any party proffered suggested constructions for any term. Accordingly, in this declaration, as well as the attached exhibits, my analysis and opinions regarding infringement are informed by the plain and ordinary meaning these terms would have to one of ordinary skill in the art at the time of the invention (i.e., the 2016 timeframe in this case), who is deemed to have read the claim terms in the context of the particular claims as well as the entire patent, including the specification and file history.

62.   If, during the course of this litigation, the Court provides constructions (or a construction is agreed upon between the parties in this matter) for certain claim terms of the Asserted Claims which differs from the plain and ordinary meaning to a POSITA, I expressly reserve the right to revisit the analysis contained in this declaration (and its associated exhibits) in light of such constructions.

63.   At any hearing in this matter, I may rely on visual aids and demonstratives to demonstrate the bases of my opinions. Examples of such visual aids and demonstratives may include, for example, claim charts, patent drawings, excerpts from patent specifications, file histories, interrogatory responses, deposition transcripts and exhibits, as well as charts, diagrams, videos and animated or computer-generated video, and physical exemplars.

64.   I have not yet prepared any exhibits for use at any hearing or trial as a summary or support for the opinions expressed in this report, but I expect to do so.

65.   I reserve the right to amend or supplement this declaration based on further preparation or discovery in this action, including my review and any further expert statements or reports submitted on behalf of Patterson.  I reserve the right to supplement or amend my opinions

29

2606003.000 - 3327

in response to opinions expressed by the Respondents' experts, or in light of additional evidence, testimony, or other information that may be provided to me after the date of this declaration, including at trial.  In addition, I expect that I may be asked to testify in rebuttal to issues that may be raised in the reports of Patterson's experts, or to issues that may be raised by fact witnesses and technical experts at trial.

Executed on August 6, 2026 in Chicago, Illinois.


_____

Andrew W. Smith, Ph.D., P.E.

# Exhibit A

## Curriculum Vitae of Andrew W. Smith, Ph.D., P.E.

2606003.000 - 3327



# E$^x$ponent®

Engineering & Scientific Consulting

## Andrew Smith, Ph.D., P.E.

Principal Engineer | Mechanical Engineering
Chicago
+1-312-999-4223 | asmith@exponent.com

## Professional Profile

Dr. Smith is a mechanical engineer with expertise in investigating the mechanical design and performance of manufacturing equipment and consumer products. This expertise is brought to bear in the context of both industrial accident investigations and intellectual property litigation.

Leveraging his experience in investigating machinery failures in both the industrial and consumer product sectors, Dr. Smith regularly assists clients by synthesizing complex sources of information, physical evidence, and regulatory requirements yielding valuable insights into accident causation, prevention, and relevant standards of care.

Dr. Smith also regularly serves as a consulting and testifying expert for intellectual property disputes across a diverse set of mechanical and electro-mechanical technologies. His work has supported district court litigation, IPR proceedings, and ITC investigations, with experience in presenting and defending his positions in both deposition and trial testimony.

Dr. Smith has extensive experience communicating complex technical concepts to diverse audiences through his faculty appointments at Northwestern University, University of Utah, and University of Maryland, where he taught both technical and non-technical students in physics at the graduate and undergraduate levels.

Prior to joining Exponent, Dr. Smith worked at NASA's Goddard Space Flight Center, designing sensor systems for astrophysics applications. Dr. Smith has been invited to present lectures on a wide variety of topics in physics at conferences and workshops in the United States, Europe, and Asia. He has served as both a primary and contributing author on over 50 peer reviewed articles in the physical sciences.

## Academic Credentials & Professional Honors

Ph.D., Physics and Astronomy, University of Leeds, UK, 2008

M.Sc., Particle Physics, Durham University, England, 2002

© 2025 Exponent, Inc. All Rights Reserved    •    www.exponent.com    •    888.656.EXPO    •    Page ©
2025 Exponent, Inc. All Rights Reserved    •    www.exponent.com    •    888.656.EXPO    •    Page 1

B.A., Astrophysics, University of California, Berkeley, 2001

Pre-doctoral Research Fellowship, Harvard-Smithsonian Center for Astrophysics, 2005-2008

## Licenses and Certifications

Professional Engineer Mechanical, California, #39547

Professional Engineer Mechanical, Texas, #155233

OSHA 30 Hour Outreach Training Program - General Industry

## Prior Experience

Associate Research Professor, Particle Astrophysics, NASA Goddard Space Flight Center/University of Maryland, 2014-2017

Associate Research Professor, Physics and Astronomy, University of Utah, 2011-2014

Visiting Lecturer, Physics, Northwestern University, 2009-2011

Postdoctoral Researcher, Argonne National Laboratory, 2008-2011

## Project Experience

**Selected Intellectual Property Investigations By Venue**

**ITC:**

- Construction-related hand tools
- Self-balancing transportation devices
- Storage containers and modular toolboxes
- Electrical connectors and cages

**PTAB:**

- Culinary tools
- Oil and gas drilling technology
- Pneumatic pumps
- Portable canopy tents

**District Court:**

- Road construction equipment
- Self-balancing personal transportation devices
- Remote-controlled mechanical devices
- Plumbing fixtures
- Outdoor/garden products
- Oil and gas drilling technology
- Automotive door hinges
- Textile manufacturing machinery

© 2025 Exponent, Inc. All Rights Reserved  •  www.exponent.com  •  888.656.EXPO  •  Page ©
2025 Exponent, Inc. All Rights Reserved  •  www.exponent.com  •  888.656.EXPO  •  Page 2

- Fuel storage technology
- Mechanical sifters and filters

## **Selected Industrial Safety Investigations**

- Press brake machinery
- Molding equipment
- Industrial Lathes
- Industrial Mixers
- Dock levelers
- Drilling Equipment

## **Selected Product Liability Investigations**

- Power tools: table saws, band saws, circular saws, and electric pole saws.
- Pressure cookers
- Indoor/outdoor furniture
- Exercise equipment
- Magnetic toys

© 2025 Exponent, Inc. All Rights Reserved    •    www.exponent.com    •    888.656.EXPO    •    Page ©
2025 Exponent, Inc. All Rights Reserved    •    www.exponent.com    •    888.656.EXPO    •    Page 3

# Exhibit B

**Trial and Deposition Testimony of Andrew W. Smith, Ph.D., P.E. Over the Last Four Years**

2606003.000 - 3327

## Deposition Testimony

***Francisco Yepiz and Gloria Yepiz v United Rentals, Inc., Quanta Services, Inc., Inrock and Mears Group, Inc.*** Circuit Court of the 12th Judicial Circuit, Will County, Illinois; Case No. 2023-LA-000147; Testimony given July 16, 2026.

***Aerosonic LLC, v Joby Aero, Inc.,*** United States District Court, Middle District of Florida, Tampa Division; Case No. 8:25-CV-00554-VMC-AAS; Testimony given March 19, 2026.

***Flores v Accurpress,*** United States District Court, Eastern District of Texas, Marshall Division; Case No.  2:24-CV-81; Testimony given December 4, 2025.

***In the Matter of Certain Glow Fish Tape Systems, Safety Helmet Systems, and Components Thereof,*** International Trade Commission Investigation. No. 337-TA-1442.

***In the Matter of Certain Motorized Self-Balancing Vehicles,*** International Trade Commission Investigation. No. 337-TA-1440; Testimony given July 29, 2025 (Opening/Rebuttal Report).

***In the Matter of Certain Motorized Self-Balancing Vehicles,*** International Trade Commission Investigation. No. 337-TA-1440;  Testimony given June 4, 2025 (Markman).

***Javier Salgado vs. Tony's Finer Foods Enterprises, Inc.,*** Circuit Court of Cook County, Case No. 2022L005104; Testimony given November 7, 2024.

***Juan Vazquez and Sonia Vazquez vs. Rockwell Automation, Inc.,*** Circuit Court of Cook County, Case No. 19 L 001251; Testimony given January 24, 2024.

***Rick Chesselet vs. JPW Industries Inc, and Southern Carlson, Inc.,*** United States District Court, Oregon District, Eugene Division; Case No. 6:21-cv-01645-MK; Testimony given October 31, 2023.

***Wirtgen America, Inc., vs Caterpillar, Inc.,*** United States District Court, District of Delaware; Case No. 17-770-RGA; Testimony given August 4, 2023.

***Shawn Jefford vs. Dakota, Minnesota & Eastern Railroad Corporation d/b/a Canadian Pacific Railway Company,*** Case No. 2021-L-8, Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, Illinois; Testimony given May 30, 2023.

***Inventist, Inc. v. Ninebot, Inc.,*** United States District Court, Western District of Washington at Tacoma, Case No. 3:16-cv-05688-RBL; Testimony given July 13, 2022.

## Trial Testimony

***Flores v Accurpress,*** United States District Court, Eastern District of Texas, Marshall Division; Case No.  2:24-CV-81; Testimony given July 30-31, 2026.

***In the Matter of Certain Glow Fish Tape Systems, Safety Helmet Systems, and Components Thereof,*** International Trade Commission Investigation. No. 337-TA-1442; Testimony given January 8, 2026.

***In the Matter of Certain Motorized Self-Balancing Vehicles****,* International Trade Commission Investigation. No. 337-TA-1440; Testimony given December 12, 2025.

***Wirtgen America, Inc., vs Caterpillar, Inc.,*** United States District Court, District of Delaware; Case No. 17-770-RGA; Testimony given February 16, 2024.

# Exhibit C

**U.S. Patent No. 10,752,476**

2606003.000 - 3327

US010752476B2

(12) **United States Patent**
Bryan et al.

(10) **Patent No.:** US 10,752,476 B2
(45) **Date of Patent:** *Aug. 25, 2020

(54) **WINCH TIGHTENING MECHANISM**

(71) Applicant: **ARCOSA, INC.**, Dallas, TX (US)

(72) Inventors: **Clint Bryan**, Bethpage, TN (US);
**Arnold Peek**, Madison, TN (US)

(73) Assignee: **Arcosa, Inc.**, Dallas, TX (US)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

This patent is subject to a terminal dis-
claimer.

(21) Appl. No.: **16/389,303**

(22) Filed: **Apr. 19, 2019**

(65) **Prior Publication Data**

US 2019/0241410 A1     Aug. 8, 2019

**Related U.S. Application Data**

(63) Continuation of application No. 15/241,794, filed on
Aug. 19, 2016, now Pat. No. 10,266,377.

(60) Provisional application No. 62/326,320, filed on Apr.
22, 2016.

(51) **Int. Cl.**
**B66D 1/06**         (2006.01)
**B66D 5/34**         (2006.01)

(52) **U.S. Cl.**
CPC ................. **B66D 1/06** (2013.01); **B66D 5/34**
(2013.01)

(58) **Field of Classification Search**
CPC ... B66D 1/02; B66D 1/04; B66D 1/06; B66D
2700/0116; B66D 5/34; F16G 11/12;
Y10T 74/1574
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 2,496,249 | A | * | 1/1950 | Lawrence ............... | F16G 11/12 254/222 |
| 2,710,765 | A | * | 6/1955 | Arens ................... | E21B 11/005 294/50.6 |
| 2,946,563 | A | * | 7/1960 | Eaton ....................... | B66D 1/04 410/37 |
| 2,992,811 | A | * | 7/1961 | Turner ..................... | B66F 7/02 254/4 B |
| 3,799,005 | A | * | 3/1974 | Koehler ................... | B66D 1/04 475/12 |
| 3,799,055 | A | | 3/1974 | Koehler | |
| 4,456,227 | A | * | 6/1984 | Notenboom ............. | B66D 1/06 254/350 |
| 4,591,029 | A | * | 5/1986 | Da Foe .................... | B66D 1/06 188/134 |

(Continued)

*Primary Examiner* — Michael E Gallion
(74) *Attorney, Agent, or Firm* — Baker Botts, LLP

(57)          **ABSTRACT**

According to some embodiments, a winch tightening appa-
ratus comprises a mounting plate; it first moment arm
coupled to the mounting plate and configured to provide
leverage for rotating the mounting plate; and a pawl com-
prising a first end and a second end. The first end is pivotally
coupled to the mounting plate such that the second end
pivots to engage a ratchet gear when the mounting plate is
rotated in a first direction and pivots to disengage the ratchet
gear when the mounting plate is rotated in a second direction
opposite the first direction. Some embodiments include a
second moment arm coupled to the mounting plate and
configured to provide leverage for rotating the mounting
plate. Some embodiments include a counterweight coupled
to the mounting plate and positioned to rotate the mounting
plate in the second direction.

**18 Claims, 13 Drawing Sheets**



**US 10,752,476 B2**

Page 2

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 8,974,159 B1 * | 3/2015 | Ammann .............. | B60P 7/0846 |
| | | | 410/104 |
| 9,004,456 B2 * | 4/2015 | Topping, Jr. ............. | B66D 1/06 |
| | | | 254/223 |
| 10,266,377 B2 * | 4/2019 | Bryan ...................... | B66D 5/34 |
| 2015/0197413 A1 * | 7/2015 | Doig ........................ | B66D 1/04 |
| | | | 414/800 |
| 2017/0305728 A1 * | 10/2017 | Bryan ...................... | B66D 5/34 |
| 2017/0362066 A1 * | 12/2017 | Grapes .................... | B66D 1/06 |

* cited by examiner



FIG. 1



FIG. 2A



FIG. 2B



FIG. 3A



FIG. 3B



FIG. 4



FIG. 5B



FIG. 5A



FIG. 6



FIG. 7



*FIG. 8*

FIG. 9



FIG. 10B



FIG. 10A



1102 — Providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a driveshaft

1104 — Positioning a hub concentrically around the driveshaft

1106 — Coupling the hub to the winch housing

1108 — Rotationally coupling a winch tightening apparatus to the hub

1110 — Coupling a ratchet gear to the driveshaft

1112 — Coupling stop pin to the winch housing

FIG. 11

US 10,752,476 B2

**1**

# WINCH TIGHTENING MECHANISM

## RELATED APPLICATIONS

This application is a continuation under 35 U.S.C. § 120 of U.S. patent application Ser. No. 15/241,794 which claims priority to U.S. Provisional Patent Application No. 62/326, 320 filed Apr. 22, 2016, all of which are hereby incorporated by reference in their entirety.

## TECHNICAL FIELD OF THE INVENTION

This disclosure generally relates to winches, and more particularly to a winch tightening mechanism.

## BACKGROUND

Winches for tensioning and paying out wire line or rope are well known in the marine industry. Deck hands use manual or powered winches to assist with tasks such a loading or unloading cargo or connecting two vessels together. Marine vessels may also maintain their position in relation to a mooring structure, such as a dock, by using winches.

The barge transportation industry uses winches to connect barges to each other in a barge tow and to connect the barge tow to a tow vessel. Each barge typically has two or four deck-mounted, manually-operated winches. A deck hand connects the winch line to a deck fitting on an adjacent barge and then ratchets the line tight, connecting the barges together. To disassemble the barge tow, the deck hand releases tension on the winch and pays out the line. A tow vessel typically connects to the rear of the barge tow in a similar manner. During transportation, deck hands may need to disassemble and reassemble the barge tow to pass through locks or navigate constricted waterways. Deck mounted winches may also secure a barge to a dock during loading or unloading operations.

In a typical winch, a geared drive mechanism typically rotates a winch drum to spool a wire line around the winch drum. At the drive mechanism rotates the winch drum, a winch locking gear, such as a pawl and ratchet gear, maintains tension on the winch line by preventing the winch drum from rotating in the opposite direction. Conventional manual winches use a hand wheel or bar shaped handle to turn the drive mechanism. For a long period of time, manual winches were operated primarily by a large spoked handwheel. The long spokes of the large handwheel provided locations for a winch operator to place both his hands and feet. The spokes provided large moment arms to assist with tightening the winch. For example, a winch operator might take up a majority of the winch line by spinning the spoked handwheel with only his hands. To finish tightening the winch to u desired line tension, the winch operator may attempt to rotate the winch by a few more teeth of the winch locking gear. To provide the leverage for the extra rotation, the winch operator may place both hands along the top of the handwheel and a foot against a spoke al the bottom of the hand wheel to use his relatively stronger leg muscles to assist with the final tensioning. In this way the operator is both pulling with his arms and pushing with his leg to generate tension.

While use of the large spoked handwheel may be effective, it can be dangerous if used improperly. Accordingly, the winch industry has transitioned to solid handwheels. A solid handwheel is typically smaller than the spoked handwheel to conserve weight. The smaller handwheel diameter and solid

**2**

design, however, make it difficult tor n winch operator to generate even half the line tension as they were able to generate with a spoked handwheel.

In response, the winch industry relies on ratchets with long pipe extensions to generate the leverage necessary for the desired line tension. The pipe extension, however, is generally too long to leave in place during normal operation. Thus, the pipe extension is removed and stowed when not in use. Because the pipe extension is not fixed to the winch, for each tightening operation the operator locates and attaches the pipe extension, which adds extra time to the operation. Worse, the pipe extension may get lost. Furthermore, an operator often uses improper motion with the pipe extension, which can cause operators to overextend and suffer sometimes serious injuries.

## SUMMARY OF THE INVENTION

Particular embodiments described herein include a limited motion and pedal indexing mechanism that may incorporate upper and lower body strength for tightening a mechanical winch both quickly and safely. Particular embodiments include a winch ratchet mechanism with the benefits of a spoked handwheel without the safety disadvantages. Particular embodiments provide ergonomic benefits to the winch operator which can reduce injury and improve operator efficiency.

According to some embodiments, a winch apparatus comprises a winch housing; a winch drum rotationally coupled to the winch housing by a drive shaft; a ratchet gear coupled to the drive shaft for rotating the winch drum; a hub coupled to the winch housing and positioned concentrically around the ratchet gear; a mounting plate coupled to the hub and configured to rotate around an axis of the hub; a first moment arm coupled to the mounting plate and configured to provide leverage, for rotating the mounting plate; and a pawl comprising a first end and a second end. The first end of the pawl is pivotally coupled to the mounting plate and positioned such that the second end of the pawl engages the ratchet gear when the mounting plate is rotated in a first direction and disengages the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction. Some embodiments include a second moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate.

In particular embodiments, the hub comprises a slot in a portion of its circumference, and the pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

Particular embodiments include a counterweight coupled to the mounting plate. The counterweight is positioned to rotate the mounting plate in the second direction to automatically disengage the pawl from the ratchet gear. The counterweight may be gravity operated or spring operated.

Particular embodiments include a slot in the mounting plate and a stop pin coupled to the winch housing and extending into the slot in the mounting plate such that the stop pin limits the rotational motion of the mounting plate.

In particular embodiments, the first moment arm comprises an enclosed handle. The first moment arm may comprise a first portion coupled to the mounting plate and a second portion coupled to the first portion. The second

US 10,752,476 B2

**3**

portion may be detachable from the first portion. The first moment arm may comprise a shear point.

According to some embodiments, a winch tightening apparatus comprises a mounting plate; a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate; and a pawl comprising a first end and a second end. The first end is pivotally coupled to the mounting plate such that the second end pivots to engage a ratchet gear when the mounting plate is rotated in a first direction and pivots to disengage the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction. Some embodiments include a second moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate. Some embodiments include a counterweight coupled to the mounting plate and positioned to rotate the mounting plate in the second direction.

In particular embodiments, a hub is positioned concentrically around the ratchet gear. The hub comprises a slot in a portion of its circumference. The pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

In particular embodiments, the first moment arm comprises an enclosed handle. The first moment arm may comprise a first portion coupled to the mounting plate and a second portion coupled to the first portion. The second portion may be detachable from the first portion. The first moment arm may comprise a shear point.

According to some embodiments, a method comprises providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a drive shaft; positioning a hub concentrically around the driveshaft; coupling the hub to the winch housing; and rotationally coupling a winch tightening apparatus to the hub. The winch tightening apparatus comprises a first moment arm coupled to a mounting plate and configured to provide leverage for rotating the mounting plate, and a pawl comprising a first end and a second end. The first end is pivotally coupled to the mounting plate such that the second end pivots to engage a ratchet gear when the mounting plate is rotated in a first direction and pivots to disengage the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction.

In particular embodiments, the method further comprises coupling the ratchet gear to the drive shaft. The method may include coupling a stop pin to the winch housing positioned such that the stop pin extends into a slot in the mounting plate to limit the rotational motion of the mounting plate.

In particular embodiments, the hub comprises a slot in a portion of its circumference. The pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

As a result, particular embodiments of the present disclosure may provide numerous technical advantages. For example, particular embodiments improve a winch operator's efficiency because the operator may tension the winch line faster than conventional methods where the operator had to locate and install a pipe extension. The winch line may pay out easier, reducing operator fatigue.

**4**

A winch operator may use both his arms and legs on two moment arms, generating a moment couple, which enables the operator to generate more tension than with a simple lever arm. Accordingly, particular embodiments enable the winch operator to generate greater line tension than with conventional methods.

Particular embodiments provide safety advantages. For example, particular embodiments significantly reduce the range of motion an operator uses to generate line tension, which may reduce a risk of overstressing muscles from working in an awkward position. Particular embodiments reduce the ability of the winch to return the energy of the winch line tension back to the operator. A winch operator may use the embodiments described herein in an ergonomic and adjustable manner.

During transportation of a barge tow (comprising fifteen, thirty-five, or more barges assembled together), an operator may need to disassemble and reassemble the barge tow to pass through locks or navigate constricted waterways multiples times per trip. Thus, even small improvements in operator efficiency (e.g., faster winch operations, reduced operator fatigue, etc.) are multiplied and amount to significant gains over the course of a single barge trip. Particular embodiments of the present disclosure may provide some, none, all, or additional technical advantages.

BRIEF DESCRIPTION OF THE DRAWINGS

A more complete and thorough understanding of the particular embodiments and advantages thereof may be acquired by referring to the following description taken in conjunction with the accompanying drawings, in which like reference numbers indicate like features, and wherein:

FIG. **1** is a perspective schematic of a winch with an example winch tightening mechanism, according to some embodiments;

FIG. **2A** is a perspective schematic of a winch with an example winch tightening mechanism in a rest position with the closed handwheel removed for ease of illustration, according to some embodiments;

FIG. **2B** is a side schematic of a winch with an example winch tightening mechanism in a rest position with the closed handwheel removed for case of illustration, according to some embodiments;

FIG. **3A** is a perspective schematic of a winch with an example winch tightening mechanism in an indexed position with the closed handwheel removed for case of illustration, according to some embodiments;

FIG. **3B** is a side schematic of a winch with an example winch tightening mechanism in an indexed position with the closed handwheel removed for ease of illustration, according to some embodiments;

FIG. **4** is a perspective schematic of an example winch tightening mechanism, according to particular embodiments;

FIG. **5A** is a side schematic of an example winch tightening mechanism, according to particular embodiments;

FIG. **5B** is a sectional schematic of an example winch lightening mechanism, according to particular embodiments;

FIG. **6** is an exploded schematic of an example winch tightening mechanism, according to particular embodiments;

FIG. **7** is a side and section schematic of a ratchet of an example winch tightening mechanism, according to particular embodiments;

US 10,752,476 B2

**5**

FIG. **8** is a sectional schematic of a winch drive shaft and a ratchet of an example winch tightening mechanism, according to particular embodiments;

FIG. **9** illustrates a sequence of steps for tightening a winch line, according to some embodiments;

FIG. **10A** is a sectional schematic of an example winch tightening mechanism illustrating a pawl in an indexed position, according to a particular embodiment;

FIG. **10B** is a sectional schematic of an example winch tightening mechanism illustrating a pawl in a rest position, according to a particular embodiment; and

FIG. **11** is a flow diagram illustrating an example method of coupling a winch tightening mechanism to a winch, according to some embodiments.

## DETAILED DESCRIPTION

Conventional mechanism for tensioning a winch line, such as the closed handwheel, may not provide enough leverage to adequately tension a winch line. Long pipe extensions used to generate additional leverage can cause an operator stress, fatigue, or even injury because of the operator's forceful exertions in sometimes awkward positions. Furthermore, locating, attaching, and removing the pipe extension adds time to each winch operation, which reduces operator productivity.

Particular embodiments obviate the problems described above and include a limited motion and pedal indexing mechanism to incorporate upper and lower body strength for tightening a mechanical winch both quickly and safely. Particular embodiments include a winch ratchet mechanism with the leverage benefits of a spoked handwheel, but without the safety disadvantages. Particular embodiments provide ergonomic benefits to the winch operator which can reduce injury.

Particular embodiments of the invention and its advantages are best understood by reference to FIGS. **1** through **11** wherein like reference numbers indicate like features.

FIG. **1** is a perspective schematic of a winch with an example winch tightening mechanism, according to some embodiments. Winch **10** includes winch housing **20**, which houses winch drum **22** for spooling winch line. Winch drum **22** is rotationally mounted within winch housing **20**. Drive shaft **24** drives a geared drive mechanism coupled to winch drum **22** to rotate winch drum **22**. Closed hard wheel **26** is coupled to drive shall **24**. A winch operator rotates closed handwheel **26** to operate the winch.

In particular embodiments, winch **10** includes winch tightening apparatus **30**. Winch lightening apparatus **30** includes upper arm **32** and may include lower arm **34**. Winch tightening apparatus **30** is coupled to drive shaft **24** via a ratchet gear and pawl (described in more detail below). Upper arm **32** may be referred to us a first moment or first moment arm and lower arm **34** may be referred to as a second moment or second moment arm. Together, these two moments create a couple. The couple created by upper arm **32** and lower arm **34** may be used to rotate drive shaft **24**. Using upper arm **32** and lower arm **34**, a winch operator may rotate winch tightening apparatus **30** to apply tension to the winch line when operating the winch.

For example, when tensioning a winch line, an operator may use closed handwheel **26** to take up a majority of the winch line. Closed handwheel **26** may also be referred to as a primary tensioning mechanism. When closed handwheel **26** no longer provides enough leverage to continue tensioning the winch line, the operator may use winch tightening apparatus **30** to apply the final tension. Winch tightening

**6**

apparatus **30** may also be referred to as a secondary tensioning mechanism. The operator may pull upper arm **32** with one or both hands and may push down on lower arm **34** with a foot.

The couple created by upper arm **32** and lower arm **34** is able to generate more winch line tension than closed handwheel **26** can generate. The additional leverage provides the same advantages as a large spoked handwheel or a pipe extension, without the safety disadvantages. For example, the compact and ergonomic position of upper arm **32** and lower arm **34** facilitate an operator exerting considerable force without risk of over extension and injury. An operator may use both hands and feet on at least two leverage points. Thus, in addition to upper body muscles, the operator may also use stronger lower body muscles to exert force on the leverage points.

Different than a conventional pipe extension, winch tightening apparatus **30** is compact enough that it may be attached to winch **10** without substantially interfering with the space around the winch. Thus, winch lightening apparatus **30** provides operational advantages over the conventional pipe extension because the operator may eliminate the time and effort needed to attach, remove, and stow the pipe extension.

FIG. **2A** is a perspective schematic of a winch with an example winch lightening mechanism in a rest position with the closed handwheel removed for ease of illustration, according to some embodiments. Winch **10** includes winch housing **20**, winch drum **22**, drive shaft **24**, and winch tightening apparatus **30** similar to those described above with respect to FIG. **1**.

In particular embodiments, winch tightening apparatus **30** includes hub **40**, inner mounting plate **42**, and outer mounting plate **44**. Hub **40** rotationally couples inner mounting plate **42** and outer mounting plate **44** to winch burning **20**. Inner mounting plate **42** and outer mounting plate **44** provide coupling points for upper arm **32**, lower arm **34**, and counterweight **36**.

In particular embodiments, ratchet gear **50** is coupled to drive shaft **24**. A pawl (e.g., pawl **90** described in more detail below with respect to FIGS. **6**, **10A** and **10B**) pivotally coupled (e.g., pinned) between inner mounting plate **42** and outer mounting plate **44** is operable to engage ratchet gear **50** as winch tightening apparatus **30** is rotated around hub **40**. A winch operator may rotate winch lightening apparatus **30** using upper arm **32** and lower arm **34** to engage the pawl with ratchet gear **50** and rotate drive shaft **24**.

In particular embodiments, one or both of inner mourning plate **42** and outer mounting plate **44** may include slot **38**. Slot **38** may restrict the rotational motion of winch tightening apparatus **30**. For example, particular embodiments include stop pin **52** coupled to winch housing **20**. Stop pin **52** may extend into slot **38**. As winch tightening apparatus **30** rotates with stop pin **52** in slot **38**, the length of slot **38** limits the range of motion of winch tightening apparatus **30**. Varying the length of slot **38** varies the range of motion of winch tightening apparatus **30**. In particular embodiments, the range of motion nasty be limited to approximately 30 degrees. Other embodiments may limit the range of motion to any suitable range for a particular winch. For example, the range of motion may vary according the size or gearing of a particular winch.

One advantage of the limited range of motion is operator safety. For example, if the winch tightening apparatus **30** is accidentally released under load in an uncontrolled manner, the limited range of motion will prevent upper arm **32** and lower arm **34** from spinning out of control, substantially

US 10,752,476 B2

7

reducing the chance of them striking the operator. Other advantages of slot **38** are described below.

Rotating winch tightening apparatus **30** to turn drive shaft **24** may be referred to as an indexing operation. The motion of pulling on upper arm **32** and pushing down on lower arm **34** may be referred to as an indexing stroke. For example, in particular embodiments and indexing stroke may index ratchet gear **50** by one gear tooth. Other embodiments may index ratchet gear **50** by any suitable number of gear teeth per indexing operation or indexing stroke.

In particular embodiments, the length of slot **38** may determine the number of teeth of ratchet gear **50** that may be indexed in one indexing stroke. For safety, slot **38** may be sized to limit each indexing stroke to indexing a single tooth of ratchet gear **50**.

In particular embodiments, counterweight **36** may be coupled to inner mounting plate **42** and outer mounting plate **44**. Counterweight **36** is positioned on inner mounting plate **42** and outer mounting plate **44** so that after each indexing stroke, the weight of counterweight **36** causes winch lightening apparatus **30** to rotate and disengage the pawl from ratchet gear **50**.

When the pawl of winch tightening apparatus **30** is disengaged from ratchet gear **50**, winch tightening apparatus **30** may be referred to as in the rest position. When the pawl of winch tightening apparatus **30** is engaged with ratchet gear **50**, winch tightening apparatus **30** may be referred to as in the indexed position.

Counterweight **36** returns winch tightening apparatus **30** from the indexed position to the rest position when the operator releases upper arm **32** and lower arm **34**. FIG. **2A** illustrates winch tightening apparatus **30** in a rest position.

In particular embodiments, counterweight **36** may provide a safety advantage. For example, by returning winch tightening apparatus **30** to the rest position after each indexing operation, it winch operator may not accidentally leave the pawl of the winch tightening apparatus **30** engaged with ratchet gear **50**. This provides a safety advantage because, if the winch looking gear is accidentally released under load in an uncontrolled manner and the pawl is still engaged with ratchet gear **50**, then winch tightening apparatus **30**, including upper arm **32** and lower arm **34**, may also spin out of control causing serious injury. If the pawl is not engaged with ratchet gear **50**, however, then winch tightening apparatus **30** may remain stationary even if winch drum **22** and drive shaft **24** are spinning out of control.

FIG. **2B** is a side schematic of a winch with an example winch tightening mechanism in a rest position with the closed handwheel removed for ease of illustration, according to some embodiments. FIG. **2B** illustrates the side view of the elements described with respect to FIG. **2A**.

In the illustrated example, winch tightening apparatus **30** is in the rest position. In the rest position, counterweight **36** applies a force to winch tightening apparatus **30** such that the top of slot **38** is resting against stop pin **52**.

In particular embodiments, both inner mounting plate **42** and outer mounting plate **44** may include slot **38**. In other embodiments, only inner mounting plate **42** includes slot **38**. In particular embodiments, a mechanical stop may be fixed to inner mounting plate **42** and the range of motion of winch lightening apparatus **30** may be limited by a slot or protrusions on winch housing **20**. Other embodiments may include any suitable mechanism to limit the rotation of winch tightening apparatus **30**.

Although the illustrated embodiments depict counterweight **36** as a gravity operated by a weighted arm, in other embodiments counterweight **36** may include a spring, or a

8

combination of springs and/or weights. In some embodiments, counterweight **36** may comprise any suitable mechanism for returning winch tightening apparatus **30** to a rest position.

FIG. **3A** is a perspective schematic of a winch with an example winch tightening mechanism in an indexed position with the closed handwheel removed for ease of illustration, according to some embodiments. FIG. **3A** illustrates elements similar to those described with respect to FIG. **2A**.

In the illustrated example, winch tightening apparatus **30** is in the indexed position. In the indexed position, an operator has applied a force to winch tightening apparatus **30** such that the bottom of slot **38** is resting against stop pin **52**. In particular embodiments, the combination of slot **38** and stop pin **52** may limit the indexing operation to indexing any suitable number of teeth of ratchet gear **50**. For safety, the indexing operation may be limited to particular number to restrict a winch operator from attempting to tension the winch line too much at one time. This limits the ability of the energy stored in the winch line to return to the winch operator.

FIG. **3B** is a side schematic of a winch with an example winch tightening mechanism in an indexed position with the closed handwheel removed for ease of illustration, according to some embodiments. FIG. **3B** illustrates the side view of the elements described with respect FIG. **3A**. FIGS. **10A** and **10B** described below illustrate winch tightening apparatus **30** in the indexed and rest positions, respectively, with outside mounting plate **46** removed to provide a more detailed description of the indexed and rest positions.

Although the illustrated embodiments depict ratchet gear **50** coupled directly to drive shaft **24**, in other embodiments ratchet gear **50** may be coupled to drive shaft **24** via any number of secondary gears. For example, any suitable configuration of reduction or other gears may couple ratchet gear **50** to drive shaft **24**. In addition to changing gear ratios, particular embodiments may include secondary gears to more ergonomically position winch tightening apparatus **30**.

For example, in particular embodiments, winch **10** may be larger or smaller than those illustrated herein. For certain large or small winches, coupling ratchet gear **50** (and hub **40**, etc.) near drive shaft **24** may position winch tightening apparatus **30** too high or low for comfortable operation. Some embodiments may include secondary gears (or any other suitable mechanism) to couple winch tightening apparatus **30** to winch housing **20** at a location suitable for safe and efficient operation.

Although the illustrated embodiments depict winch tightening apparatus **30** positioned between the closed handwheel and the winch housing, other embodiments may position winch tightening apparatus **30** at any suitable location. For example, particular embodiments may position winch tightening apparatus **30** on a different side of the winch than the closed hand wheel, or on the same side of the winch, but offset from the closed handwheel.

FIG. **4** is a perspective schematic of an example winch tightening mechanism, according to particular embodiments. In particular embodiments, winch tightening apparatus **30** includes upper arm **32**, lower arm **34**, counterweight **36**, slot **38**, inner mounting plate **42**, and outer mounting plate **44** similar to those described above with respect to FIGS. **1**-**3B**. In particular embodiments, winch tightening apparatus **30** includes cover plate **46**. Cover plate **46** covers hub **40**. In particular embodiments, cover plate **46** may couple inner mounting plate **42** and outer mounting plate **44** to hub **40**.

US 10,752,476 B2

9

In particular embodiments, upper arm **32** and lower arm **34** are positioned approximately 120 to 150 degrees apart. Other embodiments may position upper arm **32** and lower arm **34** relative to each other in a position suitable for a particular winch or particular operator. For example, as illustrated inner mounting plate **42** and outer mounting plate **44** include a series of mounting holes along their perimeter. In particular embodiments, upper arm **32**, lower arm **34**, and counterweight **36** may be coupled (e.g., bolted, welded, or any other suitable fastening mechanism) at any suitable location around the perimeter of inner mounting plate **42** and outer mounting plate **44**.

In particular embodiments, upper arm **32** includes hollow portion **60**, solid portion **62**, and handle **68**. Solid portion **62** couples to inner mounting plate **42** and outer mounting plate **44**. Hollow portion **60** may be coupled to solid portion **62** and handle **68** may be coupled to hollow portion **60**. Handle **68** may assist a winch operator to apply rotational pressure to upper arm **32**.

In particular embodiments, hollow portion **60** and/or handle **68** may be detachable and field replaceable. For example, in particular embodiments solid portion **62** may include a series of coupling points for hollow portion **60**. An overall length of upper arm **32** may be adjusted by coupling hollow portion **60** to a different coupling point of solid portion **62**. In particular embodiments, the length of upper arm **32** may be adjusted for the comfort of a particular operator, may be adjusted to vary the mechanical advantage of upper arm **32**, or adjusted for any other suitable purpose.

In some embodiments, multiple hollow portions **60** may be easily substituted for each other by simply coupling a different hollow portion **60** to solid portion **62**. This may facilitate easy replacement of parts, or easy substitution of customized parts (e.g. different style handles, different length parts, etc.).

Although handle **68** is illustrated as a bar, handle **58** may comprise a bar, platform, stirrup, or any other suitable shape for an operator to apply force to upper arm **32**. An enclosed handle may provide particular advantages. For example, handle **68** may comprise an enclosed D-shape. A particular advantage of a D-shaped handle (or any other enclosed shape) is that the closed nature of the D-shape reduces the risk that the handle may snag an operator's clothing or equipment. As a particular example, an operator wearing a life jacket may catch the straps of the life jacket on a bar-shaped handle. The closed nature of a D-shaped handle, however, is less likely to catch the straps of the lifejacket, or other clothing or equipment. Handle **68** may include a non-slip texture, rubberized grips, or any other suitable coating material.

In particular embodiments, lower arm **34** includes hollow portion **64**, solid portion **66** and handle **70**. Similar to upper arm **32** described above, solid portion **66** couples to inner mounting plate **42** and outer mounting plate **44**. Hollow portion **64** may be coupled to solid portion **66** and handle **70** may be coupled to hollow portion **64**. Hollow portion **64** and/or handle **70** may be detachable or field replaceable. In particular embodiments, solid portion **66** may include a series of coupling points for hollow portion **64**. An overall length of lower arm **34** may be adjusted by coupling hollow portion **64** to a different coupling point of solid portion **66**. Handle **70** may include any suitable configuration as described with respect to handle **68**.

In particular embodiments, one or both of hollow portions **60** and **64** may be configured to shear away from solid portions **62** and **66**, respectively. For example, during barge operation one barge or tug may accidentally overtop another

10

barge (i.e., an edge of one barge may come up and over the edge of another barge). Winches are typically located at the corners of the barge deck where they are likely to suffer collision damage if a barge is overtopped. While winch housing **20** may be generally compact and structurally strong enough to protect the components inside winch housing **20** if the barge is overtopped, upper arm **32** and/or lower arm **34** may extend outward from winch housing **20** and may be susceptible to damage if the barge is overtopped. Furthermore excessive force applied to upper arm **32** and/or lower arm **34** may damage other components of winch **10**. Enabling upper arm **32** and/or lower arm **34** to shear away may prevent damage to other components of winch **10** if the barge is overtopped.

In particular embodiments, one or both of hollow portions **60** and **64** may comprise a shear point. For example, one or both of hollow portions **60** and **64** may be coupled to solid portions **62** and **66**, respectively, with a shearable coupling. In particular embodiments, the shearable coupling may include a shear pin coupling, for example, hollow portion **60** to solid portion **62**. In some embodiments, hollow portion **60** may comprise a shear point at a particular location along its length, or may comprise a softer material than solid portion **62**, such that hollow portion **60** will break or shear away from solid portion **62** when a particular force is applied to hollow portion **60**.

FIG. **5**A is a side schematic of an example winch tightening mechanism, according to particular embodiments. FIG. **5**A is a side schematic of winch tightening apparatus **30** illustrated in FIG. **4**.

FIG. **5**B is a sectional schematic of an example winch tightening mechanism, according to particular embodiments. FIG. **5**B is a sectional schematic taken along the dashed line labeled A of FIG. **5**A.

In particular embodiments, inner mounting plate **42** and outer mounting plate **44** include a plurality of bolt holes around their perimeter. Using these bolt holes, upper arm **32** lower arm **34**, and/or counterweight **36** may be positioned at any suitable position around inner mounting plate **42** and outer mounting plate **44**. In particular embodiments, the position of upper arm **32**, lower arm **34**, and/or counterweight **36** around inner mounting plate **42** and outer mounting plate **44** may be adjusted in the field (e.g., to adapt to a particular operator, to a particular winch location, to a particular lading, etc.).

Particular embodiments may not include lower arm **34**, or lower arm **34** may be added/removed in the field as desired by a particular operator. Even without lower arm **34** to provide additional leverage, particular embodiments benefit from the other safety and ergonomic benefits described herein with respect to winch tightening apparatus **30**.

Particular embodiments are illustrated with open space between inner mounting plate **42** and outer mounting plate **44** and between upper arm **32**, lower arm **34**, and/or counterweight **36** (i.e., the area between inner mounting plate **42** and outer mounting plate **44** that is not occupied by upper arm **32**, lower arm **34**, and/or counterweight **36** is left open). In other embodiments, the open space may be filled (at least partially) with a dustcover (e.g., plastic, metal, or any other suitable material) to prevent dirt, water, ice, snow, or other contaminants from fouling hub **40** or other components of winch **10**. For example, the bolt holes around the perimeter of inner mounting plate **42** and outer mounting plate **44** not used to secure upper arm **32**, lower arm **34**, and/or counterweight **36** may be used to secure a strip of plastic, metal, etc. in the openings between upper arm **32**, lower arm **34**, and/or counterweight **36**.

US 10,752,476 B2

11

In particular embodiments, the various components illustrated as coupled together may actually comprise a single component. For example, in some embodiments any one or more of inner mounting plate 42, outer mounting plate 44, solid portions 62, solid portion 66, hollow portion 60, hollow portion 64, handle 68, handle 70, upper arm 32, lower arm 34, or counterweight 36, etc. may be formed as a single component or group of components.

FIG. 6 is an exploded schematic of an example winch lightening mechanism, according to particular embodiments. Like numbered components are similar to those described above with respect to FIGS. 1-5B.

In the illustrated exploded view, pawl 90 is visible. Pawl 90 may also be referred to as a dog. In particular embodiments, a first end of pawl 90 is pivotally coupled to inner mounting plate 42 and/or outer mounting plate 44. In some embodiments, the first end of pawl 90 may be pinned between inner mounting plate 42 and/or outer mounting plate 44.

In particular embodiments, hub 40 includes central hub 80, hub bushing 82, and outer hub 84 fitted over hub hushing 82. Hub 40 also includes slot 86. In particular embodiments, hub bashing 82 may comprise a bronze (or any other suitable material) bushing forced onto central hub 80. Hub bushing 82 may provide sliding contact with outer hub 84. In particular embodiments, the sliding contact may be assisted by oil, grease, or any other suitable lubricant. Inner mounting plate 42 and outer mounting plate 44 may be coupled to outer hub 84 via welding or any other suitable coupling method.

Pawl 90 is movably or pivotally hinged (e.g., pinned) at a first end such that a second end of pawl 90 may pass through slot 86 of hub 40 to engage with ratchet gear 50. For example, during an indexing operation, pawl 90 engages with ratchet gear 50 as winch tightening apparatus 30 is rotated in a first direction around hub 40. After the indexing operation, counterweight 36 may rotate winch tightening apparatus 30 in an opposite direction which may lift pawl 90 out of slot 86 and disengage pawl 90 from ratchet gear 50. In particular embodiments, slot 38 may be shaped such that rotation of winch tightening apparatus 30 in the direction opposite the tensioning direction automatically forces pawl 90 out of engagement with ratchet gear 50. When pawl 90 is disengaged from ratchet gear 50, winch tightening apparatus 30 is in a rest position. FIGS. 10A and 10B provide a more detailed illustration of the interaction between pawl 90, slot 86 of hub 40, and ratchet gear 50.

FIG. 7 is a side and section schematic of a ratchet of an example winch tightening mechanism, according to particular embodiments. FIG. 7 includes a side view of winch 10 illustrated in FIGS. 1-3B with winch tightening apparatus 30 removed for ease of illustration. FIG. 7 also includes a sectional view of hub 40, ratchet gear 50, and stop pin 52 taken along the line labeled A.

In the side view, ratchet gear 50 is coupled to drive shaft 24. Hub 40 surrounds drive shaft 24 and ratchet gear 50. Hub 40 couples winch tightening apparatus 30 to winch housing 20.

As illustrated in the sectional view, hub 40 includes slot 86. Slot 86 provides access for pawl 90 to engage with ratchet gear 50. When pawl 90 is not engaged with ratchet gear 50, winch tightening apparatus 30 is free to rotate around hub 40 independent of drive shaft 24. When pawl 90 is engaged with ratchet gear 50, rotation of winch tightening apparatus 30 rotates drive shaft 24.

FIG. 8 is a sectional schematic of a winch drive shaft and a ratchet of an example winch tightening mechanism,

12

according to particular embodiments. Like numbered components are similar to those described above with respect to FIGS. 1-6.

As described above, ratchet gear 50 is coupled to drive shaft 24. Inner hub 80 is coupled to winch housing 20. Stop pin 52 is also coupled to winch housing 20 and limits the travel of winch tightening apparatus 30. Ratchet gear 50 and inner hub 80 comprise part of the secondary tensioning system.

Also illustrated are drive shaft bushings 102, driving gear 104, locking gear 106, brake drum 108, and hub bushing/bearing 110. These components comprise part of the primary tensioning system. For example, driving gear 104 comprises the primary tensioning gear and may be controlled by closed handwheel 26. When pawl 90 is not engaged with ratchet gear 50, ratchet gear 50 rotates freely with drive shaft 24 under the primary tensioning operation. When a winch operator performs an indexing operation causing pawl 90 to engage with ratchet gear 50, then the secondary tensioning system operates in conjunction with components of the primary tensioning system (e.g., driving gear 104, to gear 106, etc.) to increase the tension of the winch line.

FIG. 9 illustrates a sequence of steps for tightening a winch line, according to some embodiments. In particular embodiments, one or more steps may be performed using the winch components described with respect to FIGS. 1-8. FIG. 9 illustrates three steps included for tightening winch line 92 onto a winch, such as winch 10 described above.

At step 910, the winch operator rotates closed handwheel 26 in the direction of the w to take up the slack in winch line 92. The winch tightening apparatus is in the rest position during this step, thus the winch tightening apparatus does not rotate (i.e., upper arm 32 and lower arm 34 are stationary). The winch operator rotates handwheel 26 until winch line 92 is as tight as the operator is able to make it using handwheel 26.

At step 912, the winch operator pulls upper arm 32 with one or both hands and pushes down on lower arm 34 with a foot (see illustrated arrows) to index the winch tightening apparatus and apply additional tension to winch line 92. As described above, the range of the indexing motion may be limited to a particular number of teeth of ratchet gear 50 or locking gear 106. The range may be limited by the length of slot 86 in hub 40 and/or the length of slot 38 in outer mourning plate 44 and/or inner mounting plate 42.

At step 914, the winch operator releases pressure on upper arm 32 and lower arm 34. Counterweight 36 automatically rotates the winch tightening apparatus in the opposite direction (see arrow illustrating rotational direction) which disengages the winch tightening apparatus from the winch drive shaft. Winch tightening apparatus returns to the rest position. Steps 912 and 914 may be repeated any number of times until the winch operator creates the desired amount of tension in winch line 92.

FIGS. 10A and 10B illustrate the interaction between pawl 90, slot 86 of hub 40, and ratchet gear 50 in the rest and indexed positions, respectively, with outer mounting plate 44 removed for ease of illustration.

FIG. 10A is a sectional schematic of an example winch tightening mechanism illustrating a pawl in an indexed position, according to a particular embodiment. Hub 40 includes slot 86 in a portion of its circumference.

As winch tightening apparatus 30 rotates around hub 40 (see arrow illustrating rotational direction), the circumference of hub 40 prevents pawl 90 from contacting ratchet gear 50 until pawl 90 is rotated past slot 86 at which point pawl 90 may drop through slot 86 to engage ratchet gear 50,

US 10,752,476 B2

13

as illustrated. Winch tightening apparatus **30** may continue rotating, with ratchet gear **50** engaged and thus applying tension to the winch line, until pawl **90** contacts the end of slot **86**. At that point the indexing operation is complete. Counterweight **36** may return winch tightening apparatus **30** back to the rest position, disengaging pawl **90** from ratchet gear **50** as illustrated in FIG. **10B**.

In particular embodiments, gravity facilitates pawl **90** engaging ratchet gear **50** as winch tightening apparatus **30** rotates pawl **90** into slot **86**. In some embodiments, the engagement and/or disengagement of pawl **90** may be assisted, by springs, or any other suitable assistance mechanism.

FIG. **10B** is a sectional schematic of an example winch tightening mechanism illustrating a pawl in a rest position, according to a particular embodiment. When winch tightening apparatus **30** is rotated in the opposite direction from the indexing operation (see arrow illustrating rotational direction), pawl **90** comes into contact with an end of slot **84** which causes pawl **90** to lift out of slot **86**, disengaging pawl **90** from ratchet gear **50**.

A particular advantage provided by slot **86** is that the particular length of slot **86** limits excessive rotational motion associated with an indexing stroke (e.g., preventing the winch operator from tensioning the winch in a position that is harmful). For example, in addition to slot **38** and stop pin **52** described above, slot **86** may also control the number of teeth of ratchet gear **50** or locking gear **106** that each indexing operation may index (e.g., one tooth per stroke). Limiting the number of gear teeth indexed per indexing stroke also limits the range of motion associated with each indexing stroke. Limiting the range of motion may prevent the winch operator from overextending.

Limiting the number of gear teeth indexed per indexing operation may provide another safety advantage by preventing a winch operator from attempting to tighten the winch by too many gear teeth at one time. For example, limiting an indexing operation to a single gear tooth minimizes the amount of line tension an operator is pulling against with each indexing stroke. In particular embodiments, the length and shape of slot **86** may enable indexing of 1, 2, 3, or any suitable number of teeth of ratchet gear **50** or locking gear **106**.

A particular advantage of automatically disengaging pawl **90** front ratchet gear **50** after each indexing operation is that it may limit the ability of the energy stored in the winch line to return to the winch operator. For example, if pawl **90** is disengaged from ratchet gear **50**, then sudden or uncontrolled movement of winch drum **22** and drive shaft **24** will not be transferred to winch tightening apparatus **30**.

Another advantage of particular embodiments is that hub **40** reduces the effort a winch operator exerts to unspool winch hue from winch **10**. For example, conventional winches may include a ratchet gear coupled to the winch driveshaft with a ratchet handle to engage the ratchet gear. When a winch operator unspools winch line from a conventional winch, the winch operator exerts effort to overcome the drag of the ratchet handle putting pressure on the ratchet gear. A particular advantage of some embodiments is that hub **40** and slot **86** prevent pawl **90** from putting pressure on ratchet gear **50** when a winch operator unspools winch line from winch **10**. Accordingly, the winch operator may exert less effort to unspool the winch line, which may amount to a considerable amount of savings when multiplied by the number of times a winch operator may unspool winch line in any given day/trip.

14

Many existing winches may be retrofitted to include the advantages of the winch tightening embodiments described herein. For example, a winch's existing tightening mechanism (handwheel, ratchet, etc.) may be removed and replaced with one of the embodiments described herein. FIG. **11** illustrates a method of attaching (either new or retrofit) a winch tightening mechanism to a winch.

FIG. **11** is a flow diagram Illustrating an example method of coupling a winch tightening mechanism to a winch, according to some embodiments. In particular embodiments, one or more steps of method **1100** may be performed to manufacture a winch, such as the winch described with respect to FIGS. **1-10**.

The method begins at step **1102**, where a winch housing and winch drum are provided. The winch drum, such as winch drum **22**, is rotationally coupled to the housing, such as winch housing **20**, by a drive shaft, such as drive shaft **24**. In particular embodiments, the winch housing may comprise a new winch housing or a winch housing of an existing winch (i.e., retrofit).

At step **1104**, a hub is positioned concentrically around the driveshaft. For example hub **40** may be positioned around drive shaft **24** as illustrated in any of FIGS. **2A-10B**.

At step **1106**, the hub is coupled to the winch housing. For example, hub **40** may be coupled to winch housing **20**. In particular embodiments, hub **40** may be welded to winch housing **20**.

At step **1108**, a winch tightening apparatus is rotationally coupled to the hub. For example, winch tightening apparatus **30** may be coupled to hub **40** as in any of the embodiments described above.

At optional step **1110**, a ratchet gear is coupled to the drive shaft. For example, when manufacturing a new winch, a ratchet gear is coupled to the drive shaft. Additionally, in some retrofit applications the drive shaft may not include a ratchet gear, and so a ratchet gear is coupled to the drive shaft. In other retrofit applications, however, the winch may include a ratchet handle and ratchet gear, in which case the ratchet handle may be removed but the ratchet gear may be reused.

At optional step **1112**, a stop pin is coupled to the winch housing. For example, stop pin **52** may be coupled to winch housing **20**. In particular embodiments, stop pin **52** may extend into a slot in winch tightening apparatus **30**, such as slot **38**, to limit the rotational motion of winch tightening apparatus **30**.

Modifications, additions, or omissions may be made to the method of FIG. **11**. Additionally, one or more steps in method **1100** of FIG. **11** may be performed in parallel or in any suitable order.

Some embodiments of the disclosure may provide one or more technical advantages. As an example, some embodiments improve the speed by which a winch operator may tension the winch because the winch operator no longer needs to locate and install a pipe extension. Also, the range of motion an operator uses to generate line tension is significantly reduced. A winch operator may use both his arms and legs on two moment arms, generating a couple, which enables the operator to generate more tension than with a simple lever arm. Accordingly, the winch operator can generate greater line tension with the winch.

Particular embodiments provide safety advantages. For example, embodiments described herein may be used by the operator in an ergonomic and adjustable manner, which may reduce a risk of overstressing muscles from working in an awkward position. Particular embodiments reduce the ability of the winch manual controls to return the energy of the

US 10,752,476 B2

15

winch line tension back to the operator. Accordingly, the time and effort to secure the connection of barges is reduced, while safety is increased. Particular embodiments include moment arms with shear points to reduce damage to the winch if a barge is overtopped. Some embodiments may benefit from some, none, or all of these advantages. Other technical advantages may be readily ascertained by one of ordinary skill in the art.

Modifications, additions, or emissions may be made to the systems and apparatuses disclosed herein without departing from the scope of the invention. The components of the systems and apparatuses may be into or separated. Moreover, the operations of the systems and apparatuses may be performed by more, fewer, or other components.

Modifications, additions, or omissions may be made to the methods disclosed herein without departing from the scope of the invention. The methods may include more, fewer, or other steps. Additionally, steps may be performed in any suitable order.

Although embodiments of the present disclosure and their advantages have been described in detail, it should be understood that various changes, substitutions and alternations can be made herein without departing from the spirit and scope of the invention as defined by the claims below.

The invention claimed is:

1. A winch apparatus, comprising:
a winch housing;
a winch drum rotationally coupled to the winch housing by a drive shaft;
a ratchet gear coupled to the drive shaft for rotating the winch drum;
a mounting plate rotationally coupled to the drive shaft;
a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;
a pawl comprising a first end and a second end, wherein the first end of the pawl is pivotally coupled to the mounting plate and positioned such that the second end of the pawl engages the ratchet gear via the mounting plate being rotated in a first direction and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction; and
a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position.

2. The winch apparatus of claim 1, wherein the counterweight is gravity operated or spring operated.

3. The winch apparatus of claim 1, further comprising a second moment arm coupled to the mounting plate offset from the first moment arm and configured to provide leverage for rotating the mounting plate.

4. The winch apparatus of claim 1, further comprising a stop pin coupled to the winch housing positioned to limit the rotational motion of the mounting plate.

5. The winch apparatus of claim 1, further comprising:
a slot in the mounting plate; and
a stop pin coupled to the winch housing and extending into the slot in the mounting plate such that the stop pin limits the rotational motion of the mounting plate.

6. The winch apparatus of claim 1, wherein the first moment arm is detachable from the mounting plate.

7. The winch apparatus of claim 1, wherein the first moment arm comprises a shear point.

16

8. A winch tightening apparatus, comprising:
a mounting plate configured to be rotationally coupled to a winch drum;
a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;
a pawl comprising a first end and a second end, the first end pivotally coupled to the mounting plate, wherein the pawl is positioned such that the second end of the pawl engages the ratchet gear via the mounting plate being rotated in a first direction and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction; and
a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position.

9. The winch tightening apparatus of claim 8, wherein the counterweight is gravity operated or spring operated.

10. The winch tightening apparatus of claim 8, further comprising a second moment arm coupled to the mounting plate offset from the first moment arm and configured to provide leverage for rotating the mounting plate.

11. The winch tightening apparatus of claim 8, wherein the first moment arm is detachable from the mounting plate.

12. The winch tightening apparatus of claim 8, wherein the first moment arm comprises a shear point.

13. A method comprising:
providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a drive shaft;
rotationally coupling a winch tightening apparatus to the drive shaft, the winch tightening apparatus comprising:
a mounting plate;
a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;
a pawl comprising a first end and a second end, the first end pivotally coupled to the mounting plate, wherein the pawl is positioned such that the second end of the pawl engages a ratchet gear coupled to the drive shaft via the mounting plate being rotated in a first direction and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction; and
a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position.

14. The method of claim 13, further comprising coupling a stop pin to the winch housing positioned to limit the rotational motion of the mounting plate.

15. The method of claim 13, wherein the counterweight is gravity operated or spring operated.

16. The method of claim 13, wherein the winch tightening apparatus further comprises a second moment arm coupled to the mounting plate offset from the first moment arm and configured to provide leverage for rotating the mounting plate.

17. The method of claim 13, wherein the first moment arm is detachable from the mounting plate.

18. The method of claim 13, wherein the first moment arm comprises a shear point.

* * * * *

# Exhibit D

## Prosecution History of U.S. Patent No. 10,752,476

2606003.000 - 3327

ATTORNEY DOCKET NO.                                    PATENT APPLICATION
091078.2005

29

CLAIMS:

1.      A winch apparatus, comprising:

a winch housing;

a winch drum rotationally coupled to the winch housing by a drive shaft;

a ratchet gear coupled to the drive shaft for rotating the winch drum;

a hub coupled to the winch housing and positioned concentrically around the ratchet gear;

a mounting plate coupled to the hub and configured to rotate around an axis of the hub;

a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;

a pawl comprising a first end and a second end, wherein the first end of the pawl is pivotally coupled to the mounting plate and positioned such that the second end of the pawl engages the ratchet gear when the mounting plate is rotated in a first direction and disengages the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction.

2.      The winch apparatus of Claim 1, wherein:

the hub comprises a slot in a portion of its circumference; and

the pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

3.      The winch apparatus of Claim 1, further comprising a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to automatically disengage the pawl from the ratchet gear.

4.      The winch apparatus of Claim 3, wherein the counterweight is gravity operated or spring operated.

ATTORNEY DOCKET NO.                                    PATENT APPLICATION
091078.2005

26

5.      The winch apparatus of Claim 1, further comprising a second moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate.

6.      The winch apparatus of Claim 1, further comprising:

a slot in the mounting plate; and

a stop pin coupled to the winch housing and extending into the slot in the mounting plate such that the stop pin limits the rotational motion of the mounting plate.

7.      The winch apparatus of Claim 1, wherein the first moment arm comprises an enclosed handle.

8.      The winch apparatus of Claim 1, wherein the first moment arm comprises a first portion coupled to the mounting plate and a second portion coupled to the first portion, the second portion detachable from the first portion.

9.      The winch apparatus of Claim 1, wherein the first moment arm comprises a shear point.

ATTORNEY DOCKET NO.
091078/2005

PATENT APPLICATION

27

10.      A winch tightening apparatus, comprising:

a mounting plate;

a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate; and

a pawl comprising a first end and a second end, the first end pivotally coupled to the mounting plate such that the second end pivots to engage a ratchet gear when the mounting plate is rotated in a first direction and pivots to disengage the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction.

11.      The winch tightening apparatus of Claim 10, further comprising a second moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate.

12.      The winch tightening apparatus of Claim 10, further comprising a counterweight coupled to the mounting plate and positioned to rotate the mounting plate in the second direction.

13.      The winch tightening apparatus of Claim 10, further comprising a hub positioned concentrically around the ratchet gear, the hub comprising a slot in a portion of its circumference; and

wherein the pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

14.      The winch tightening apparatus of Claim 10, wherein the first moment arm comprises an enclosed handle.

15.      The winch tightening apparatus of Claim 10, wherein the first moment arm comprises a first portion coupled to the mounting plate and a second portion coupled to the first portion, the second portion detachable from the first portion.

ATTORNEY DOCKET NO.                                                    PATENT APPLICATION
091078.2005

28

16.    The winch tightening apparatus of Claim 10, wherein the first moment arm comprises a shear point.

ATTORNEY DOCKET NO.                                    PATENT APPLICATION
091078.2005

29

17.    A method comprising:

providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a drive shaft;

positioning a hub concentrically around the driveshaft;

coupling the hub to the winch housing;

rotationally coupling a winch tightening apparatus to the hub, the winch tightening apparatus comprising:

a first moment arm coupled to a mounting plate and configured to provide leverage for rotating the mounting plate;

a pawl comprising a first end and a second end, the first end pivotally coupled to the mounting plate such that the second end pivots to engage a ratchet gear when the mounting plate is rotated in a first direction and pivots to disengage the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction.

18.    The method of Claim 17, further comprising coupling the ratchet gear to the drive shaft.

19.    The method of Claim 17, further comprising coupling a stop pin to the winch housing positioned such that the stop pin extends into a slot in the mounting plate to limit the rotational motion of the mounting plate.

20.    The method of Claim 17, wherein:

the hub comprises a slot in a portion of its circumference; and

the pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

CLAIMS

1-20. (Cancelled)

21.    (New) A winch apparatus, comprising:

a winch housing;

a winch drum rotationally coupled to the winch housing by a drive shaft;

a ratchet gear coupled to the drive shaft for rotating the winch drum;

a mounting plate rotationally coupled to the drive shaft;

a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;

a pawl comprising a first end and a second end, wherein the first end of the pawl is pivotally coupled to the mounting plate and positioned such that the second end of the pawl engages the ratchet gear via the mounting plate being rotated in a first direction and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction; and

a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position.

22.    (New) The winch apparatus of Claim 21, wherein the counterweight is gravity operated or spring operated.

23.    (New) The winch apparatus of Claim 21, further comprising a second moment arm coupled to the mounting plate offset from the first moment arm and configured to provide leverage for rotating the mounting plate.

24.    (New) The winch apparatus of Claim 21, further comprising a stop pin coupled to the winch housing positioned to limit the rotational motion of the mounting plate.

25.    (New) The winch apparatus of Claim 21, further comprising:

a slot in the mounting plate; and

ATTORNEY DOCKET NO.
086707.0468

a stop pin coupled to the winch housing and extending into the slot in the mounting plate such that the stop pin limits the rotational motion of the mounting plate.

26.    (New) The winch apparatus of Claim 21, wherein the first moment arm is detachable from the mounting plate.

27.    (New) The winch apparatus of Claim 21, wherein the first moment arm comprises a shear point.

28.    (New) A winch tightening apparatus, comprising:

a mounting plate;

a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;

a pawl comprising a first end and a second end, the first end pivotally coupled to the mounting plate, wherein the pawl is positioned such that the second end of the pawl engages the ratchet gear via the mounting plate being rotated in a first direction and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction; and

a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position.

29.    (New) The winch tightening apparatus of Claim 28, wherein the counterweight is gravity operated or spring operated.

30.    (New) The winch tightening apparatus of Claim 28, further comprising a second moment arm coupled to the mounting plate offset from the first moment arm and configured to provide leverage for rotating the mounting plate.

31.    (New) The winch tightening apparatus of Claim 28, wherein the first moment arm is detachable from the mounting plate.

ATTORNEY DOCKET NO.
086707.0468

PATENT APPLICATION

32.    (New) The winch tightening apparatus of Claim 28, wherein the first moment arm comprises a shear point.

33.    (New) A method comprising:

providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a drive shaft;

rotationally coupling a winch tightening apparatus to the drive shaft, the winch tightening apparatus comprising:

a mounting plate;

a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;

a pawl comprising a first end and a second end, the first end pivotally coupled to the mounting plate, wherein the pawl is positioned such that the second end of the pawl engages a ratchet gear coupled to the drive shaft via the mounting plate being rotated in a first direction and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction; and

a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position.

34.    (New) The method of Claim 33, further comprising coupling a stop pin to the winch housing positioned to limit the rotational motion of the mounting plate.

35.    (New) The method of Claim 33, wherein the counterweight is gravity operated or spring operated.

36.    (New) The method of Claim 33, wherein the winch tightening apparatus further comprises a second moment arm coupled to the mounting plate offset from the first moment arm and configured to provide leverage for rotating the mounting plate.

37.    (New) The method of Claim 33, wherein the first moment arm is detachable from the mounting plate.

ATTORNEY DOCKET NO.
086707.0468

PATENT APPLICATION

38.     (New) The method of Claim 33, wherein the first moment arm comprises a shear point.

| ***Examiner-Initiated Interview Summary*** | **Application No.** | **Applicant(s)** |
|---|---|---|
| | 16/389,303 | Bryan et al. |
| | **Examiner** | **Art Unit** | **AIA (FITF) Status** |
| | MICHAEL E GALLION | 3654 | Yes |

All participants (applicant, applicant's representative, PTO personnel):

(1) <u>MICHAEL E. GALLION (PTO)</u>.                    (3) _____.

(2) <u>STANTON LEWIS (APPLICANT)</u>.                    (4) _____.

Date of Interview: <u>03 January 2020</u>.

Type:    ☑ Telephonic    ☐ Video Conference
         ☐ Personal [copy given to: ☐ applicant ☐ applicant's representative]

Exhibit shown or demonstration conducted:    ☐ Yes    ☑ No.
  If Yes, brief description: _____.

Issues Discussed    ☐ 101    ☐ 112    ☑ 102    ☐ 103    ☐ Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: <u>21,28 and 33</u>.

Identification of prior art discussed: <u>Turner US Patent 2992811</u>.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

<u>The Office disclosed claims 21 and 33 seemed to get over the prior art of record. However, the prior art still read on claim 28. The Office proposed incorporating the language of "a mounting plate configured to be rotationally coupled to a winch drum" to get over the prior art of record. The applicant was in agreement. However, the Office stated a terminal disclaimer would be needed to get over the double patenting rejection. The applicant was not in agreement..</u>

**Applicant recordation instructions:** It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /MICHAEL E GALLION/ | |
| Examiner, Art Unit 3654 | |

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/389,303 | 04/19/2019 | Clint Bryan | 086707.0468 | 7486 |

5073     7590     01/08/2020
BAKER BOTTS L.L.P.
2001 Ross Avenue, 9th Floor
Dallas, TX 75201

| EXAMINER |
|---|
| GALLION, MICHAEL E |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3654 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 01/08/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

PTOmail1@bakerbotts.com

PTOL-90A (Rev. 04/07)

| **Office Action Summary** | **Application No.**<br>16/389,303 | | **Applicant(s)**<br>Bryan et al. |
|---|---|---|---|
| | **Examiner**<br>MICHAEL E GALLION | **Art Unit**<br>3654 | **AIA (FITF) Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on 4/19/2019.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL.**      2b) ☑ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) __21-38__ is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) 21-38 is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or  b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
      a) ☐ All      b) ☐ Some**      c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date 4/19/2019.

3) ☑ Interview Summary (PTO-413)
   Paper No(s)/Mail Date 1/3/2020.
4) ☐ Other: _____.

Application/Control Number:16/389,303                                    Page2
Art Unit:3654

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### EXAMINER'S AMENDMENT

2.      An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in an interview with Stanton Lewis on 1/3/2020.

3.      The application has been amended as follows:

IN THE CLAIMS:

In claim 28 line 2, the phrase "a mounting plate" has been changed to ---a mounting plate configured to be rotationally coupled to a winch drum---.

### *Double Patenting*

4.      The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. A nonstatutory double patenting rejection is appropriate where the conflicting claims are not

Application/Control Number:16/389,303                                                      Page3
Art Unit:3654

identical, but at least one examined application claim is not patentably distinct from the reference

claim(s) because the examined application claim is either anticipated by, or would have been obvious

over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re*

*Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed.

Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164

USPQ 619 (CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to

overcome an actual or provisional rejection based on nonstatutory double patenting provided the

reference application or patent either is shown to be commonly owned with the examined application,

or claims an invention made as a result of activities undertaken within the scope of a joint research

agreement. See MPEP § 717.02 for applications subject to examination under the first inventor to file

provisions of the AIA as explained in MPEP § 2159.  See MPEP §§ 706.02(l)(1) - 706.02(l)(3) for

applications not subject to examination under the first inventor to file provisions of the AIA. A terminal

disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be used. Please visit

www.uspto.gov/patent/patents-forms. The filing date of the application in which the form is filed

determines what form (e.g., PTO/SB/25, PTO/SB/26, PTO/AIA/25, or PTO/AIA/26) should be used. A

web-based eTerminal Disclaimer may be filled out completely online using web-screens. An eTerminal

Disclaimer that meets all requirements is auto-processed and approved immediately upon submission.

For more information about eTerminal Disclaimers, refer to

www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

5.      Claims 21-38 are rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 1-19 of U.S. Patent No. 10266377. Although the claims at issue are not

Application/Control Number:16/389,303                                                                    Page4
Art Unit:3654

identical, they are not patentably distinct from each other because they substantially disclose the same

structure of having a ratchet gear, mounting plate, pawl, moment arms, and counterweight.


*Conclusion*

6.       Any inquiry concerning this communication or earlier communications from the examiner

should be directed to MICHAEL E GALLION whose telephone number is (571)272-5998.  The examiner

can normally be reached on Monday-Friday 10am-6pm.

        Examiner interviews are available via telephone, in-person, and video conferencing using a

USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use

the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

MICHAEL MANSEN can be reached on 5712726608.  The fax phone number for the organization where

this application or proceeding is assigned is 571-273-8300.

        Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see http://pair-

direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer

Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.

Application/Control Number:16/389,303                                            Page5
Art Unit:3654

/MICHAEL E GALLION/
Examiner, Art Unit 3654

2

**In The Claims**

This listing of claims will replace all prior versions, and listings, of claims in the application:

1-20. (Cancelled)

21.    (Previously Presented) A winch apparatus, comprising:

a winch housing;

a winch drum rotationally coupled to the winch housing by a drive shaft;

a ratchet gear coupled to the drive shaft for rotating the winch drum;

a mounting plate rotationally coupled to the drive shaft;

a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;

a pawl comprising a first end and a second end, wherein the first end of the pawl is pivotally coupled to the mounting plate and positioned such that the second end of the pawl engages the ratchet gear via the mounting plate being rotated in a first direction and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction; and

a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position.

22.    (Previously Presented) The winch apparatus of Claim 21, wherein the counterweight is gravity operated or spring operated.

23.    (Previously Presented) The winch apparatus of Claim 21, further comprising a second moment arm coupled to the mounting plate offset from the first moment arm and configured to provide leverage for rotating the mounting plate.

24.    (Previously Presented) The winch apparatus of Claim 21, further comprising a stop pin coupled to the winch housing positioned to limit the rotational motion of the mounting plate.

ATTORNEY DOCKET NO.                                    PATENT APPLICATION
086707.0468                                                  USSN 16/389,303

3

25.    (Previously Presented) The winch apparatus of Claim 21, further comprising:

a slot in the mounting plate; and

a stop pin coupled to the winch housing and extending into the slot in the mounting plate such that the stop pin limits the rotational motion of the mounting plate.

26.    (Previously Presented) The winch apparatus of Claim 21, wherein the first moment arm is detachable from the mounting plate.

27.    (Previously Presented) The winch apparatus of Claim 21, wherein the first moment arm comprises a shear point.

28.    (Previously Presented) A winch tightening apparatus, comprising:

a mounting plate configured to be rotationally coupled to a winch drum;

a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;

a pawl comprising a first end and a second end, the first end pivotally coupled to the mounting plate, wherein the pawl is positioned such that the second end of the pawl engages the ratchet gear via the mounting plate being rotated in a first direction and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction; and

a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position.

29.    (Previously Presented) The winch tightening apparatus of Claim 28, wherein the counterweight is gravity operated or spring operated.

30.    (Previously Presented) The winch tightening apparatus of Claim 28, further comprising a second moment arm coupled to the mounting plate offset from the first moment arm and configured to provide leverage for rotating the mounting plate.

44613598

ATTORNEY DOCKET NO.                                    PATENT APPLICATION
086707.0468                                                  USSN 16/389,303

4

31.    (Previously Presented) The winch tightening apparatus of Claim 28, wherein the first moment arm is detachable from the mounting plate.

32.    (Previously Presented) The winch tightening apparatus of Claim 28, wherein the first moment arm comprises a shear point.

33.    (Previously Presented) A method comprising:

providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a drive shaft;

rotationally coupling a winch tightening apparatus to the drive shaft, the winch tightening apparatus comprising:

a mounting plate;

a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;

a pawl comprising a first end and a second end, the first end pivotally coupled to the mounting plate, wherein the pawl is positioned such that the second end of the pawl engages a ratchet gear coupled to the drive shaft via the mounting plate being rotated in a first direction and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction; and

a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position.

34.    (Previously Presented) The method of Claim 33, further comprising coupling a stop pin to the winch housing positioned to limit the rotational motion of the mounting plate.

35.    (Previously Presented) The method of Claim 33, wherein the counterweight is gravity operated or spring operated.

36.    (Previously Presented) The method of Claim 33, wherein the winch tightening apparatus further comprises a second moment arm coupled to the mounting plate offset from the first moment arm and configured to provide leverage for rotating the mounting plate.

44613598

ATTORNEY DOCKET NO.
086707.0468

PATENT APPLICATION
USSN 16/389,303

5

37.     (Previously Presented) The method of Claim 33, wherein the first moment arm is detachable from the mounting plate.

38.     (Previously Presented) The method of Claim 33, wherein the first moment arm comprises a shear point.

44613598

5

ATTORNEY DOCKET NO.                                          PATENT APPLICATION
086707.0468                                                     USSN 16/389,303

6

## Remarks

This Application has been carefully reviewed in light of the Office Action. Applicants appreciate the Examiner's consideration of the Application. At the time of the Office Action, claims 21-38 were pending. The Office Action rejects these claims. To advance prosecution, Applicants submit a Terminal Disclaimer herewith Applicants respectfully request reconsideration and favorable action in this case.

## Response to Examiner-Initiated Interview Summary and Examiner's Amendment

Examiner Michael E. Gallion conducted an Examiner-Initiated Interview with Applicants' attorney, Stanton A. Lewis (Reg. No. 63,418) on January 3, 2020. Applicants thank the Examiner for the courtesy of the interview. In response to the Examiner-Initiated Interview Summary dated January 8, 2020, Applicants submit this summary of the telephone interview to record Applicants' attorney's understanding of the substance of the interview. If Applicants' attorney's understanding is inaccurate, notice of such would be appreciated.

During the interview, the Examiner and Applicants' attorney discussed independent claims 21, 28, and 33 over the prior art of record, U.S. Patent 2,992,811 to Turner. Examiner Gallion indicated that claims 21 and 33 overcame the prior art of record. The Examiner proposed an amendment to claim 28 incorporating the language "a mounting plate configured to be rotationally coupled to a winch drum." To advance prosecution, Applicants' attorney agreed and authorized the Examiner's Amendment. Examiner Gallion also stated a terminal disclaimer would be needed to obviate the double patenting rejection.

## Double Patenting

The Office Action rejects claims 21-38 on the grounds of nonstatutory double patenting as allegedly being unpatentable over claims 1-19 of U.S. Patent No. 10,266,377. Although Applicants do not necessarily agree with or acquiesce to the Examiner's comments regarding the claims of the present Application or their purported relationship to the claims of the patent, to advance prosecution Applicants submit a Terminal Disclaimer herewith. Accordingly, Applicants respectfully request allowance of claims 21-38.

44613598

ATTORNEY DOCKET NO.
086707.0468

PATENT APPLICATION
USSN 16/389,303

7

**No Waiver**

Applicants' arguments and amendments are made without prejudice or disclaimer. Additionally, Applicants have merely discussed example distinctions from the cited references. Other distinctions may exist, and Applicants reserve the right to discuss these additional distinctions in a later submission, if appropriate. By not responding to additional statements made in the Office Action, Applicants do not acquiesce to the additional statements.

44613598

ATTORNEY DOCKET NO.                                              PATENT APPLICATION
086707.0468                                                      USSN 16/389,303

8

## Conclusion

Applicants have now made an earnest attempt to place the Application in condition for allowance. For the foregoing reasons and for other reasons clearly apparent, Applicants respectfully request reconsideration and full allowance of all pending claims.

If the Examiner believes that a telephone conference would advance prosecution of this application in any manner, the Examiner is invited to contact Stanton A. Lewis, Attorney for Applicants, at 214.953.6882, at the Examiner's convenience. The Examiner may also communicate with Stanton A. Lewis concerning this Application by electronic mail at stan.lewis@bakerbotts.com.

The Commissioner is hereby authorized to charge the $160.00 terminal disclaimer fee to Deposit Account No. 02-0384 of BAKER BOTTS L.L.P. To the extent necessary, the Commissioner is authorized to charge any required additional fees or credit any overpayments to Deposit Account No. 02-0384 of BAKER BOTTS L.L.P.

Respectfully submitted,

BAKER BOTTS L.L.P.
Attorneys for Applicants

/Stanton A. Lewis/

Stanton A. Lewis
Registration No. 63,418
Tel. 214.953.6882

Dated: April 7, 2020
**Correspondence Address:**
Customer No. **05073**

44613598

PTO/AIA/26 (04-14)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT | Docket Number (Optional) 086707.0468 |
|---|---|

In re Application of: Clint Bryan et al.

Application No.: 16/389,303

Filed: April 19, 2019

For: Winch Tightening Mechanism

The applicant, _Arcosa, Inc._____, owner of _____100_____ percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of **prior patent** No. _10,266,377_____ as the term of said **prior patent** is presently shortened by any terminal disclaimer. The applicant hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the **prior patent** are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the applicant does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term of the **prior patent**, "as the term of said **prior patent** is presently shortened by any terminal disclaimer," in the event that said **prior patent** later:

    expires for failure to pay a maintenance fee;
    is held unenforceable;
    is found invalid by a court of competent jurisdiction;
    is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
    has all claims canceled by a reexamination certificate;
    is reissued; or
    is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

Check either box 1 or 2 below, if appropriate.

1. ☐   The undersigned is the applicant. If the applicant is an assignee, the undersigned is authorized to act on behalf of the assignee.

I hereby acknowledge that any willful false statements made are punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

2. ☑   The undersigned is an attorney or agent of record. Reg. No. _____63,418_____

| /Stanton A. Lewis/ | April 7, 2020 |
|---|---|
| Signature | Date |

| Stanton A. Lewis | |
|---|---|
| Typed or printed name | |

| Attorney | (214) 953-6882 |
|---|---|
| Title | Telephone Number |

☑ Terminal disclaimer fee under 37 CFR 1.20(d) included.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

This collection of information is required by 37 CFR 1.321. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| Application Number<br>**\* 16/389,303 \*** | Application/Control No.<br><br>16/389,303 | Applicant(s)/Patent under<br>Reexamination<br><br>Bryan et al. | |
|---|---|---|---|
| | Examiner<br>GALLION, MICHAEL E | Art Unit<br>3654 | |

| **Document Code - DISQ** | **Internal Document - DO NOT MAIL** |
|---|---|

| **TERMINAL DISCLAIMER** | ☑ APPROVED | ☐ DISAPPROVED |
|---|---|---|
| **Date Filed: 08 April 2020** | **This patent is subject to a Terminal Disclaimer** | |

**Approved/Disapproved by:**

/FELICIA D ROBERTS/

**Technology Center: OPLC**

**Telephone: (571)272-0550**

10,266,377



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 5073 | 7590 | 04/20/2020 |

BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201

| EXAMINER |
| --- |
| GALLION, MICHAEL E |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 3654 | |

DATE MAILED: 04/20/2020

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 16/389,303 | 04/19/2019 | Clint Bryan | 086707.0468 | 7486 |

TITLE OF INVENTION: WINCH TIGHTENING MECHANISM

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 07/20/2020 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

By mail, send to:  Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

By fax, send to:    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

5073        7590        04/20/2020
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

| | |
|---|---|
| | (Typed or printed name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/389,303 | 04/19/2019 | Clint Bryan | 086707.0468 | 7486 |

TITLE OF INVENTION: WINCH TIGHTENING MECHANISM

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 07/20/2020 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| GALLION, MICHAEL E | 3654 | 254-369000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❏ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

❏ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❏ Individual ❏ Corporation or other private group entity ❏ Government

4a. Fees submitted:   ❏ Issue Fee   ❏ Publication Fee (if required)   ❏ Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

❏ Electronic Payment via EFS-Web   ❏ Enclosed check   ❏ Non-electronic payment by credit card (Attach form PTO-2038)

❏ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

❏ Applicant certifying micro entity status. See 37 CFR 1.29

❏ Applicant asserting small entity status. See 37 CFR 1.27

❏ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/389,303 | 04/19/2019 | Clint Bryan | 086707.0468 | 7486 |

| | | | EXAMINER |
|---|---|---|---|
| 5073        7590        04/20/2020 | | | GALLION, MICHAEL E |

BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201

| ART UNIT | PAPER NUMBER |
|---|---|
| 3654 | |

DATE MAILED: 04/20/2020

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

**OMB Clearance and PRA Burden Statement for PTOL-85 Part B**

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:
1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 16/389,303 | Applicant(s) Bryan et al. | |
|---|---|---|---|
| | Examiner MICHAEL E GALLION | Art Unit 3654 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>amendment filed 4/8/2020</u>.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>21-38</u> . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐All     b) ☐ Some     *c) ☐ None of the:

   1. ☐ Certified copies of the priority documents have been received.

   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment

6. ☐ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

| /MICHAEL E GALLION/ Examiner, Art Unit 3654 | |
|---|---|

# Exhibit E

## U.S. Patent No. 11,919,753

2606003.000 - 3327

US011919753B2

(12) **United States Patent**
Bryan et al.

(10) **Patent No.:** US 11,919,753 B2
(45) **Date of Patent:** *Mar. 5, 2024

(54) **WINCH TIGHTENING MECHANISM**

(71) Applicant: **ARCOSA MARINE PRODUCTS, INC.**, Dallas, TX (US)

(72) Inventors: **Clint Bryan**, Bethpage, TN (US); **Arnold Peek**, Madison, TN (US)

(73) Assignee: **ARCOSA MARINE PRODUCTS, INC.**, Dallas, TX (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 462 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **16/937,727**

(22) Filed: **Jul. 24, 2020**

(65) **Prior Publication Data**

US 2020/0354200 A1      Nov. 12, 2020

**Related U.S. Application Data**

(63) Continuation of application No. 16/389,303, filed on Apr. 19, 2019, now Pat. No. 10,752,476, and a continuation of application No. 15/241,794, filed on Aug. 19, 2016, now Pat. No. 10,266,377.

(60) Provisional application No. 62/326,320, filed on Apr. 22, 2016.

(51) **Int. Cl.**
**B66D 5/34**        (2006.01)
**B66D 1/06**        (2006.01)

(52) **U.S. Cl.**
CPC .................................... **B66D 1/06** (2013.01); **B66D 5/34** (2013.01)

(58) **Field of Classification Search**
CPC ... B66D 1/02; B66D 1/04; B66D 1/06; B66D 5/34
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 1,038,800 | A | * | 9/1912 | Tallon | E21B 19/008 254/365 |
| 2,042,762 | A | * | 6/1936 | Berby | B66D 1/06 477/203 |
| 2,496,249 | A | * | 1/1950 | Lawrence | F16G 11/12 254/222 |
| 2,710,765 | A | * | 6/1955 | Arens | E21B 11/005 294/50.8 |
| 2,946,563 | A | * | 7/1960 | Eaton | F16G 11/12 410/37 |

(Continued)

*Primary Examiner* — Sang K Kim
*Assistant Examiner* — Nathaniel L Adams
(74) *Attorney, Agent, or Firm* — BAKER BOTTS L.L.P.

(57)        **ABSTRACT**

According to some embodiments, a winch tightening apparatus comprises a mounting plate; a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate; and a pawl comprising a first end and a second end. The first end is pivotally coupled to the mounting plate such that the second end pivots to engage a ratchet gear when the mounting plate is rotated in a first direction and pivots to disengage the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction. Some embodiments include a second moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate. Some embodiments include a counterweight coupled to the mounting plate and positioned to rotate the mounting plate in the second direction.

**17 Claims, 13 Drawing Sheets**



## US 11,919,753 B2

Page 2

(56)                   **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 2,992,811 | A * | 7/1961 | Turner | B66F 7/02 |
| | | | | 254/4 B |
| 3,581,586 | A * | 6/1971 | Blackburn | B66D 1/06 |
| | | | | 74/159 |
| 3,597,995 | A * | 8/1971 | Hawkins | B66D 3/14 |
| | | | | 74/491 |
| 3,799,005 | A * | 3/1974 | Koehler | B66D 1/04 |
| | | | | 254/354 |
| 3,799,055 | A * | 3/1974 | Irish, Jr. | F42B 5/08 |
| | | | | 102/202.8 |
| 4,456,227 | A * | 6/1984 | Notenboom | B66D 1/06 |
| | | | | 254/350 |
| 4,591,029 | A * | 5/1986 | Da Foe | B66D 5/34 |
| | | | | 188/134 |
| 8,974,159 | B1 * | 3/2015 | Ammann | B60P 7/0846 |
| | | | | 410/97 |
| 9,004,456 | B2 * | 4/2015 | Topping, Jr. | B66D 1/54 |
| | | | | 254/222 |
| 10,266,377 | B2 * | 4/2019 | Bryan | B66D 1/06 |
| 10,752,476 | B2 * | 8/2020 | Bryan | B66D 5/34 |
| 10,850,957 | B2 * | 12/2020 | Perrin | B25B 23/0028 |
| 2015/0197413 | A1 * | 7/2015 | Doig | B63C 3/02 |
| | | | | 248/124.2 |
| 2017/0305728 | A1 * | 10/2017 | Bryan | B66D 5/34 |
| 2017/0362066 | A1 * | 12/2017 | Grapes | B66D 1/06 |
| 2019/0241410 | A1 * | 8/2019 | Bryan | B66D 1/06 |
| 2020/0354200 | A1 * | 11/2020 | Bryan | B66D 5/34 |

* cited by examiner



FIG. 1



FIG. 2A



FIG. 2B



FIG. 3A



FIG. 3B



FIG. 4



FIG. 5B



FIG. 5A



FIG. 6



FIG. 7



FIG. 8



FIG. 9



FIG. 10B



FIG. 10A



FIG. 11

US 11,919,753 B2

# WINCH TIGHTENING MECHANISM

## RELATED APPLICATIONS

This application is a continuation under 35 U.S.C. § 120 of U.S. continuation application Ser. No. 16/389,303 which is a continuation under 35 U.S.C. § 120 of U.S. patent application Ser. No. 15/241,794 which claims priority to U.S. Provisional Patent Application No. 62/326,320 filed Apr. 22, 2016, all of which are hereby incorporated by reference in their entirety.

## TECHNICAL FIELD OF THE INVENTION

This disclosure generally relates to winches, and more particularly to a winch tightening mechanism.

## BACKGROUND

Winches for tensioning and paying out wire line or rope are well known in the marine industry. Deck hands use manual or powered winches to assist with tasks such a loading or unloading cargo or connecting two vessels together. Marine vessels may also maintain their position in relation to a mooring structure, such as a dock, by using winches.

The barge transportation industry uses winches to connect barges to each other in a barge tow and to connect the barge tow to a tow vessel. Each barge typically has two or four deck-mounted, manually-operated winches. A deck hand connects the winch line to a deck fitting on an adjacent barge and then ratchets the line tight, connecting the barges together. To disassemble the barge tow, the deck hand releases tension on the winch and pays out the line. A tow vessel typically connects to the rear of the barge tow in a similar manner. During transportation, deck hands may need to disassemble and reassemble the barge tow to pass through locks or navigate constricted waterways. Deck mounted winches may also secure a barge to a dock during loading or unloading operations.

In a typical winch, a geared drive mechanism typically rotates a winch drum to spool a wire line around the winch drum. As the drive mechanism rotates the winch drum, a winch locking gear, such as a pawl and ratchet gear, maintains tension on the winch line by preventing the winch drum from rotating in the opposite direction. Conventional manual winches use a hand wheel or bar shaped handle to turn the drive mechanism. For a long period of time, manual winches were operated primarily by a large spoked handwheel. The long spokes of the large handwheel provided locations for a winch operator to place both his hands and feet. The spokes provided large moment arms to assist with tightening the winch. For example, a winch operator might take up a majority of the winch line by spinning the spoked handwheel with only his hands. To finish tightening the winch to a desired line tension, the winch operator may attempt w rotate the winch by a few more teeth of the winch locking gear. To provide the leverage for the extra rotation, the winch operator may place both hands along the top of the handwheel and a foot against a spoke at the bottom of the handwheel to use his relatively stronger leg muscles to assist with the final tensioning. In this way the operator is both pulling with his arms and pushing with his leg to generate tension.

While use of the large spoked handwheel may be effective, it can be dangerous if used improperly. Accordingly, the winch industry has transitioned to solid handwheels. A solid handwheel is typically smaller than the spoked handwheel to conserve weight. The smaller handwheel diameter and solid design, however, make it difficult for a winch operator to generate even half the line tension as they were able to generate with a spoked handwheel.

In response, the winch industry relies on ratchets with long pipe extensions to generate the leverage necessary for the desired line tension. The pipe extension, however, is generally too long to leave in place during normal operation. Thus, the pipe extension is removed and stowed when not in use. Because the pipe extension is not fixed to the winch, for each tightening operation the operator locates and attaches the pipe extension, which adds extra time to the operation. Worse, the pipe extension may get lost. Furthermore, an operator often uses improper motion with the pipe extension, which can cause operators to overextend and suffer sometimes serious injuries.

## SUMMARY OF THE INVENTION

Particular embodiments described herein include a limited motion and pedal indexing mechanism that may incorporate upper and lower body strength for tightening a mechanical winch both quickly and safely. Particular embodiments include a winch ratchet mechanism with the benefits of a spoked handwheel without the safety disadvantages. Particular embodiments provide ergonomic benefits to the winch operator which can reduce injury and improve operator efficiency.

According to some embodiments, a winch apparatus comprises a winch housing; a winch drum rotationally coupled to the winch housing by a drive shaft; a ratchet gear coupled to the drive shaft for rotating the winch drum; a hub coupled to the winch housing and positioned concentrically around the ratchet gear; a mounting plate coupled to the hub and configured to rotate around an axis of the hub; a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate; and a pawl comprising a first end and a second end. The first end of the pawl is pivotally coupled to the mounting plate and positioned such that the second end of the pawl engages the ratchet gear when the mounting plate is rotated in a first direction and disengages the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction. Some embodiments include a second moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate.

In particular embodiments, the hub comprises a slot in a portion of its circumference, and the pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

Particular embodiments include a counterweight coupled to the mounting plate. The counterweight is positioned to rotate the mounting plate in the second direction to automatically disengage the pawl from the ratchet gear. The counterweight may be gravity operated or spring operated.

Particular embodiments include a slot in the mounting plate and a stop pin coupled to the winch housing and extending into the slot in the mounting plate such that the stop pin limits the rotational motion of the mounting plate.

In particular embodiments, the first moment arm comprises an enclosed handle. The first moment arm may comprise a first portion coupled to the mounting plate and a

US 11,919,753 B2

**3**

second portion coupled to the first portion. The second portion may be detachable from the first portion. The first moment arm may comprise a shear point.

According to some embodiments, a winch tightening apparatus comprises a mounting plate; a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate; and a pawl comprising a first end and a second end. The first end is pivotally coupled to the mounting plate such that the second end pivots to engage a ratchet gear when the mounting plate is rotated in a first direction and pivots to disengage the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction. Some embodiments include a second moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate. Some embodiments include a counterweight coupled to the mounting plate and positioned to rotate the mounting plate in the second direction.

In particular embodiments, a hub is positioned concentrically around the ratchet gear. The hub comprises a slot in a portion of it circumference. The pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

In particular embodiments, the first moment arm comprises an enclosed handle. The first moment arm may comprise a first portion coupled to the mounting plate and a second portion coupled to the first portion. The second portion may be detachable from the first portion. The first moment arm may comprise a shear point.

According to some embodiments, a method comprises providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a drive shaft; positioning a hub concentrically around the driveshaft; coupling the hub to the winch housing; and rotationally coupling a winch tightening apparatus to the hub. The winch tightening apparatus comprises a. first moment arm coupled to a mounting plate and configured to provide leverage for rotating the mounting plate, and a pawl comprising a first end and a second end. The first end is pivotally coupled to the mounting plate such that the second end pivots to engage ratchet gear when the mounting plate is rotated in a first direction and pivots to disengage the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction.

In particular embodiments, the method further comprises coupling the ratchet gear to the drive shaft. The method may include coupling a stop pin to the winch housing positioned such that the stop pin extends into a slot in the mounting plate to limit the rotational motion of the mounting plate.

In particular embodiments, the hub comprises a slot in a portion of its circumference. The pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

As a result, particular embodiments of the present disclosure may provide numerous technical advantages. For example, particular embodiments improve a winch operator's efficiency because the operator may tension the winch line faster than conventional methods where the operator

**4**

had to locate and install a pipe extension. The winch line may pay out easier, reducing operator fatigue.

A winch operator may use both his arms and legs on two moment arms, generating a moment couple, which enables the operator to generate more tension than with a simple lever arm. Accordingly, particular embodiments enable the winch operator to generate greater line tension than with conventional methods.

Particular embodiments provide safety advantages. For example, particular embodiments significantly reduce the range of motion an operator uses to generate line tension, which may reduce a risk of overstressing muscles from working in an awkward position. Particular embodiments reduce the ability of the winch to return the energy of the winch line tension back to the operator. A winch operator may use the embodiments described herein in an ergonomic and adjustable manner.

During transportation of a barge tow (comprising fifteen, thirty-five, or more barges assembled together), an operator may need to disassemble and reassemble the barge tow to pass through locks or navigate constricted waterways multiples times per trip. Thus, even small improvements in operator efficiency (e.g., faster winch operations, reduced operator fatigue, etc.) are multiplied and amount to significant gains over the course of a single barge trip. Particular embodiments of the present disclosure may provide some, none, all, or additional technical advantages.

BRIEF DESCRIPTION OF THE DRAWINGS

A more complete and thorough understanding of the particular embodiments and advantages thereof may be acquired by referring to the following description taken in conjunction with the accompanying drawings, in which like reference numbers indicate like features, and wherein:

FIG. **1** is a perspective schematic of a winch with an example winch tightening mechanism, according to some embodiments;

FIG. **2A** is a perspective schematic of a winch with an example winch tightening mechanism in a rest position with the closed handwheel removed for ease of illustration, according to some embodiments;

FIG. **2B** is a side schematic of a winch with an example winch tightening mechanism in a rest position with the closed handwheel removed for ease of illustration, according to some embodiments;

FIG. **3A** is a perspective schematic of a winch with an example winch tightening mechanism in an indexed position with the closed handwheel removed for case of illustration, according to some embodiments;

FIG. **3B** is a side schematic of a winch with an example winch tightening mechanism in an indexed position with the closed handwheel removed for ease of illustration, according to some embodiments;

FIG. **4** is a perspective schematic of an example winch tightening mechanism, according to particular embodiments;

FIG. **5A** is a side schematic of an example winch tightening mechanism, according to particular embodiments;

FIG. **5B** is a sectional schematic of an example winch tightening mechanism, according to particular embodiments;

FIG. **6** is an exploded schematic of an example winch tightening mechanism, according to particular embodiments;

US 11,919,753 B2

5

FIG. **7** is a side and section schematic of a ratchet of an example winch tightening mechanism, according to particular embodiments;

FIG. **8** is a sectional schematic of a winch drive shaft and a ratchet of an example winch tightening mechanism, according to particular embodiments;

FIG. **9** illustrates a sequence of steps for tightening a winch line, according to some embodiments;

FIG. **10A** is a sectional schematic of an example winch tightening mechanism illustrating a pawl in an indexed position, according to a particular embodiment;

FIG. **10B** is a sectional schematic of an example winch tightening mechanism illustrating a pawl in a rest position, according to a particular embodiment; and

FIG. **11** is a flow diagram illustrating an example method of coupling a winch tightening mechanism to a winch, according to some embodiments.

## DETAILED DESCRIPTION

Conventional mechanisms for tensioning a winch line, such as the closed handwheel, may not provide enough leverage to adequately tension a winch line. Long pipe extensions used to generate additional leverage can cause an operator stress, fatigue, or even injury because of the operator's forceful exertions in sometimes awkward positions. Furthermore, locating, attaching, and removing the pipe extension adds time to each winch operation, which reduces operator productivity.

Particular embodiments obviate the problems described above and include a limited motion and pedal indexing mechanism to incorporate upper and lower body strength for tightening a mechanical winch both quickly and safely. Particular embodiments include a winch ratchet mechanism with the leverage benefits of a spoked handwheel, but without the safety disadvantages. Particular embodiments provide ergonomic benefits to the winch operator which can reduce injury.

Particular embodiments of the invention and its advantages are best understood by reference to FIGS. **1** through **11** wherein like reference numbers indicate like features.

FIG. **1** is a perspective schematic of a winch with an example winch tightening mechanism, according to some embodiments. Winch **10** includes winch housing **20**, which houses winch drum **22** for spooling winch line. Winch drum **22** is rotationally mounted within winch housing **20**. Drive shaft **24** drives a geared drive mechanism coupled to winch drum **22** to rotate winch drum **22**. Closed handwheel **26** is coupled to drive shaft **24**. A winch operator rotates closed handwheel **26** to operate the winch.

In particular embodiments, winch **10** includes winch tightening apparatus **30**. Winch tightening apparatus **30** includes upper arm **32** and may include lower arm **34**. Winch tightening apparatus **30** is coupled to drive shaft **24** via a ratchet gear and pawl (described in more detail below). Upper arm **32** may be referred to as a first moment or first moment arm and lower arm **34** may be referred to as a second moment or second moment arm. Together, these two moments create a couple. The couple created by upper arm **32** and lower arm **34** may be used to rotate drive shaft **24**. Using upper arm **32** and lower arm **34**, a winch operator may rotate winch tightening apparatus **30** to apply tension to the winch line when operating the winch.

For example, when tensioning a winch line, an operator may use closed handwheel **26** to take up a majority of the winch line. Closed handwheel **26** may also be referred to as a primary tensioning mechanism. When closed handwheel

6

**26** no longer provides enough leverage to continue tensioning the winch line, the operator may use winch tightening apparatus **30** to apply the final tension. Winch tightening apparatus **30** may also be referred to as a secondary tensioning mechanism. The operator may pull upper arm **32** with one or both hands and may push down on lower arm **34** with a foot.

The couple created by upper arm **32** and lower arm **34** is able to generate more winch line tension than closed handwheel **26** can generate. The additional leverage provides the same advantages as a large spoked handwheel or a pipe extension, without the safety disadvantages. For example, the compact and ergonomic position of upper arm **32** and lower arm **34** facilitate an operator exerting considerable force without risk of over extension and injury. An operator may use both hands and feet on at least two leverage points. Thus, in addition to upper body muscles, the operator may also use stronger lower body muscles to exert force on the leverage points.

Different than a conventional pipe extension, winch tightening apparatus **30** is compact enough that it may be attached to winch **10** without substantially interfering with the space around the winch. Thus, winch tightening apparatus **30** provides operational advantages over the conventional pipe extension because the operator may eliminate the time and effort needed to attach, remove, and stow the pipe extension.

FIG. **2A** is a perspective schematic of a winch with an example winch tightening mechanism in a rest position with the closed handwheel removed for ease of illustration, according to some embodiments. Winch **10** includes winch housing **20**, winch drum **22**, drive shaft **24**, and winch tightening apparatus **30** similar to those described above with respect to FIG. **1**.

In particular embodiments, winch tightening apparatus **30** includes hub **40**, inner mounting plate **42**, and outer mounting plate **44**. Hub **40** rotationally couples inner mounting plate **42** and outer mounting plate **44** to winch housing **20**. Inner mounting plate **42** and outer mounting plate **44** provide coupling points for upper arm **32**, lower arm **34**, and counterweight **36**.

In particular embodiments, ratchet gear **50** is coupled to drive shaft **24**. A pawl (e.g., pawl **90** described in more detail below with respect to FIGS. **6**, **10A** and **10B**) pivotally coupled (e.g., pinned) between inner mounting plate **42** and outer mounting plate **44** is operable to engage ratchet gear **50** as winch tightening apparatus **30** is rotated around hub **40**. A winch operator may rotate winch tightening apparatus **30** using upper arm **32** and lower arm **34** to engage the pawl with ratchet gear **50** and rotate drive shaft **24**.

In particular embodiments, one or both of inner mounting plate **42** and outer mounting plate **44** may include slot **38**. Slot **38** may restrict the rotational motion of winch tightening apparatus **30**. For example, particular embodiments include stop pin **52** coupled to winch housing **20**. Stop pin **52** may extend into slot **38**. As winch tightening apparatus **30** rotates with stop pin **52** in slot **38**, the length of slot **38** limits the range of motion of winch tightening apparatus **30**. Varying the length of slot **38** varies the range of motion of winch tightening apparatus **30**. In particular embodiments, the range of motion may be limited to approximately 30 degrees. Other embodiments may limit the range of motion to any suitable range for a particular winch. For example, the range of motion may vary according the size or gearing of a particular winch.

One advantage of the limited range of motion is operator safety. For example, if the winch tightening apparatus **30** is

US 11,919,753 B2

7

accidentally released under load in an uncontrolled manner, the limited range of motion will prevent upper arm **32** and lower arm **34** from spinning out of control, substantially reducing the chance of them striking the operator. Other advantages of slot **38** are described below.

Rotating winch tightening apparatus **30** to turn drive shaft **24** may be referred to as an indexing operation. The motion of pulling on upper arm **32** and pushing down on lower arm **34** may be referred to as an indexing stroke. For example, in particular embodiments and indexing stroke may index ratchet gear **50** by one gear tooth. Other embodiments may index ratchet gear **50** by any suitable number of gear teeth per indexing operation or indexing stroke.

In particular embodiments, the length of slot **38** may determine the number of teeth of ratchet gear **50** that may be indexed in one indexing stroke. For safety, slot **38** may be sized to limit each indexing stroke to indexing a single tooth of ratchet gear **50**.

In particular embodiments, counterweight **36** may be coupled to inner mounting plate **42** and outer mounting plate **44**. Counterweight **36** is positioned on inner mounting plate **42** and outer mounting plate **44** so that after each indexing stroke, the weight of counterweight **36** causes winch tightening apparatus **30** to rotate and disengage the pawl from ratchet gear **50**.

When the pawl of winch tightening apparatus **30** is disengaged from ratchet gear **50**, winch tightening apparatus **30** may be referred to as in the rest position. When the pawl of winch tightening apparatus **30** is engaged with ratchet gear **50**, winch tightening apparatus **30** may be referred to as in the indexed position.

Counterweight **36** returns winch tightening apparatus **30** from the indexed position to the rest position when the operator releases upper arm **32** and lower arm **34**. FIG. **2A** illustrates winch tightening apparatus **30** in a rest position.

In particular embodiments, counterweight **36** may provide a safety advantage. For example, by returning winch tightening apparatus **30** to the rest position after each indexing operation, a winch operator may not accidentally leave the pawl of the winch tightening apparatus **30** engaged with ratchet gear **50**. This provides a safety advantage because, if the winch locking gear is accidentally released under load in an uncontrolled manner and the pawl is still engaged with ratchet gear **50**, then winch tightening apparatus **30**, including upper arm **32** and lower arm **34**, may also spin out of control causing serious injury. If the pawl is not engaged with ratchet gear **50**, however, then winch tightening apparatus **30** may remain stationary even if winch drum **22** and drive shaft **24** are spinning out of control.

FIG. **2B** is a side schematic of a winch with an example winch tightening mechanism in a rest position with the closed handwheel removed for ease of illustration, according to some embodiments. FIG. **2B** illustrates the side view of the elements described with respect to FIG. **2A**.

In the illustrated example, winch tightening apparatus **30** is in the rest position. In the rest position, counterweight **36** applies a force to winch tightening apparatus **30** such that the top of slot **38** is resting against stop pin **52**.

In particular embodiments, both inner mounting plate **42** and outer mounting plate **44** may include slot **38**. In other embodiments, only inner mounting plate **42** includes slot **38**. In particular embodiments, a mechanical stop may be fixed to inner mounting plate **42** and the range of motion of winch tightening apparatus **30** may be limited by a slot or protrusions on winch housing **20**. Other embodiments may include any suitable mechanism to limit the rotation of winch tightening apparatus **30**.

8

Although the illustrated embodiments depict counterweight **36** as a gravity operated by a weighted arm, in other embodiments counterweight **36** may include a spring, or a combination of springs and/or weights. In some embodiments, counterweight **36** may comprise any suitable mechanism for returning winch tightening apparatus **30** to a rest position.

FIG. **3A** is a perspective schematic of a winch with an example winch tightening mechanism in an indexed position with the closed handwheel removed for ease of illustration, according to some embodiments. FIG. **3A** illustrates elements similar to those described with respect to FIG. **2A**.

In the illustrated example, winch tightening apparatus **30** is in the indexed position. In the indexed position, an operator has applied a force to winch tightening apparatus **30** such that the bottom of slot **38** is resting against stop pin **52**. In particular embodiments, the combination of slot **38** and stop pin **52** may limit the indexing operation to indexing any suitable number of teeth of ratchet gear **50**. For safety, the indexing operation may be limited to particular number to restrict a winch operator from attempting to tension the winch line too much at one time. This limits the ability of the energy stored in the winch line to return to the winch operator.

FIG. **3B** is a side schematic of a winch with an example winch tightening mechanism in an indexed position with the closed handwheel removed for ease of illustration, according to some embodiments. FIG. **3B** illustrates the side view of the elements described with respect to FIG. **3A**. FIGS. **10A** and **10B** described below illustrate winch tightening apparatus **30** in the indexed and rest positions, respectively, with outside mounting plate **46** removed to provide a more detailed description of the indexed and rest positions.

Although the illustrated embodiments depict ratchet gear **50** coupled directly to drive shaft **24**, in other embodiments ratchet gear **50** may be coupled to drive shaft **24** via any number of secondary gears. For example, any suitable configuration of reduction or other gears may couple ratchet gear **50** to drive shaft **24**. In addition to changing gear ratios, particular embodiments may include secondary gears to more ergonomically position winch tightening apparatus **30**.

For example, in particular embodiments, winch **10** may be larger or smaller than those illustrated herein. For certain large or small winches, coupling ratchet gear **50** (and hub **40**, etc.) near drive shaft **24** may position winch tightening apparatus **30** too high or low for comfortable operation. Some embodiments may include secondary gears (or any other suitable mechanism) to couple winch tightening apparatus **30** to winch housing **20** at a location suitable for safe and efficient operation.

Although the illustrated embodiments depict winch tightening apparatus **30** positioned between the closed handwheel and the winch housing, other embodiments may position winch tightening apparatus **30** at any suitable location. For example, particular embodiments may position winch tightening apparatus **30** on a different side of the winch than the closed handwheel, or on the same side of the winch, but offset from the closed handwheel.

FIG. **4** is a perspective schematic of an example winch tightening mechanism, according to particular embodiments. In particular embodiments, winch tightening apparatus **30** includes upper arm **32**, lower arm **34**, counterweight **36**, slot **38**, inner mounting plate **42**, and outer mounting plate **44** similar to those described above with respect to FIGS. **1-3**. In particular embodiments, winch tightening apparatus **30** includes cover plate **46**. Cover plate **46** covers

US 11,919,753 B2

9

hub **40**. In particular embodiments, cover plate **46** may couple inner mounting plate **42** and outer mounting plate **44** to hub **40**.

In particular embodiments, upper arm **32** and lower arm **34** are positioned approximately 120 to 150 degrees apart. Other embodiments may position upper arm **32** and lower arm **34** relative to each other in a position suitable for a particular winch or particular operator. For example, as illustrated inner mounting plate **42** and outer mounting plate **44** include a series of mounting holes along their perimeter. In particular embodiments, upper arm **32**, lower arm **34**, and counterweight **36** may be coupled (e.g., bolted, welded, or any other suitable fastening mechanism) at any suitable location around the perimeter of inner mounting plate **42** and outer mounting plate **44**.

In particular embodiments, upper arm **32** includes hollow portion **60**, solid portion **62**, and handle **68**. Solid portion **62** couples to inner mounting plate **42** and outer mounting plate **44**. Hollow portion **60** may be coupled to solid portion **62** and handle **68** may be coupled to hollow portion **60**. Handle **68** may assist a winch operator to apply rotational pressure to upper arm **32**.

In particular embodiments, hollow portion **60** and/or handle **68** may be detachable and field replaceable. For example, in particular embodiments solid portion **62** may include a series of coupling points for hollow portion **60**. An overall length of upper arm **32** may be adjusted by coupling hollow portion **60** to a different coupling point of solid portion **62**. In particular embodiments, the length of upper arm **32** may be adjusted for the comfort of a particular operator, may be adjusted to vary the mechanical advantage of upper arm **32**, or adjusted for any other suitable purpose.

In some embodiments, multiple hollow portions **60** may be easily substituted for each other by simply coupling a different hollow portion **60** to solid portion **62**. This may facilitate easy replacement of parts, or easy substitution of customized parts (e.g. different style handles, different length parts, etc.).

Although handle **68** is illustrated as a bar, handle **68** may comprise a bar, platform, stirrup, or any other suitable shape for an operator to apply force to upper arm **32**. An enclosed handle may provide particular advantages. For example, handle **68** may comprise an enclosed D-shape. A particular advantage of a D-shaped handle (or any other enclosed shape) is that the closed nature of the D-shape reduces the risk that the handle may snag an operator's clothing or equipment. As a particular example, an operator wearing a life jacket may catch the straps of the life jacket on a bar-shaped handle. The closed nature of a D-shaped handle, however, is less likely to catch the straps of the lifejacket, or other clothing or equipment. Handle **68** may include a non-slip texture, rubberized grips, or any other suitable coating material.

In particular embodiments, lower arm **34** includes hollow portion **64**, solid portion **66**, and handle **70**. Similar to upper arm **32** described above, solid portion **66** couples to inner mounting plate **42** and outer mounting plate **44**. Hollow portion **64** may be coupled to solid portion **66** and handle **70** may be coupled to hollow portion **64**. Hollow portion **64** and/or handle **70** may be detachable or field replaceable. In particular embodiments, solid portion **66** may include a series of coupling points for hollow portion **64**. An overall length of lower arm **34** may be adjusted by coupling hollow portion **64** to a different coupling point of solid portion **66**. Handle **70** may include any suitable configuration as described with respect to handle **68**.

10

In particular embodiments, one or both of hollow portions **60** and **64** may be configured to shear away from solid portions **62** and **66**, respectively. For example, during barge operation one barge or tug may accidentally overtop another barge (i.e., an edge of one barge may come up and over the edge of another barge). Winches are typically located at the corners of the barge deck where they are likely to suffer collision damage if a barge is overtopped. While winch housing **20** may be generally compact and structurally strong enough to protect the components inside winch housing **20** if the barge is overtopped, upper arm **32** and/or lower arm **34** may extend outward from winch housing **20** and may be susceptible to damage if the barge is overtopped. Furthermore, excessive force applied to upper arm **32** and/or lower arm **34** may damage other components of winch **10**. Enabling upper arm **32** and/or lower arm **34** to shear away may prevent damage to other components of winch **10** if the barge is overtopped.

In particular embodiments, one or both of hollow portions **60** and **64** may comprise a shear point. For example, one or both of hollow portions **60** and **64** may be coupled to solid portions **62** and **66**, respectively, with a shareable coupling. In particular embodiments, the shareable coupling may include a shear pin coupling, for example, hollow portion **60** to solid portion **62**. In some embodiments, hollow portion **60** may comprise a shear point at a particular location along its length, or may comprise a softer material than solid portion **62**, such that hollow portion **60** will break or shear away from solid portion **62** when a particular force is applied to hollow portion **60**.

FIG. **5A** is a side schematic of an example winch tightening mechanism, according to particular embodiments, FIG. **5A** is a side schematic of winch tightening apparatus **30** illustrated in FIG. **4**.

FIG. **5B** is a sectional schematic of an example winch tightening mechanism, according to particular embodiments. FIG. **5B** is a sectional schematic taken along the dashed line labeled A of FIG. **5A**.

In particular embodiments, inner mounting plate **42** and outer mounting plate **44** include a plurality of bolt holes around their perimeter. Using these bolt holes, upper arm **32**, lower arm **34**, and/or counterweight **36** may be positioned at any suitable position around inner mounting plate **42** and outer mounting plate **44**. In particular embodiments, the position of upper arm **32**, lower arm **34**, and/or counterweight **36** around inner mounting plate **42** and outer mounting plate **44** may be adjusted in the field (e.g., to adapt to a particular operator, to a particular winch location, to a particular lading, etc.).

Particular embodiments may not include lower arm **34**, or lower arm **34** may be added/removed in the field as desired by a particular operator. Even without lower arm **34** to provide additional leverage, particular embodiments benefit from the other safety and ergonomic benefits described herein with respect to winch tightening apparatus **30**.

Particular embodiments are illustrated with open space between inner mounting plate **42** and outer mounting plate **44** and between upper arm **32**, lower arm **34**, and/or counterweight **36** (i.e., the area between inner mounting plate **42** and outer mounting plate **44** that is not occupied by upper arm **32**, lower arm **34**, and/or counterweight **36** is left open). In other embodiments, the open space may be filled (at least partially) with a dustcover (e.g., plastic, metal, or any other suitable material) to prevent dirt, water, ice, snow, or other contaminants from fouling hub **40** or other components of winch **10**. For example, the bolt holes around the perimeter of inner mounting plate **42** and outer mounting plate **44** not

US 11,919,753 B2

**11**

used to secure upper arm **32**, lower arm **34**, and/or counterweight **36** may be used to secure a strip of plastic, metal, etc. in the openings between upper arm **32**, lower arm **34**, and/or counterweight **36**.

In particular embodiments, the various components illustrated as coupled together may actually comprise a single component. For example, in some embodiments any one or more of inner mounting plate **42**, outer mounting plate **44**, solid portions **62**, solid portion **66**, hollow portion **60**, hollow portion **64**, handle **68**, handle **70**, upper arm **32**, lower arm **34**, or counterweight **36**, etc. may be formed as a single component or group of components.

FIG. **6** is an exploded schematic of an example winch tightening mechanism, according to particular embodiments. Like numbered components are similar to those described above with respect to FIGS. **1**-**5**B.

In the illustrated exploded view, pawl **90** is visible. Pawl **90** may also be referred to as a dog. In particular embodiments, a first end of pawl **90** is pivotally coupled to inner mounting plate **42** and/or outer mounting plate **44**. In some embodiments, the first end of pawl **90** may be pinned between inner mounting plate **42** and/or outer mounting plate **44**.

In particular embodiments, hub **40** includes central hub **80**, hub bushing **82**, and outer hub **84** fitted over hub bushing **82**. Hub **40** also includes slot **86**. In particular embodiments, hub bushing **82** may comprise a bronze (or any other suitable material) bushing forced onto central hub **80**. Hub bushing **82** may provide sliding contact with outer hub **84**. In particular embodiments, the sliding contact may be assisted by oil, grease, or any other suitable lubricant. Inner mounting plate **42** and outer mounting plate **44** may be coupled to outer hub **84** via welding or any other suitable coupling method.

Pawl **90** is movably or pivotally hinged (e.g., pinned) at a first end such that a second end of pawl **90** may pass through slot **86** of hub **40** to engage with ratchet gear **50**. For example, during an indexing operation, pawl **90** engages with ratchet gear **50** as winch tightening apparatus **30** is rotated in a first direction around hub **40**. After the indexing operation, counterweight **36** may rotate winch tightening apparatus **30** in an opposite direction which may lift pawl **90** out of slot **86** and disengage pawl **90** from ratchet gear **50**. In particular embodiments, slot **38** may be shaped such that rotation of winch tightening apparatus **30** in the direction opposite the tensioning direction automatically forces pawl **90** out of engagement with ratchet gear **50**. When pawl **90** is disengaged from ratchet gear **50**, winch tightening apparatus **30** is in a rest position. FIGS. **10**A and **10**B provide a more detailed illustration of the interaction between pawl **90**, slot **86** of hub **40**, and ratchet gear **50**.

FIG. **7** is a side and section schematic of a ratchet of an example winch tightening mechanism, according to particular embodiments. FIG. **7** includes aside view of winch **10** illustrated in FIGS. **1**-**3**B with winch tightening apparatus **30** removed for ease of illustration. FIG. **7** also includes a sectional view of hub **40**, ratchet gear **50**, and stop pin **52** taken along the line labeled A.

In the side view, ratchet gear **50** is coupled to drive shaft **24**. Hub **40** surrounds drive shaft **24** and ratchet gear **50**. Hub **40** couples winch tightening apparatus **30** to winch housing **20**.

As illustrated in the sectional view, hub **40** includes slot **86**. Slot **86** provides access for pawl **90** to engage with ratchet gear **50**. When pawl **90** is not engaged with ratchet gear **50**, winch tightening apparatus **30** is free to rotate around hub **40** independent of drive shaft **24**. When pawl **90**

**12**

is engaged with ratchet gear **50**, rotation of winch tightening apparatus **30** rotates drive shaft **24**.

FIG. **8** is a sectional schematic of a winch drive shaft and a ratchet of an example winch tightening mechanism, according to particular embodiments. Like numbered components are similar to those described above with respect to FIGS. **1**-**6**.

As described above, ratchet gear **50** is coupled to drive shaft **24**. Inner hub **80** is coupled to winch housing **20**. Stop pin **52** is also coupled to winch housing **20** and limits the travel of winch tightening apparatus **30**. Ratchet gear **50** and inner hub **80** comprise part of the secondary tensioning system.

Also illustrated are drive shaft bushings **102**, driving gear **104**, locking gear **106**, brake drum **108**, and hub bushing/bearing **110**. These components comprise part of the primary tensioning system. For example, driving gear **104** comprises the primary tensioning gear and may be controlled by closed handwheel **26**. When pawl **90** is not engaged with ratchet gear **50**, ratchet gear **50** rotates freely with drive shaft **24** under the primary tensioning operation. When a winch operator performs an indexing operation causing pawl **90** to engage with ratchet gear **50**, then the secondary tensioning system operates in conjunction with components of the primary tensioning system (e.g., driving gear **104**, locking gear **106**, etc.) to increase the tension of the winch line.

FIG. **9** illustrates a sequence of steps for tightening a winch line, according to some embodiments. In particular embodiments, one or more steps may be performed using the winch components described with respect to FIGS. **1**-**8**. FIG. **9** illustrates three steps included for tightening winch line **92** onto a winch, such as winch **10** described above.

At step **910**, the winch operator rotates closed handwheel **26** in the direction of the arrow to take up the slack in winch line **92**. The winch tightening apparatus is in the rest position during this step, thus the winch tightening apparatus does not rotate (i.e., upper arm **32** and lower arm **34** are stationary). The winch operator rotates handwheel **26** until winch line **92** is as tight as the operator is able to make it using handwheel **26**.

At step **912**, the winch operator pulls upper arm **32** with one or both hands and pushes down on lower arm **34** with a foot (see illustrated arrows) to index the winch tightening apparatus and apply additional tension to winch line **92**. As described above, the range of the indexing motion may be limited to a particular number of teeth of ratchet gear **50** or locking gear **106**. The range may be limited by the length of slot **86** in hub **40** and/or the length of slot **38** in outer mounting plate **44** and/or inner mounting plate **42**.

At step **914**, the winch operator releases pressure on upper arm **32** and lower arm **34**. Counterweight **36** automatically rotates the winch tightening apparatus in the opposite direction (see arrow illustrating rotational direction) which disengages the winch tightening apparatus from the winch drive shaft. Winch tightening apparatus returns to the rest position. Steps **912** and **914** may be repeated any number of times until the winch operator creates the desired amount of tension in winch line **92**.

FIGS. **10**A and **10**B illustrate the interaction between pawl **90**, slot **86** of hub **40**, and ratchet gear **50** in the rest and indexed positions, respectively, with outer mounting plate **44** removed for ease of illustration.

FIG. **10**A is a sectional schematic of an example winch tightening mechanism illustrating a pawl in an indexed position, according to a particular embodiment. Hub **40** includes slot **86** in a portion of its circumference.

US 11,919,753 B2

13

As winch tightening apparatus 30 rotates around hub 40 (see arrow illustrating rotational direction), the circumference of hub 40 prevents pawl 90 from contacting ratchet gear 50 until pawl 90 is rotated past slot 86 at which point pawl 90 may drop through slot 86 to engage ratchet gear 50, as illustrated. Winch tightening apparatus 30 may continue rotating, with ratchet gear 50 engaged and thus applying tension to the winch line, until pawl 90 contacts the end of slot 86. At that point the indexing operation is complete. Counterweight 36 may return winch tightening apparatus 30 back to the rest position, disengaging pawl 90 from ratchet gear 50 as illustrated in FIG. 10B.

In particular embodiments, gravity facilitates pawl 90 engaging ratchet gear 50 as winch tightening apparatus 30 rotates pawl 90 into slot 86. In some embodiments, the engagement and/or disengagement of pawl 90 may be assisted by springs, or any other suitable assistance mechanism.

FIG. 10B is a sectional schematic of an example winch tightening mechanism illustrating a pawl in a rest position, according to a particular embodiment. When winch tightening apparatus 30 is rotated in the opposite direction from the indexing operation (see arrow illustrating rotational direction), pawl 90 comes into contact with an end of slot 86 which causes pawl 90 to lift out of slot 86, disengaging pawl 90 from ratchet gear 50.

A particular advantage provided by slot 86 is that the particular length of slot 86 limits excessive rotational motion associated with an indexing stroke (e.g., preventing the winch operator from tensioning the winch in a position that is harmful). For example, in addition to slot 38 and stop pin 52 described above, slot 86 may also control the number of teeth of ratchet gear 50 or locking gear 106 that each indexing operation may index (e.g., one tooth per stroke). Limiting the number of gear teeth indexed per indexing stroke also limits the range of motion associated with each indexing stroke. Limiting the range of motion may prevent the winch operator from overextending.

Limiting the number of gear teeth indexed per indexing operation may provide another safety advantage by preventing a winch operator from attempting to tighten the winch by too many gear teeth at one time. For example, limiting an indexing operation to a single gear tooth minimizes the amount of line tension an operator is pulling against with each indexing stroke. In particular embodiments, the length and shape of slot 86 may enable indexing of 1, 2, 3, or any suitable number of teeth of ratchet gear 50 or locking gear 106.

A particular advantage of automatically disengaging pawl 90 from ratchet gear 50 after each indexing operation is that it may limit the ability of the energy stored in the winch line to return to the winch operator. For example, if pawl 90 is disengaged from ratchet gear 50, then sudden or uncontrolled movement of winch drum 22 and drive shaft 24 will not be transferred to winch tightening apparatus 30.

Another advantage of particular embodiments is that hub 40 reduces the effort a winch operator exerts to unspool winch line from winch 10. For example, conventional winches may include a ratchet gear coupled to the winch driveshaft with a ratchet handle to engage the ratchet gear. When a winch operator unspools winch line from a conventional winch, the winch operator exerts effort to overcome the drag of the ratchet handle putting pressure on the ratchet gear. A particular advantage of some embodiments is that hub 40 and slot 86 prevent pawl 90 from putting pressure on ratchet gear 50 when a winch operator unspools winch line from winch 10. Accordingly, the winch operator may exert

14

less effort to unspool the winch line, which may amount to a considerable amount of savings when multiplied by the number of times a winch operator may unspool winch line in any given day/trip.

Many existing winches may be retrofitted to include the advantages of the winch tightening embodiments described herein. For example, a winch's existing tightening mechanism (handwheel, ratchet, etc.) may be removed and replaced with one of the embodiments described herein. FIG. 11 illustrates a method of attaching (either new or retrofit) a winch tightening mechanism to a winch.

FIG. 11 is a flow diagram illustrating an example method of coupling a winch tightening mechanism to a winch, according to some embodiments. In particular embodiments, one or more steps of method 1100 may be performed to manufacture a winch, such as the winch described with respect to FIGS. 1-10.

The method begins at step 1102, where a winch housing and winch drum are provided. The winch drum, such as winch drum 22, is rotationally coupled to the housing, such as winch housing 20, by a drive shaft, such as drive shaft 24. In particular embodiments, the winch housing may comprise a new winch housing or a winch housing of an existing winch (i.e., retrofit).

At step 1104, a hub is positioned concentrically around the driveshaft. For example hub 40 may be positioned around driveshaft 24 as illustrated in any of FIGS. 2A-10B.

At step 1106, the hub is coupled to the winch housing. For example, hub 40 may be coupled to winch housing 20. In particular embodiments, hub 40 may be welded to winch housing 20.

At step 1108, a winch tightening apparatus is rotationally coupled to the hub. For example, winch tightening apparatus 30 may be coupled to hub 40 as in any of the embodiments described above.

At optional step 1110, a ratchet gear is coupled to the drive shaft. For example, when manufacturing a new winch, a ratchet gear is coupled to the drive shaft. Additionally, in some retrofit applications the drive shaft may not include a ratchet gear, and so a ratchet gear is coupled to the drive shaft. In other retrofit applications, however, the winch may include a ratchet handle and ratchet gear, in which case the ratchet handle may be removed but the ratchet gear may be reused.

At optional step 1112, a stop pin is coupled to the winch housing. For example, stop pin 52 may be coupled to winch housing 20. In particular embodiments, stop pin 52 may extend into a slot in winch tightening apparatus 30, such as slot 38, to limit the rotational motion of winch tightening apparatus 30.

Modifications, additions, or omissions may be made to the method of FIG. 11. Additionally, one or more steps in method 1100 of FIG. 11 may be performed in parallel or in any suitable order.

Some embodiments of the disclosure may provide one or more technical advantages. As an example, some embodiments improve the speed by which a winch operator may tension the winch because the winch operator no longer needs to locate and install a pipe extension. Also, the range of motion an operator uses to generate line tension is significantly reduced. A winch operator may use both his arms and legs on two moment arms, generating a couple, which enables the operator to generate more tension than with a simple lever arm. Accordingly, the winch operator can generate greater line tension with the winch.

Particular embodiments provide safety advantages. For example, embodiments described herein may be used by the

US 11,919,753 B2

15 16

operator in an ergonomic and adjustable manner, which may reduce a risk of overstressing muscles from working in an awkward position. Particular embodiments reduce the ability of the winch manual controls to return the energy of the winch line tension back to the operator. Accordingly, the time and effort to secure the connection of barges is reduced, while safety is increased. Particular embodiments include moment arms with shear points to reduce damage to the winch if a barge is overtopped. Some embodiments may benefit from some, none, or all of these advantages. Other technical advantages may be readily ascertained by one of ordinary skill in the art.

Modifications, additions, or omissions may be made to the systems and apparatuses disclosed herein without departing from the scope of the invention. The components of the systems and apparatuses may be integrated or separated. Moreover, the operations of the systems and apparatuses may be performed by more, fewer, or other components.

Modifications, additions, or omissions may be made to the methods disclosed herein without departing from the scope of the invention. The methods may include more, fewer, or other steps. Additionally, steps may be performed in any suitable order.

Although embodiments of the present disclosure and their advantages have been described in detail, it should be understood that various changes, substitutions and alternations can be made herein without departing from the spirit and scope of the invention as defined by the claims below.

The invention claimed is:

1. A winch apparatus, comprising:
a winch housing;
a winch drum rotationally coupled to the winch housing by a drive shaft;
a ratchet gear coupled to the drive shaft for rotating the winch drum;
a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft;
a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and
a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.

2. The winch apparatus of claim 1, wherein the counterweight is gravity operated or spring operated.

3. The winch apparatus of claim 1, further comprising a second moment arm coupled to the drive shaft offset from the first moment arm and configured to provide leverage for rotating the drive shaft.

4. The winch apparatus of claim 1, further comprising a stop pin coupled to the winch housing positioned to limit the rotational motion of the first moment arm.

5. The winch apparatus of claim 1, wherein the first moment arm is detachable from the drive shaft.

6. The winch apparatus of claim 1, wherein the first moment arm comprises a shear point.

7. A winch tightening apparatus, comprising:
a first moment arm coupled to a winch drum and configured to provide leverage for rotating the winch drum via a ratchet gear coupled to the winch drum;
a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and
a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.

8. The winch tightening apparatus of claim 7, wherein the counterweight is gravity operated or spring operated.

9. The winch tightening apparatus of claim 7, further comprising a second moment arm coupled to the winch drum offset from the first moment arm and configured to provide leverage for rotating the winch drum.

10. The winch tightening apparatus of claim 7, wherein the first moment arm is detachable from the winch drum.

11. The winch tightening apparatus of claim 7, wherein the first moment arm comprises a shear point.

12. A method comprising:
providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a drive shaft and a ratchet gear;
rotationally coupling a winch tightening apparatus to the drive shaft, the winch tightening apparatus comprising:
a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft;
a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and
a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.

13. The method of claim 12, further comprising coupling a stop pin to the winch housing positioned to limit the rotational motion of the first moment arm.

14. The method of claim 12, wherein the counterweight is gravity operated or spring operated.

15. The method of claim 12, wherein the winch tightening apparatus further comprises a second moment arm coupled to the drive shaft offset from the first moment arm and configured to provide leverage for rotating the drive shaft.

16. The method of claim 12, wherein the first moment arm is detachable from the drive shaft.

17. The method of claim 12, wherein the first moment arm comprises a shear point.

\* \* \* \* \*

# Exhibit F

## Prosecution History of U.S. Patent No. 11,919,753

ATTORNEY DOCKET NO.                                    PATENT APPLICATION
091078.2005

23

CLAIMS:

1.      A winch apparatus, comprising:

a winch housing;

a winch drum rotationally coupled to the winch housing by a drive shaft;

a ratchet gear coupled to the drive shaft for rotating the winch drum;

a hub coupled to the winch housing and positioned concentrically around the ratchet gear;

a mounting plate coupled to the hub and configured to rotate around an axis of the hub;

a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate;

a pawl comprising a first end and a second end, wherein the first end of the pawl is pivotally coupled to the mounting plate and positioned such that the second end of the pawl engages the ratchet gear when the mounting plate is rotated in a first direction and disengages the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction.

2.      The winch apparatus of Claim 1, wherein:

the hub comprises a slot in a portion of its circumference; and

the pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

3.      The winch apparatus of Claim 1, further comprising a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to automatically disengage the pawl from the ratchet gear.

4.      The winch apparatus of Claim 3, wherein the counterweight is gravity operated or spring operated.

ATTORNEY DOCKET NO.                                     PATENT APPLICATION
091078.2005

26

5.      The winch apparatus of Claim 1, further comprising a second moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate.

6.      The winch apparatus of Claim 1, further comprising:

a slot in the mounting plate; and

a stop pin coupled to the winch housing and extending into the slot in the mounting plate such that the stop pin limits the rotational motion of the mounting plate.

7.      The winch apparatus of Claim 1, wherein the first moment arm comprises an enclosed handle.

8.      The winch apparatus of Claim 1, wherein the first moment arm comprises a first portion coupled to the mounting plate and a second portion coupled to the first portion, the second portion detachable from the first portion.

9.      The winch apparatus of Claim 1, wherein the first moment arm comprises a shear point.

ATTORNEY DOCKET NO.
091078/2005

PATENT APPLICATION

27

10.   A winch tightening apparatus, comprising:

a mounting plate;

a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate; and

a pawl comprising a first end and a second end, the first end pivotally coupled to the mounting plate such that the second end pivots to engage a ratchet gear when the mounting plate is rotated in a first direction and pivots to disengage the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction.

11.   The winch tightening apparatus of Claim 10, further comprising a second moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate.

12.   The winch tightening apparatus of Claim 10, further comprising a counterweight coupled to the mounting plate and positioned to rotate the mounting plate in the second direction.

13.   The winch tightening apparatus of Claim 10, further comprising a hub positioned concentrically around the ratchet gear, the hub comprising a slot in a portion of its circumference; and

wherein the pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

14.   The winch tightening apparatus of Claim 10, wherein the first moment arm comprises an enclosed handle.

15.   The winch tightening apparatus of Claim 10, wherein the first moment arm comprises a first portion coupled to the mounting plate and a second portion coupled to the first portion, the second portion detachable from the first portion.

ATTORNEY DOCKET NO.                                          PATENT APPLICATION
091078.2005

28


16.    The winch tightening apparatus of Claim 10, wherein the first moment arm comprises a shear point.

29

17.    A method comprising:

providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a drive shaft;

positioning a hub concentrically around the driveshaft;

coupling the hub to the winch housing;

rotationally coupling a winch tightening apparatus to the hub, the winch tightening apparatus comprising:

a first moment arm coupled to a mounting plate and configured to provide leverage for rotating the mounting plate;

a pawl comprising a first end and a second end, the first end pivotally coupled to the mounting plate such that the second end pivots to engage a ratchet gear when the mounting plate is rotated in a first direction and pivots to disengage the ratchet gear when the mounting plate is rotated in a second direction opposite the first direction.

18.    The method of Claim 17, further comprising coupling the ratchet gear to the drive shaft.

19.    The method of Claim 17, further comprising coupling a stop pin to the winch housing positioned such that the stop pin extends into a slot in the mounting plate to limit the rotational motion of the mounting plate.

20.    The method of Claim 17, wherein:

the hub comprises a slot in a portion of its circumference; and

the pawl pivotally coupled to the mounting plate is positioned such that the second end of the pawl passes through the slot in the hub to engage the ratchet gear when the mounting plate is rotated in the first direction and the second end of the pawl lifts out of the slot in the hub to disengage the ratchet gear when the mounting plate is rotated in the second direction.

ATTORNEY DOCKET NO.
086707.0514

PATENT APPLICATION

CLAIMS

1-20. (Cancelled)

21.    (New) A winch apparatus, comprising:

a winch housing;

a winch drum rotationally coupled to the winch housing by a drive shaft;

a ratchet gear coupled to the drive shaft for rotating the winch drum;

a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft;

a pawl coupled to the first moment arm, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and

a counterweight coupled to the first moment arm, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.

22.    (New) The winch apparatus of Claim 21, wherein the counterweight is gravity operated or spring operated.

23.    (New) The winch apparatus of Claim 21, further comprising a second moment arm coupled to the drive shaft offset from the first moment arm and configured to provide leverage for rotating the drive shaft.

24.    (New) The winch apparatus of Claim 21, further comprising a stop pin coupled to the winch housing positioned to limit the rotational motion of the first moment arm.

25.    (New) The winch apparatus of Claim 21, wherein the first moment arm is detachable from the drive shaft.

50008982                                        3

26.     (New) The winch apparatus of Claim 21, wherein the first moment arm comprises a shear point.

27.     (New) A winch tightening apparatus, comprising:

a first moment arm coupled to a winch drum and configured to provide leverage for rotating the winch drum via a ratchet gear coupled to the winch drum;

a pawl coupled to the first moment arm, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and

a counterweight coupled to the first moment arm, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.

28.     (New) The winch tightening apparatus of Claim 27, wherein the counterweight is gravity operated or spring operated.

29.     (New) The winch tightening apparatus of Claim 27, further comprising a second moment arm coupled to the winch drum offset from the first moment arm and configured to provide leverage for rotating the winch drum.

30.     (New) The winch tightening apparatus of Claim 27, wherein the first moment arm is detachable from the winch drum.

31.     (New) The winch tightening apparatus of Claim 27, wherein the first moment arm comprises a shear point.

32.     (New) A method comprising:

providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a drive shaft and a ratchet gear;

rotationally coupling a winch tightening apparatus to the drive shaft, the winch tightening apparatus comprising:

a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft;

a pawl coupled to the first moment arm, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and

a counterweight coupled to the first moment arm, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.

33.    (New) The method of Claim 32, further comprising coupling a stop pin to the winch housing positioned to limit the rotational motion of the first moment arm.

34.    (New) The method of Claim 32, wherein the counterweight is gravity operated or spring operated.

35.    (New) The method of Claim 32, wherein the winch tightening apparatus further comprises a second moment arm coupled to the drive shaft offset from the first moment arm and configured to provide leverage for rotating the drive shaft.

36.    (New) The method of Claim 32, wherein the first moment arm is detachable from the drive shaft.

37.    (New) The method of Claim 32, wherein the first moment arm comprises a shear point.



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/937,727 | 07/24/2020 | Clint Bryan | 086707.0514 | 7605 |

5073       7590       11/25/2022
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201

| EXAMINER |
|---|
| GALLION, MICHAEL E |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3654 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 11/25/2022 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

PTOmail1@bakerbotts.com

PTOL-90A (Rev. 04/07)

| **Office Action Summary** | **Application No.** 16/937,727 | **Applicant(s)** Bryan et al. | |
|---|---|---|---|
| | **Examiner** MICHAEL E GALLION | **Art Unit** 3654 | **AIA (FITF) Status** Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on 3.
　　☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL.**　　　2b) ☑ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s)　21-37 is/are pending in the application.
　　5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) 21-37 is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☑ The drawing(s) filed on 7/24/2020 is/are: a) ☑ accepted or b) ☐ objected to by the Examiner.
　　Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
　　Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
　　a) ☐ All　　b) ☐ Some**　　c) ☐ None of the:
　　　1. ☐ Certified copies of the priority documents have been received.
　　　2. ☐ Certified copies of the priority documents have been received in Application No. _____.
　　　3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date 7/24/2020.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

Application/Control Number: 16/937,727                                                      Page 2
Art Unit: 3654

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.

### *Claim Rejections - 35 USC § 112*

2.      The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a) IN GENERAL.—The specification shall contain a written description of the invention, and
> of the manner and process of making and using it, in such full, clear, concise, and exact terms as to
> enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to
> make and use the same, and shall set forth the best mode contemplated by the inventor or joint
> inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and
> process of making and using it, in such full, clear, concise, and exact terms as to enable any person
> skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the
> same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

3.      Claims 21-37 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as

failing to comply with the enablement requirement.  The claim(s) contains subject matter which was not

described in the specification in such a way as to enable one skilled in the art to which it pertains, or

with which it is most nearly connected, to make and/or use the invention.   Nowhere in the

specifications or drawings does it disclose the first moment arm being coupled to the drive shaft, pawl,

and counterweight.  As shown, the first moment arm is attached to a mounting plate which in turn is

coupled to the pawl, counterweight, and shaft.

4.      The following is a quotation of 35 U.S.C. 112(b):
> (b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out
> and distinctly claiming the subject matter which the inventor or a joint inventor regards as the
> invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:

Application/Control Number: 16/937,727　　　　　　　　　　　　　　　　　　　　Page 3
Art Unit: 3654

> The specification shall conclude with one or more claims particularly pointing out and distinctly
> claiming the subject matter which the applicant regards as his invention.

### *Double Patenting*

5.　　　The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. A nonstatutory double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

　　　　A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on nonstatutory double patenting provided the reference application or patent either is shown to be commonly owned with the examined application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement. See MPEP § 717.02 for applications subject to examination under the first inventor to file provisions of the AIA as explained in MPEP § 2159. See MPEP § 2146 *et seq.* for applications not subject to examination under the first inventor to file provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

　　　　The USPTO Internet website contains terminal disclaimer forms which may be used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26, PTO/AIA/25, or PTO/AIA/26) should be used. A

Application/Control Number: 16/937,727                                           Page 4
Art Unit: 3654

web-based eTerminal Disclaimer may be filled out completely online using web-screens. An eTerminal

Disclaimer that meets all requirements is auto-processed and approved immediately upon submission.

For more information about eTerminal Disclaimers, refer to

www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

6.      Claims 21-37 are rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 1-20 of U.S. Patent No. 10,266,377 and US Patent 10,752,476. Although the

claims at issue are not identical, they are not patentably distinct from each other because they disclose

substantially the same structure.

### *Allowable Subject Matter*

7.      Claims 21-37 would be allowable if rewritten or amended to overcome the rejection(s) under 35

U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), 2nd paragraph, set forth in this Office action.

8.      The following is a statement of reasons for the indication of allowable subject matter:

**9.**      The prior art of record either taken alone or in combination does not fairly teach or suggest the

specifically claimed limitations as recited by Applicant, specifically Foe US Patent 2992811 teaches a

ratchet gear, pawl, and counterweight but does not specifically disclose

a.      **[claim 21] a ratchet gear coupled to the drive shaft for rotating the winch drum; a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft; a pawl coupled to the first moment arm, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and a counterweight coupled to the first moment arm, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.**

Application/Control Number: 16/937,727                                                                Page 5
Art Unit: 3654

**b.      [claim 27] a first moment arm coupled to a winch drum and configured to provide leverage for rotating the winch drum via a ratchet gear coupled to the winch drum; a pawl coupled to the first moment arm, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and a counterweight coupled to the first moment arm, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.**

**c.      [claim 32] a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft; a pawl coupled to the first moment arm, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and a counterweight coupled to the first moment arm, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.**

*Conclusion*

10.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to MICHAEL E GALLION whose telephone number is (571)272-5998. The examiner can normally be reached Monday-Friday 10am-6pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

Application/Control Number: 16/937,727                                                                                    Page 6
Art Unit: 3654

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

MICHAEL MANSEN can be reached on 5712726608. The fax phone number for the organization where

this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from

Patent Center. Unpublished application information in Patent Center is available to registered users. To

file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit

https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and

https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional

questions, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like

assistance from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or

571-272-1000.

/MICHAEL E GALLION/
Examiner, Art Unit 3654

ATTORNEY DOCKET NO.                                              PATENT
086707.0514                                            Serial No. 16/937,727

6

## REMARKS

This Application has been carefully reviewed in light of the Office Action dated November 25, 2022 ("Office Action"). At the time of the Office Action claims 21-37 were pending. To advance prosecution, Applicant amends claims 21, 27 and 32. Applicant respectfully requests reconsideration and favorable action in this case.

## Double Patenting

The Office Action rejects claims 21-37 on the ground of nonstatutory double patenting as being unpatentable over claims 1-20 of U.S. Patent No. 10,266,377 and U.S. Patent No. 10,752,476. Office Action at p. 4. Applicant defers the decision to file a terminal disclaimer until the Examiner has indicated that all pending claims include allowable subject matter.

## Section 112 Rejections

The Office Action rejects claims 21-37 under 35 U.S.C. § 112(a) as allegedly failing to comply with the enablement requirement. Specifically, the Office Action alleges that the Specification and Drawings do not disclose the first moment arm being coupled to the drive shaft, pawl, and counterweight. Office Action at p. 2.

Applicants have amended the independent claims to clarify that the first moment arm, the pawl, and the counterweight are all coupled to the drive shaft. As used in the claims, the term "coupled" means that the first moment arm, pawl, and counterweight may be directly or indirectly coupled to the drive shaft. The Office Action notes that the Specification and Drawings show the first moment arm, pawl, and counterweight coupled to a mounting plate that is in turn coupled to the drive shaft. Office Action at p. 2. Applicant respectfully submits that the mounting plate is one example of coupling the first moment arm, pawl, and counterweight to the drive shaft and that one of skill in the art would understand other coupling arrangements, either direct or indirect. Thus, Applicant submits that the Specification and Drawings satisfy the requirements of Section 112(a) because the description enables one of skill in the art to make and use the winch as claimed. Accordingly, Applicant respectfully requests withdrawal of these rejections.

101408213

ATTORNEY DOCKET NO.                                          PATENT
086707.0514                                          Serial No. 16/937,727

7

**Allowable Subject Matter**

Applicant appreciates the Office Action's indication that claims 21-37 would be allowable if rewritten or amended to overcome the rejects under 35 U.S.C. § 112(b) or 35 U.S.C. § 112 (pre-AI), 2nd paragraph. Office Action at p. 4. Applicant has amended the claims as described above and respectfully requests allowance of claims 21-37.

**No Waiver**

All of Applicant's arguments are without prejudice or disclaimer. Applicant reserves the right to discuss the distinctions between the cited references and the claims in a later response or on appeal, if appropriate. By not responding to additional statements made by the Examiner, Applicant does not acquiesce to the Examiner's additional statements. The example arguments offered by Applicant are sufficient to overcome the rejections.

101408213

ATTORNEY DOCKET NO.                                              PATENT
086707.0514                                          Serial No. 16/937,727

8

## Conclusions

Applicant has made an earnest attempt to place this case in condition for allowance. For the foregoing reasons, and for other reasons clearly apparent, Applicant respectfully requests full allowance of all pending claims.

If a telephone conference would advance prosecution of this Application, the Examiner may contact Stanton A. Lewis, Attorney for Applicant, at 214.953.6882. The Examiner may also communicate with Stanton A. Lewis concerning this Application by electronic mail at stan.lewis@bakerbotts.com.

No fees are believed to be due, however, the Commissioner is hereby authorized to charge any fees or to credit any overpayments to Deposit Account No. 02-0384 of Baker Botts L.L.P.

Respectfully submitted,


BAKER BOTTS L.L.P.
Attorneys for Applicants

/Stanton A. Lewis/

Stanton A. Lewis
Reg. No. 63,418
214.953.6882

2001 Ross Avenue, Suite 900
Dallas, Texas 75201

Date: February 24, 2023


CORRESPONDENCE ADDRESS:


Customer Number:        **5073**

101408213

ATTORNEY DOCKET NO.                                                    PATENT
086707.0514                                                Serial No. 16/937,727

2

## IN THE CLAIMS

1-20. (Cancelled)

21.    **(Currently amended)** A winch apparatus, comprising:

a winch housing;

a winch drum rotationally coupled to the winch housing by a drive shaft;

a ratchet gear coupled to the drive shaft for rotating the winch drum;

a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft;

a pawl coupled to the **drive shaft**~~first moment arm~~, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and

a counterweight coupled to the **drive shaft**~~first moment arm~~, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.

22.    (Previously presented) The winch apparatus of Claim 21, wherein the counterweight is gravity operated or spring operated.

23.    (Previously presented) The winch apparatus of Claim 21, further comprising a second moment arm coupled to the drive shaft offset from the first moment arm and configured to provide leverage for rotating the drive shaft.

24.    (Previously presented) The winch apparatus of Claim 21, further comprising a stop pin coupled to the winch housing positioned to limit the rotational motion of the first moment arm.

25.    (Previously presented) The winch apparatus of Claim 21, wherein the first moment arm is detachable from the drive shaft.

ATTORNEY DOCKET NO.                                                          PATENT
086707.0514                                                          Serial No. 16/937,727

3

26.     (Previously presented) The winch apparatus of Claim 21, wherein the first moment arm comprises a shear point.

101408213

ATTORNEY DOCKET NO.                                              PATENT
086707.0514                                              Serial No. 16/937,727

4

27.    **(Currently amended)** A winch tightening apparatus, comprising:

a first moment arm coupled to a winch drum and configured to provide leverage for rotating the winch drum via a ratchet gear coupled to the winch drum;

a pawl coupled to the **drive shaft**~~first moment arm~~, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and

a counterweight coupled to the **drive shaft**~~first moment arm~~, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.


28.    (Previously presented) The winch tightening apparatus of Claim 27, wherein the counterweight is gravity operated or spring operated.


29.    (Previously presented) The winch tightening apparatus of Claim 27, further comprising a second moment arm coupled to the winch drum offset from the first moment arm and configured to provide leverage for rotating the winch drum.


30.    (Previously presented) The winch tightening apparatus of Claim 27, wherein the first moment arm is detachable from the winch drum.


31.    (Previously presented) The winch tightening apparatus of Claim 27, wherein the first moment arm comprises a shear point.

5

32.    **(Currently amended)** A method comprising:

providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a drive shaft  and a ratchet gear;

rotationally coupling a winch tightening apparatus to the drive shaft, the winch tightening apparatus comprising:

a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft;

a pawl coupled to the **drive shaft**~~first moment arm~~, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and

a counterweight coupled to the **drive shaft**~~first moment arm~~, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.

33.    (Previously presented) The method of Claim 32, further comprising coupling a stop pin to the winch housing positioned to limit the rotational motion of the first moment arm.

34.    (Previously presented) The method of Claim 32, wherein the counterweight is gravity operated or spring operated.

35.    (Previously presented) The method of Claim 32, wherein the winch tightening apparatus further comprises a second moment arm coupled to the drive shaft offset from the first moment arm and configured to provide leverage for rotating the drive shaft.

36.    (Previously presented) The method of Claim 32, wherein the first moment arm is detachable from the drive shaft.

37.    (Previously presented) The method of Claim 32, wherein the first moment arm comprises a shear point.

101408213

UNITED STATES PATENT AND TRADEMARK OFFICE



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/937,727 | 07/24/2020 | Clint Bryan | 086707.0514 | 7605 |

5073        7590        04/03/2023
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201

| EXAMINER |
|---|
| ADAMS, NATHANIEL L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3654 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 04/03/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

PTOmail1@bakerbotts.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. 16/937,727 | Applicant(s) Bryan et al. | |
|---|---|---|---|
| | Examiner NATHANIEL L ADAMS | Art Unit 3654 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on 02/24/23.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☑ This action is **FINAL.**      2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) _21-37_ is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) 21-37 is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a) ☐ All    b) ☐ Some**    c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

Application/Control Number: 16/937,727                                          Page 2
Art Unit: 3654

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. A nonstatutory double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on nonstatutory double patenting provided the reference application or patent either is shown to be commonly owned with the examined application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement. See MPEP § 717.02 for applications subject to

Application/Control Number: 16/937,727                                                      Page 3
Art Unit: 3654

examination under the first inventor to file provisions of the AIA as explained in MPEP § 2159. See MPEP § 2146 *et seq.* for applications not subject to examination under the first inventor to file provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26, PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may be filled out completely online using web-screens. An eTerminal Disclaimer that meets all requirements is auto-processed and approved immediately upon submission. For more information about eTerminal Disclaimers, refer to www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

**Claims 21-37** are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-20 of U.S. Patent No. 10,266,377 and US Patent 10,752,476. Although the claims at issue are not identical, they are not patentably distinct from each other because they disclose substantially the same structure.

### *Response to Arguments*

Applicant's arguments, see page 6, filed 02/24/23, with respect to the section 112 rejections have been fully considered and are persuasive. The 112 rejection of the claims has been withdrawn.

Application/Control Number: 16/937,727                                          Page 4
Art Unit: 3654

## *Allowable Subject Matter*

Claims 21-37 would be allowable if submitted with a terminal disclaimer.

The following is a statement of reasons for the indication of allowable subject matter:

The prior art of record either taken alone or in combination does not fairly teach or suggest the specifically claimed limitations as recited by Applicant, specifically Foe US Patent 2992811 teaches a ratchet gear, pawl, and counterweight but does not specifically disclose:

**[claim 21] a ratchet gear coupled to the drive shaft for rotating the winch drum; a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft; a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.**

**[claim 27] a first moment arm coupled to a winch drum and configured to provide leverage for rotating the winch drum via a ratchet gear coupled to the winch drum; a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being**

**rotated in a second direction opposite the first direction; and a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.**

**[claim 32] a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft; a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.**

## *Conclusion*

**THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any

Application/Control Number: 16/937,727                                          Page 6
Art Unit: 3654

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action. In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to NATHANIEL L ADAMS whose telephone number is

(571)272-4830. The examiner can normally be reached M-F 7:30-4:30 Pacific Time.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR)

at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Michael Mansen can be reached on (571)272-6608. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be

obtained from Patent Center. Unpublished application information in Patent Center is

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-

center for more information about Patent Center and https://www.uspto.gov/patents/docx

for information about filing in DOCX format. For additional questions, contact the

Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance

from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.

Application/Control Number: 16/937,727                                          Page 7
Art Unit: 3654

/N.L.A/
Examiner, Art Unit 3654

/SANG K KIM/
Primary Examiner, Art Unit 3654

ATTORNEY DOCKET NO.
086707.0514

PATENT
Serial No. 16/937,727

6

## REMARKS

This Application has been carefully reviewed in light of the Final Office Action dated April 3, 2023 ("Office Action").  At the time of the Office Action claims 21-37 were pending. Applicant respectfully requests reconsideration and favorable action in this case.

## Double Patenting

The Office Action rejects claims 21-37 on the ground of nonstatutory double patenting as being unpatentable over claims 1-20 of U.S. Patent No. 10,266,377 and U.S. Patent No. 10,752,476.  Office Action at p. 3. Applicant has filed a terminal disclaimer herewith and respectfully requests withdrawal of the rejections.

## No Waiver

All of Applicant's arguments are without prejudice or disclaimer. Applicant reserves the right to discuss the distinctions between the cited references and the claims in a later response or on appeal, if appropriate.  By not responding to additional statements made by the Examiner, Applicant does not acquiesce to the Examiner's additional statements. The example arguments offered by Applicant are sufficient to overcome the rejections.

103764208

ATTORNEY DOCKET NO.                                                      PATENT
086707.0514                                              Serial No. 16/937,727

7

## Conclusions

Applicant has made an earnest attempt to place this case in condition for allowance. For the foregoing reasons, and for other reasons clearly apparent, Applicant respectfully requests full allowance of all pending claims.

If a telephone conference would advance prosecution of this Application, the Examiner may contact Stanton A. Lewis, Attorney for Applicant, at 214.953.6882. The Examiner may also communicate with Stanton A. Lewis concerning this Application by electronic mail at stan.lewis@bakerbotts.com.

The Commissioner is hereby authorized to charge the $220 one month extension of time fee and the $170 Terminal Disclaimer fee and any other required fees or to credit any overpayments to Deposit Account No. 02-0384 of Baker Botts L.L.P.

Respectfully submitted,


BAKER BOTTS L.L.P.
Attorneys for Applicants

/Stanton A. Lewis/

Stanton A. Lewis
Reg. No. 63,418
214.953.6882


2001 Ross Avenue, Suite 900
Dallas, Texas 75201

Date: July 11, 2023


CORRESPONDENCE ADDRESS:


Customer Number:        **5073**


103764208

2

## IN THE CLAIMS

1-20. (Cancelled)

21.    (Previously presented) A winch apparatus, comprising:

a winch housing;

a winch drum rotationally coupled to the winch housing by a drive shaft;

a ratchet gear coupled to the drive shaft for rotating the winch drum;

a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft;

a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and

a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.

22.    (Previously presented) The winch apparatus of Claim 21, wherein the counterweight is gravity operated or spring operated.

23.    (Previously presented) The winch apparatus of Claim 21, further comprising a second moment arm coupled to the drive shaft offset from the first moment arm and configured to provide leverage for rotating the drive shaft.

24.    (Previously presented) The winch apparatus of Claim 21, further comprising a stop pin coupled to the winch housing positioned to limit the rotational motion of the first moment arm.

25.    (Previously presented) The winch apparatus of Claim 21, wherein the first moment arm is detachable from the drive shaft.

103764208

ATTORNEY DOCKET NO.
086707.0514

PATENT
Serial No. 16/937,727

3

26.    (Previously presented) The winch apparatus of Claim 21, wherein the first moment arm comprises a shear point.

103764208

ATTORNEY DOCKET NO.    PATENT
086707.0514    Serial No. 16/937,727

4

27.    (Previously presented) A winch tightening apparatus, comprising:

a first moment arm coupled to a winch drum and configured to provide leverage for rotating the winch drum via a ratchet gear coupled to the winch drum;

a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and

a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.

28.    (Previously presented) The winch tightening apparatus of Claim 27, wherein the counterweight is gravity operated or spring operated.

29.    (Previously presented) The winch tightening apparatus of Claim 27, further comprising a second moment arm coupled to the winch drum offset from the first moment arm and configured to provide leverage for rotating the winch drum.

30.    (Previously presented) The winch tightening apparatus of Claim 27, wherein the first moment arm is detachable from the winch drum.

31.    (Previously presented) The winch tightening apparatus of Claim 27, wherein the first moment arm comprises a shear point.

ATTORNEY DOCKET NO.                                                                    PATENT
086707.0514                                                              Serial No. 16/937,727

5

32.       (Previously presented) A method comprising:

providing a winch housing and a winch drum, the winch drum rotationally coupled to the winch housing by a drive shaft  and a ratchet gear;

rotationally coupling a winch tightening apparatus to the drive shaft, the winch tightening apparatus comprising:

a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft;

a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and

a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.


33.       (Previously presented) The method of Claim 32, further comprising coupling a stop pin to the winch housing positioned to limit the rotational motion of the first moment arm.


34.       (Previously presented) The method of Claim 32, wherein the counterweight is gravity operated or spring operated.


35.       (Previously presented) The method of Claim 32, wherein the winch tightening apparatus further comprises a second moment arm coupled to the drive shaft offset from the first moment arm and configured to provide leverage for rotating the drive shaft.


36.       (Previously presented) The method of Claim 32, wherein the first moment arm is detachable from the drive shaft.


37.       (Previously presented) The method of Claim 32, wherein the first moment arm comprises a shear point.

103764208

PTO/AIA/26 (04-14)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT** | Docket Number (Optional) 086707.0514 |
|---|---|

**In re Application of**: Clint Bryan et al.

**Application No.**: 16/937,727

**Filed**: July 24, 2020

**For**: Winch Tightening Mechanism

The applicant, _Arcosa Marine Products, Inc._, owner of ___100___ percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of **prior patent** No. _See Appendix A_ as the term of said **prior patent** is presently shortened by any terminal disclaimer. The applicant hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the **prior patent** are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the applicant does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term of the **prior patent**, "as the term of said **prior patent** is presently shortened by any terminal disclaimer," in the event that said **prior patent** later:

> expires for failure to pay a maintenance fee;
> is held unenforceable;
> is found invalid by a court of competent jurisdiction;
> is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
> has all claims canceled by a reexamination certificate;
> is reissued; or
> is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

Check either box 1 or 2 below, if appropriate.

1. ☐  The undersigned is the applicant. If the applicant is an assignee, the undersigned is authorized to act on behalf of the assignee.

I hereby acknowledge that any willful false statements made are punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

2. ☑  The undersigned is an attorney or agent of record. Reg. No. _63418_

| /Stanton A. Lewis/ | August 25, 2023 |
|---|---|
| Signature | Date |

| Stanton A. Lewis | |
|---|---|
| Typed or printed name | |

| | 214.953.6882 |
|---|---|
| Title | Telephone Number |

☑  Terminal disclaimer fee under 37 CFR 1.20(d) included.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

This collection of information is required by 37 CFR 1.321. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Attorney Docket No. 086707.0514
Serial No. 16/937,727

## APPENDIX A

U.S. Patent No. 10,266,377, issued April 23, 2019.

U.S. Patent No. 10,752,476, issued August 25, 2020.



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

5073    7590    10/20/2023
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201

| EXAMINER |
| --- |
| ADAMS, NATHANIEL L |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 3654 | |

DATE MAILED: 10/20/2023

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 16/937,727 | 07/24/2020 | Clint Bryan | 086707.0514 | 7605 |

TITLE OF INVENTION: Winch Tightening Mechanism

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 01/22/2024 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. <u>PROSECUTION ON THE MERITS IS CLOSED.</u> THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 40% the amount of undiscounted fees, and micro entity fees are 20% the amount of undiscounted fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
| --- | --- | --- | --- |
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

5073    7590    10/20/2023

BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

| | |
| --- | --- |
| | (Typed or printed name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 16/937,727 | 07/24/2020 | Clint Bryan | 086707.0514 | 7605 |

TITLE OF INVENTION: Winch Tightening Mechanism

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 01/22/2024 |

| EXAMINER | | ART UNIT | CLASS-SUBCLASS |
| --- | --- | --- | --- |
| ADAMS, NATHANIEL L | | 3654 | 254-369000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❏ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

❏ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❏ Individual ❏ Corporation or other private group entity ❏ Government

4a. Fees submitted:    ❏ Issue Fee    ❏ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

❏ Electronic Payment via Patent Center or EFS-Web        ❏ Enclosed check        ❏ Non-electronic payment by credit card (Attach form PTO-2038)

❏ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

❏ Applicant certifying micro entity status. See 37 CFR 1.29

❏ Applicant asserting small entity status. See 37 CFR 1.27

❏ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/937,727 | 07/24/2020 | Clint Bryan | 086707.0514 | 7605 |

| | | | |
|---|---|---|---|
| 5073      7590      10/20/2023 | | EXAMINER | |
| BAKER BOTTS L.L.P. | | ADAMS, NATHANIEL L | |
| 2001 Ross Avenue, Suite 900 | | ART UNIT | PAPER NUMBER |
| Dallas, TX 75201 | | 3654 | |

DATE MAILED: 10/20/2023

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

**OMB Clearance and PRA Burden Statement for PTOL-85 Part B**

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:
1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 16/937,727 | Applicant(s) Bryan et al. | |
|---|---|---|---|
| | Examiner NATHANIEL L ADAMS | Art Unit 3654 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>Terminal Disclaimer Approved 10/04/23</u>.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>21-37</u> . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All     b) ☐ Some*     c) ☐ None of the:

   1. ☐ Certified copies of the priority documents have been received.

   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment

6. ☑ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

| /N.L.A/ Examiner, Art Unit 3654 | /SANG K KIM/ Primary Examiner, Art Unit 3654 |
|---|---|

Application/Control Number: 16/937,727                                                          Page 2
Art Unit: 3654

## NOTICE OF ALLOWABILITY

### *Continued Examination Under 37 CFR 1.114*

A request for continued examination under 37 CFR 1.114, including the fee set forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this application is eligible for continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on 10/03/23 has been entered.

### *Response to Arguments*

Applicant's arguments, see page 6, filed 07/11/23, with respect to the double patenting rejection have been fully considered and are persuasive.  The rejection of claims 21-37 has been withdrawn.

### *Reasons for Allowance*

The following is an examiner's statement of reasons for allowance:

The prior art of record either taken alone or in combination does not fairly teach or suggest the specifically claimed limitations as recited by Applicant, specifically Foe US Patent 2992811 teaches a ratchet gear, pawl, and counterweight but does not specifically disclose:

**[claim 21] a ratchet gear coupled to the drive shaft for rotating the winch**

**drum; a first moment arm coupled to the drive shaft and configured to**

**provide leverage for rotating the drive shaft; a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.**

**[claim 27] a first moment arm coupled to a winch drum and configured to provide leverage for rotating the winch drum via a ratchet gear coupled to the winch drum; a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction; and a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.**

**[claim 32] a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft; a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first**

Application/Control Number: 16/937,727                                                  Page 4
Art Unit: 3654

**direction; and a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.**

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

## *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to NATHANIEL L ADAMS whose telephone number is (571)272-4830. The examiner can normally be reached M-F 7:30-4:30 Pacific Time.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Michael Mansen can be reached on (571)272-6608. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is

Application/Control Number: 16/937,727                                           Page 5
Art Unit: 3654

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-

center for more information about Patent Center and https://www.uspto.gov/patents/docx

for information about filing in DOCX format. For additional questions, contact the

Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance

from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.


/N.L.A/
Examiner, Art Unit 3654

/SANG K KIM/
Primary Examiner, Art Unit 3654

# Exhibit G

## Photographs of the Accused Product

2606003.000 - 3327











# Exhibit H

# '476 Patent Analysis

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1pre]  A winch apparatus, comprising: | To the extent that the preamble to claim 1 of the '476 Patent is found to be limiting, the Accused Product is a winch apparatus.<br><br>Photographs of the Accused Product show a structure with a hand wheel mechanism, a winch rope housing, and a length of winch cable leading out of the structure. All of these are common features of winches. Furthermore, labelling on the Accused Product contains the statements "Prior to installing or operating this winch" and instructions on how to "Tighten the winch." See Figure 1.<br><br><br><br>Figure 1:    Annotated photographs of the Accused Product showing the overall structure including a hand wheel and a winch cable. Labelling on the Accused Product explicitly identifies it as a winch.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product is a winch apparatus based on this information. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1a] a winch housing; | The Accused Product includes a winch housing.  As can be seen in Figure 2, the Accused Product comprises a structure in which the winch cable and the spooling mechanism (i.e. a winch drum, see element [1b] below) are stored.<br><br><br><br>Figure 2:    Annotated photographs of the Accused Product showing the winch housing, identified in blue highlighting on the right.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |

2606003.000 - 3327

3

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1b] a winch drum rotationally coupled to the winch housing by a drive shaft; | The Accused Product includes a winch drum, partially visible in Figure 3.<br><br><br><br>Figure 3:    An annotated photograph of the Accused Product showing the winch drum (partially visible) highlighted in green. Also shown are the hand wheel and the inferred location of a drive shaft within the Accused Product.<br><br>While not visible from the available photographs, a POSITA would expect that a winch drum would be coupled directly or indirectly to a means for applying rotational motion (i.e. a drive shaft), see, e.g. Figure 3.<br><br>A POSITA would understand that the winch wire is wrapped around the winch drum as the wire is tightened. For example, the instructions for use on the Accused Product describe the rotation of the hand wheel as resulting in tightening of the |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | winch wire (see Figure 3 and Figure 4). Accordingly, a POSITA would understand that the rotational motion of the handwheel results in the rotational motion of the drum through the action of a drive shaft. Also see Illustrations 8-10 and paragraphs 46-48 of the main body of my declaration.<br><br><br><br>Figure 4:   An annotated photograph of labelling on the Accused Product instructing the user to "Rotate the hand wheel to underwind the wire rope or the strap."<br><br>Furthermore, because the drive shaft is disposed in, and coupled to, the winch housing, the winch drum of the Accused Product is rotationally coupled to the winch housing by a drive shaft.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1c] a ratchet gear coupled to the drive shaft for rotating the winch drum; | The Accused Product includes a ratchet gear coupled to the drive shaft for rotating the winch drum.<br><br>The labelling on the Accused Product explicitly refers to the use of a "ratchet handle" to tighten the wire rope: "Use the ratchet handle (B) to continue tightening until desired tension is achieved" (see Figure 5). As described in the main body of my declaration (see Illustration 11 and Illustration 12, and paragraphs 49-51 of the main body of my declaration), that a "ratchet handle" is referred to by the instructions found on the Accused Product indicates the presence of a ratchet gear. The labelling of the Accused Product provides further evidence that the Accused Product includes a ratchet gear by referring to a "ratchet dog," which a POSITA would recognize as another name for a pawl (as in a ratchet-pawl mechanism): "Place the ratchet handle (B) in a forward rest position, ensuring the ratchet dog is disengaged," see Figure 5.<br><br><br><br>Figure 5:     An annotated image of labelling included on the Accused Product instructing the user to tighten the winch through the action of a ratchet handle (B) and to disengage to ratchet dog (pawl) to ensure no accidental movement of the ratchet handle. |

2606003.000 - 3327

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | This pawl (ratchet dog) can be seen in Figure 6 coupled to the ratchet handle; Figure 6 also shows what appears to be the ratchet gear.<br><br> <br><br>Figure 6:    Annotated photographs of the Accused Product showing the ratchet handle, ratchet dog (pawl), and what appears to be a ratchet gear.<br><br>As established above, the winch drum is rotated through action of a drive shaft, therefore a POSITA would conclude that the ratchet handle rotates the winch drum through action of a ratchet gear coupled to a drive shaft.<br><br>Furthermore, a POSITA would recognize that, as disclosed by the instructions for tightening the winch on the Accused Product (e.g. as shown in Figure 7), by rotating the ratchet handle in one direction (to the rear, or left, in Figure 7) this pawl would engage with the teeth of the ratchet gear to turn a drive shaft (and consequently turn the winch drum) and by rotating the ratchet handle in the opposite direction (to the right in Figure 7), the pawl would disengage from the teeth of |

2606003.000 - 3327

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | the ratchet gear. This sequence of actions is described in the body of my declaration at "Functionality of the Accused Product" (see paragraphs 57-58 of the main body of my declaration). Accordingly, the Accused Product includes a ratchet gear coupled to the drive shaft for rotating the winch drum.<br><br><br><br>Figure 7:      An annotated image of labelling included on the Accused Product instructing the user to tighten the winch through the action of a ratchet handle (B) and to disengage to ratchet dog (pawl) to ensure no accidental movement of the ratchet handle.<br><br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1d] a mounting plate rotationally coupled to the drive shaft; | As can be seen in Figure 8, the Accused Product includes two mounting plates disposed around the inferred location of the drive shaft (also see Illustration 10 of the main body of my declaration).<br><br><br><br>Figure 8:　　An annotated photograph showing two mounting plates (purple highlights) disposed around the inferred general location of the drive shaft discussed above. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | These mounting plates of the Accused Product are each coupled to the pawl described above via a clevis pin (see Figure 9).<br><br>**Pawl Coupled to Mounting Plates**<br>**Mounting Plates**<br>**Clevis Pin**<br><br>Figure 9:    An annotated photograph of the Accused Product showing the mounting plates (purple), as well as how the pawl of the Accused Product is coupled to the mounting plates via a clevis pin (red).<br><br>As described above in the analysis of claim element 1[c], the ratchet gear is rotatably coupled to the drive shaft. Therefore, when the Accused Product is in a configuration where the pawl engages with the ratchet gear (see paragraphs 57-58 and Illustrations 14, 16, and 17 of the body of my declaration), both the pawl and the mounting plates would also be coupled to the drive shaft, see Figure 10. |

2606003.000 - 3327

10

| Claim 1 | Analysis of the Accused Product |
|---------|--------------------------------|
| | <br><br>Figure 10:    A schematic (created by me) showing the configuration of the Accused Product when the mounting plate is rotated backwards such that the pawl (coupled to the mounting plate) engages the ratchet gear to drive the drive shaft. When this occurs, the mounting plate is rotationally coupled to the drive shaft.<br><br>Separately, as described in instructions placed on the Accused Product (see Figure 11) when the ratchet handle is rotated (right to left in Figure 11), the winch cable is tightened (i.e. the drive shaft is rotated and drives the rotation of the winch drum to tighten the cable); therefore, a POSITA would conclude that at least the ratchet handle is rotatably coupled to the drive shaft. |

2606003.000 - 3327

11

| Claim 1 | Analysis of the Accused Product |
|---|---|
| |  |

Figure 11: An annotated image of labelling included on the Accused Product instructing the user to tighten the winch through the action of a ratchet handle (B) and to disengage to ratchet dog (pawl) to ensure no accidental movement of the ratchet handle.

However, since the ratchet handle is welded to the mounting plates (see Illustration 12 in the main body of my declaration and Figure 12 below) a POSITA would conclude that the mounting plates are rotatably coupled to the drive shaft.

In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information.

2606003.000 - 3327

12

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1e] a first moment arm coupled to the mounting plate and configured to provide leverage for rotating the mounting plate; | The Accused Product includes a first moment arm. For example, in Figure 12 the structure identified as a ratchet handle is a first moment arm which is coupled to the mounting plates of the Accused Product as shown.<br><br><br><br>Figure 12: An annotated photograph of the Accused Product showing a first moment arm coupled (blue) to the mounting plates (purple).<br><br>As can be seen in Figure 12, the first moment arm of the Accused Product is coupled to both of the mounting plates of the Accused Product and, as described previously (see paragraphs 51-55, 57-58 and Illustrations 12-14, 16, 17 of the body of my declaration), the mounting plate is rotated by moving the first moment arm so as to engage the pawl with the ratchet gear. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | Furthermore, as can be seen in Figure 13, instructions for tightening the winch found on the Accused Product describe the rotation of the ratchet handle (first moment arm) in tightening the winch, which is accomplished through the rotation of the mounting plate (see, e.g. paragraphs 57-58 and Illustrations 16-17 of the body of my declaration). Accordingly, the first moment arm is configured to provide leverage for rotating the mounting plate.<br><br><br><br>Figure 13:    An annotated image of labelling included on the Accused Product instructing the user to tighten the winch through the action of a ratchet handle (B). As shown above, the ratchet handle (first moment arm) is coupled to the mounting plate which is rotated to tighten the winch drum. In other words, the first moment arm is used to provide leverage for rotating the mounting plate.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |

2606003.000 - 3327

14

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1f] a pawl comprising a first end and a second end, | As shown in, e.g. Figure 14, the Accused Product includes a pawl coupled to the mounting plates via a clevis pin. In Figure 14, the first end of the pawl can be readily seen, while the location of the second end can be inferred; as discussed in the body of my declaration (see paragraph 58 and Illustration 17 of the body of my declaration), it is likely that the pawl engages the underside of a ratchet gear. A schematic of this configuration is also shown in Figure 14.<br><br><br><br>Figure 14:    An annotated photograph of the Accused Product showing the pawl (red) as well as the locations of the pawl first and second (not visible) ends. These first and second pawl ends can also be seen in the schematic (created by me) of the likely configuration of the Accused Product to the right.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |
| [1f (cont.)] wherein the first end of the pawl is pivotally coupled | The Accused Product includes a pawl wherein the first end of the pawl is pivotally coupled to the mounting plate.<br><br>As shown in Figure 14, the pawl of the Accused Product is coupled to the mounting plates by a clevis pin. Given the understanding of the functionality of the Accused Product described in the body of my declaration (see paragraphs 57-58 and Illustrations 16, and 17 of the body of my declaration) it is unlikely that the pawl is coupled at any additional points to the mounting plates. A POSITA would understand that the single-point coupling of the pawl to the mounting plates by a |

2606003.000 - 3327

| Claim 1 | Analysis of the Accused Product |
|---|---|
| to the mounting plate | clevis pin would result in a pivotable coupling.  While the Asserted Patents use the word "pivotally" instead of "pivotably," a POSITA would understand that the plain and ordinary meaning of "pivotally coupled" as used in this claim encompasses "pivotably coupled."[1]<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |
| [1f (cont.)]  and positioned such that the second end of the pawl engages the ratchet gear via the mounting plate being rotated in a first direction | The Accused Product includes a pawl positioned such that the second end of the pawl engages the ratchet gear via the mounting plate being rotated in a first direction.<br><br>As described in the main body of my declaration (see paragraphs 57-58 and Illustrations 16 and 17 of the body of my declaration), the Accused Product includes a pawl that is likely configured to engage the underside of a ratchet gear when the mounting plate (upon which it is disposed) is rotated rearwards (a first direction). This functionality is shown in Figure 15, where it can be seen that as the mounting plate is rotated in a first direction the pawl pivots into contact with the teeth of a ratchet gear, as the mounting plate is rotated further, the pawl drives the ratchet gear so as to drive the drive shaft and tighten the winch. |

---

[1] For example, the Asserted Patents referred to a pinned connection as being "pivotally" connected, which a POSITA would understand as a pivotable coupling, see '476 Patent at 6:39-44.

2606003.000 - 3327

16

| Claim 1 | Analysis of the Accused Product |
|---|---|
| |   Figure 15:      A schematic (created by me) showing the likely functionality of the Accused Product. At step (A) the device is at rest and the pawl is disengaged from the ratchet. At step (B) the user begins a power stroke by applying a rearwards force to the ratchet handle, rotating the mounting plate and causing the pawl to engage the ratchet gear. The user continues applying a rearwards force at step (C) causing the pawl to rotate the ratchet gear (and concomitantly the drive shaft to tighten the winch).  In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |
| [1f (cont.)]  and disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction. | The Accused Product includes a pawl that disengages the ratchet gear via the mounting plate being rotated in a second direction opposite the first direction.  As described above, a power stroke of the Accused Product takes place when the mounting plate (through the user applying a rearwards force to the ratchet handle) is rotated In the first direction, causing the pawl to engage and drive the ratchet gear, see e.g. Figure 15.  The instructions included on the Accused Product described that, after a desired tension is reached, a user is to rotate the ratchet handle (and concomittantly the mounting plate) in a forwards direction (i.e. the opposite direction of backwards, or the tightening direction) so as to disengage the pawl (ratchet dog) from the ratchet gear: "5. Place the ratchet handle (B) in forward rest position, ensuring the ratchet dog is disengaged," see Figure 16. |

2606003.000 - 3327

17

| Claim 1 | Analysis of the Accused Product |
|---|---|
|  |  Figure 16:      An annotated photograph of user instructions found on the Accused Product. The highlighted portions instruct the user to move the ratchet handle (statically coupled to the mounting plate) in the forward direction (opposite to the tightening direction) to disengage the ratchet dog (pawl). <br><br> Furthermore, as discussed in the body of my declaration (see paragraphs 57-58 and Illustrations 16 and 17 of the body of my declaration), when the mounting plate (and first moment arm) are rotated in a forward direction, the pawl (rotatably coupled to the mounting plate) moves out of engagement with the ratchet gear, see Figure 17. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | Figure 17:    A schematic showing the likely functionality of the Accused Product. At step (A) the device is at the end of a power stroke and the pawl is engaged with the ratchet gear. The user moves the ratchet handle forward (opposite to the tensioning direction in Figure 15) so as to rotate the mounting plate forward. At step (B) the user continues applying a forwards-rotating force until the mounting plate rotates forward sufficiently for the pawl to disengage from the ratchet gear step (C). |
| | In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |
| [1g] a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the | The Accused Product includes a counterweight coupled to the mounting plate, the counterweight positioned to rotate the mounting plate in the second direction to disengage the pawl from the ratchet gear and return the mounting plate and first moment arm to a rest position. |
| | As described in the main body of my declaration (see paragraph 51 and Illustration 12 of the main body of my declaration), the Accused Product includes what appears to be a counterweight welded between the mounting plates, see also Figure 18. Accordingly, the Accused Product includes a counterweight coupled to the mounting plate. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| mounting plate and first moment arm to a rest position. | <br><br>Figure 18:    Annotated photographs of the Accused Product showing a counterweight (white) coupled to the mounting plates (purple).<br><br>Furthermore, as described in the main body of my declaration (see paragraphs 57-58 and Illustrations 16-17 of the body of my declaration), when the mounting plates are rotated backwards and released by a user, the configuration of this counterweight in relation to the pivot axis of the mounting plates will cause the mounting plates to rotate forward. As described above, see e.g., Figure 17, when the mounting plates rotate forward, the pawl will disengage from the ratchet gear. This motion will continue until the counterweight and mounting plate/moment arm system reaches equilibrium (or a rest position). This sequence of actions is shown in Figure 19. |

2606003.000 - 3327

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | <br><br>Figure 19:    A schematic (created by me) showing the action of the Accused Product due to the counterweight coupled to the mounting plates. When the device has ratchet handle has been rotated backwards (during a power stroke), and then released by the user, the counterweight will act to rotate the mounting plates forward (step A). The presence of the counterweight will continue to cause forwards rotation of the mounting plates (step B) until the counterweight and the mounting plate/ratchet handle system has reached equilibrium about the pivot point, or a rest position.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |

| Claim 3 | Analysis of the Accused Product |
|---|---|
| The winch apparatus of claim 1, further comprising a second moment arm coupled to the mounting plate offset from the first moment arm and configured to provide leverage for rotating the mounting plate. | The Accused Product includes each and every limitation of claim 1 of the '476 Patent, see above analysis.<br><br>Furthermore, the Accused Product also includes a second moment arm coupled to the mounting plate at or near the same location as the first moment arm, see Figure 20.  As can also be seen from Figure 20, the second moment arm is offset from the first moment arm by what appears to be approximately 120°.<br><br><br><br>Figure 20:    An annotated photograph of the Accused Product showing the first and second moment arms, both coupled to the mounting plates and offset from each other. |

In my opinion, a user could apply a tensioning force on the first moment arm with their hand and applying a tensioning force on the second moment arm with their foot. The combination of these forces along the same axis of rotation would result in a torque being applied to the mounting plate. Accordingly, the second moment arm is configured to provide leverage for rotating the mounting plate.

In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information.

2606003.000 - 3327

23

| Claim 4 | Analysis of the Accused Product |
|---|---|
| The winch apparatus of claim 1, further comprising a stop pin coupled to the winch housing positioned to limit the rotational motion of the mounting plate. | The Accused Product includes each and every limitation of claim 1 of the '476 Patent, see above analysis.<br><br>As discussed in the main body of my declaration (see paragraph 56 and Illustration 15) and shown below in Figure 21, the Accused Product comprises a stop pin coupled to the winch housing.<br><br><br><br>Figure 21:    An annotated photograph of the Accused Product showing the stop pin (light green) coupled to the winch housing. As can be seen, the stop pin extends through slots defined in the mounting plates.<br><br>As can also be seen in Figure 21, the stop pin of the Accused Product extends through a pair of slots defined in the mounting plates of the Accused Product. As the mouting plate rotates during operation the slots will rotate with, and eventaully contact the stop pin, thus preventing further rotation of the mounting plate. A schematic of this behavior is shown in Figure 22. |

2606003.000 - 3327

24



Figure 22:        A schematic (created by me) showing the relative motion of the stop pin and slots in the mounting plates of the Accused Product during a tensioning stroke. At (A) the stop pin is at a terminal end of the slot corresponding to the Accused Product being in a rest position. As the user provides leverage to rotate the mounting plate (B) the slot in the mounting plate rotates with respect to the stop pin. At (C) the stop pin reaches the end of the slot in the mounting plate, contacting the end of the slot and preventing further rotation of the mounting plate.

In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information.

| Claim 5 | Analysis of the Accused Product |
|---|---|
| The winch apparatus of claim 1, further comprising a slot in the mounting plate; and | The Accused Product includes each and every limitation of claim 1 of the '476 Patent, see above analysis.<br><br>As discussed in the main body of my declaration (see paragraph 56 and Illustration 15) and shown below in Figure 23, the Accused Product comprises mounting plates, each with slots defined in them.<br><br><br><br>Figure 23:     An annotated photograph of the Accused Product showing the slots defined in the mounting plates. Also shown is the stop pin (light green) coupled to the winch housing. As can be seen, the stop pin extends through slots defined in the mounting plates.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |
| [5(cont)] a stop pin coupled to the | As can be seen in Figure 23, the Accused Product includes a stop pin coupled to the winch housing that extends through the slots defined in the mounting plates. |

2606003.000 - 3327

26

| winch housing and extending into the slot in the mounting plate such that the stop pin limits the rotations motion of the mounting plate. | As the mouting plate rotates during operation the slots will rotate with, and eventaully contact the stop pin, thus preventing further rotation of the mounting plate. A schematic of this behavior is shown in Figure 24.<br><br><br><br>Figure 24:   A schematic (created by me) showing the relative motion of the stop pin and slots in the mounting plates of the Accused Product during a tensioning stroke. At (A) the stop pin is at a terminal end of the slot corresponding to the Accused Product being in a rest position. As the user provides leverage to rotate the mounting plate (B) the slot in the mounting plate rotates with respect to the stop pin. At (C) the stop pin reaches the end of the slot in the mounting plate, contacting the end of the slot and preventing further rotation of the mounting plate.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |

# Exhibit I

# '753 Patent Analysis

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1pre]  A winch apparatus, comprising: | To the extent that the preamble to claim 1 of the '753 Patent is found to be limiting, the Accused Product is a winch apparatus.<br><br>Photographs of the Accused Product show a structure with a hand wheel mechanism, a winch rope housing, and a length of winch cable leading out of the structure. All of these are common features of winches. Furthermore, labelling on the Accused Product contains the statements "Prior to installing or operating this winch" and instructions on how to "Tighten the winch." See Figure 1.<br><br><br><br>Figure 1:       Annotated photographs of the Accused Product showing the overall structure including a hand wheel and a winch cable. Labelling on the Accused Product explicitly identifies it as a winch.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product is a winch apparatus based on this information. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1a] a winch housing; | The Accused Product includes a winch housing.  As can be seen in Figure 2, the Accused Product comprises a structure in which the winch cable and the spooling mechanism (i.e. a winch drum, see element [1b] below) are stored.<br><br><br><br>Figure 2:    Annotated photographs of the Accused Product showing the winch housing, identified in blue highlighting on the right.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |

2606003.000 - 3327

2

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1b] a winch drum rotationally coupled to the winch housing by a drive shaft; | The Accused Product includes a winch drum, partially visible in Figure 3.<br><br><br><br>Figure 3:    An annotated photograph of the Accused Product showing the winch drum (partially visible) highlighted in green. Also shown are the hand wheel and the inferred location of a drive shaft within the Accused Product. |

2606003.000 - 3327

3

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | While not visible from the available photographs, a POSITA would expect that a winch drum would be coupled directly or indirectly to a means for applying rotational motion (i.e. a drive shaft), see, e.g. Figure 3.<br><br>A POSITA would understand that the winch wire is wrapped around the winch drum as the wire is tightened. For example, the instructions for use found on the Accused Product describe the rotation of the hand wheel as resulting in tightening of the winch wire (see Figure 3 and Figure 4). Accordingly, a POSITA would understand that the rotational motion of the handwheel results in the rotational motion of the drum through the action of a drive shaft. Also see Illustration 8 and Illustration 9, and paragraphs 46-48 the main body of my declaration.<br><br><br><br>Figure 4: An annotated photograph of labelling on the Accused Product instructing the user to "Rotate the hand wheel to underwind the wire rope or the strap." |

2606003.000 - 3327

4

| Claim 1 | Analysis of the Accused Product |
|---------|-------------------------------|
| | Furthermore, because the drive shaft is disposed in, and therefore coupled to, the winch housing, the winch drum of the Accused Product is rotationally coupled to the winch housing by a drive shaft.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |
| [1c] a ratchet gear coupled to the drive shaft for rotating the winch drum; | The Accused Product includes a ratchet gear coupled to the drive shaft for rotating the winch drum.<br><br>The labelling on the Accused Product explicitly refers to the use of a "ratchet handle" to tighten the wire rope: "Use the ratchet handle (B) to continue tightening until desired tension is achieved" (see Figure 5). As described in the main body of my declaration (see Illustration 11 and Illustration 12, and paragraphs 49-51 of the main body of my declaration), that a "ratchet handle" is referred to by the instructions found on the Accused Product indicates the presence of a ratchet gear.<br><br>The labelling of the Accused Product provides further evidence that the Accused Product includes a ratchet gear by referring to a "ratchet dog," which a POSITA would recognize as another name for a pawl (as in a ratchet-pawl mechanism): "Place the ratchet handle (B) in a forward rest position, ensuring the ratchet dog is disengaged," see Figure 5. |

2606003.000 - 3327

5

| Claim 1 | Analysis of the Accused Product |
|---|---|
| |
Figure 5:      An annotated image of labelling included on the Accused Product instructing the user to tighten the winch through the action of a ratchet handle (B) and to disengage to ratchet dog (pawl) to ensure no accidental movement of the ratchet handle.

This pawl (ratchet dog) can be seen in Figure 6 coupled to the ratchet handle; Figure 6 also shows what appears to be the ratchet gear. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| |  Figure 6:   Annotated photographs of the Accused Product showing the ratchet handle, ratchet dog (pawl), and what appears to be a ratchet gear. As established above, the winch drum is rotated through action of a drive shaft, therefore a POSITA would conclude that the ratchet handle rotates the winch drum through action of a ratchet gear coupled to a drive shaft. Furthermore, a POSITA would recognize that, as disclosed by the instructions for tightening the winch on the Accused Product (e.g. as shown in Figure 7), by rotating the ratchet handle in one direction (to the rear, or left, in Figure 7) this pawl would engage with the teeth of the ratchet gear to turn a drive shaft (and consequently turn the winch drum) and by rotating the ratchet handle in the opposite direction (to the right in Figure 7), the pawl would disengage from the teeth of the ratchet gear. This sequence of actions is described at paragraphs 57-58 and Illustrations 16-17 of the body of my declaration. Accordingly, the Accused Product includes a ratchet gear coupled to the drive shaft for rotating the winch drum. |

2606003.000 - 3327

7

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | <br><br>Figure 7:    An annotated image of labelling included on the Accused Product instructing the user to tighten the winch through the action of a ratchet handle (B) and to disengage to ratchet dog (pawl) to ensure no accidental movement of the ratchet handle.<br><br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |

2606003.000 - 3327

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1d] a first moment arm coupled to the drive shaft and configured to provide leverage for rotating the drive shaft; | The Accused Product includes a first moment arm in the form of the ratchet handle which is coupled to two mounting plates see Figure 8.<br><br><br><br>Figure 8:         An annotated photograph of the Accused Product showing a first moment arm coupled (blue) to mounting plates (purple). |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | As shown in the analysis at paragraphs 57-58 and Illustrations 14, 16, and 17 of the body of my declaration, this mounting plate is, in turn, coupled to (and configured to rotate) a drive shaft when a pawl (disposed on the mounting plate) is engaged with the ratchet gear. This configuration is shown in Figure 9 and discussed below.<br><br><br><br>Figure 9:   A schematic (created by me) showing the likely configuration of the Accused Product when the ratchet handle (first moment arm) is rotated such that the pawl is engaged with the ratchet gear, which is also coupled with the drive shaft. As is shown from the red arrows, in this configuration, the first moment arm is rotationally coupled (via the mounting plate, pawl, and ratchet gear) with the drive shaft.<br><br>As can be seen in Figure 8, the first moment arm of the Accused Product is coupled to both of the mounting plates of the Accused Product and, when in the configuration shown in Figure 9, this first moment arm would be configured to provide |

| Claim 1 | Analysis of the Accused Product |
|---|---|
|  | leverage to rotate the drive shaft (via the mounting plates coupling with the pawl engaged with the ratchet gear, the ratchet gear in turn coupled to the shaft).<br><br>As further evidence that the Accused Product includes a first moment arm configured to provide leverage to rotate the drive shaft, as shown in Figure 10, instructions on the Accused Product teach a user to tighten the winch cable by rotating the first moment arm (ratchet handle). As described above, and in the body of my declaration at paragraphs 46-48, the tightening of the winch cable is accomplished by motion of the winch drum, the torque for this motion being provided by the drive shaft.<br><br><br><br>Figure 10:  An annotated image of labelling included on the Accused Product instructing the user to tighten the winch through the action of a moment arm (ratchet handle B). This is further evidence that the first moment arm is configured to apply leverage to rotate the drive shaft (thus rotating the winch drum and tightening the wire).<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| [1e] a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction | The Accused Product includes a pawl coupled to the drive shaft, wherein the pawl engages the ratchet gear via the first moment arm being rotated in a first direction. As shown in Figure 11, the mounting plates are coupled to a pawl (via a clevis pin).<br><br><br><br>Figure 11: An annotated photograph of the Accused Product showing the mounting plates (purple), as well as how the pawl of the Accused Product is coupled to the mounting plates via a clevis pin (red).<br><br>Further, as shown in Figure 12 and discussed at paragraphs 57-58 and Illustrations 16-17 of the body of my declaration, when the first moment arm is rotated in a first direction, the mounting plates also rotate in a first direction, placing the pawl into engagement with the ratchet gear and allowing the ratchet gear to rotate the drive shaft. |

2606003.000 - 3327

12

| Claim 1 | Analysis of the Accused Product |
|---|---|
| |  Figure 12:        A schematic (created by me) showing the likely functionality of the Accused Product. At step (A) the device is at rest and the pawl is disengaged from the ratchet. At step (B) the user applies a rearwards force to the ratchet handle, rotating the mounting plate and causing the pawl to engage the ratchet gear. The user continues applying a rearwards force at step (C) causing the pawl to rotate the ratchet gear (and concomitantly the drive shaft to tighten the winch).<br><br>Accordingly, in this configuration, the pawl is coupled to the drive shaft  and engages the ratchet gear via the first moment arm being rotated in a first direction.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |
| [1e (cont)] and disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the | The Accused Product includes a pawl that disengages the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction.<br><br>As described above (and shown in Figure 12), a power stroke of the Accused Product takes place when the mounting plate (through the user applying a rearwards force to the ratchet handle) is rotated In the first direction, causing the pawl to engage and drive the ratchet gear (thus driving the drive shaft).<br><br>The instructions included on the Accused Product describe that, after a desired tension is reached, a user is to rotate the ratchet handle (and concomittantly the mounting plate) in a forwards direction (i.e. the opposite direction of backwards, or |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| first direction; and | the tightening direction) so as to disengage the pawl (ratchet dog) from the ratchet gear: "5. Place the ratchet handle (B) in forward rest position, ensuring the ratchet dog is disengaged." See Figure 13.<br><br><br><br>Figure 13:    An annotated photograph of user instructions found on the Accused Product. The highlighted portions instruct the user to move the ratchet handle (statically coupled to the mounting plate) in the forward direction (opposite to the tightening direction) to disengage the ratchet dog (pawl).<br><br>This disengagement of the pawl from the ratchet gear is shown in Figure 14. As can be seen from both the user instructions on the Accused Product (Figure 13), as well as the schematic of the likely functionality of the Accused Product (Figure 14), the pawl of the Accused Product is configured to disengage the ratchet gear via the first moment arm being rotated in a second direction opposite the first direction. This functionality is also discussed at paragraphs 57-58 and Illustrations 16-17 of the body of my declaration. |

2606003.000 - 3327

14

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | (A) (B) (C) Figure 14: A schematic (created by me) showing the likely functionality of the Accused Product. At step (A) the device is at the end of a tensioning power stroke and the pawl is engaged with the ratchet gear. The user moves the ratchet handle forward (opposite to the tensioning direction in Figure 12) so as to rotate the mounting plate forward. At step (B) the user continues applying a forward-rotating force until the mounting plate rotates forward sufficiently for the pawl to disengage from the ratchet gear (step (C)).<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |
| 1[f] a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the | The Accused Product includes a counterweight coupled to the drive shaft, the counterweight positioned to rotate the first moment arm in the second direction to disengage the pawl from the ratchet gear and return the first moment arm to a rest position.<br><br>As described in the main body of my declaration, the Accused Product includes what appears to be a counterweight welded between the mounting plates, also see Figure 15. |

2606003.000 - 3327

| Claim 1 | Analysis of the Accused Product |
|---|---|
| ratchet gear and return the first moment arm to a rest position. | <br><br>Figure 15:    Annotated photographs of the Accused Product showing a counterweight (white) coupled to the mounting plates (purple).<br><br>As discussed above, when the Accused Product is in a configuration where the first moment arm and mounting plates are rotated backwards such that the pawl engages the ratchet gear (and is thus coupled to the drive shaft) the counterweight (welded to the mounting plates) would also be coupled to the drive shaft, see Figure 16. Accordingly, the Accused Product includes a counterweight coupled to the drive shaft when the pawl is engaged with the ratchet gear. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| |  Figure 16: A schematic showing the likely configuration of the Accused Product when the ratchet handle (first moment arm) is rotated such that the pawl is engaged with the ratchet gear, which is also coupled with the drive shaft. As is shown from the red arrows, in this configuration, the first moment arm is rotationally coupled (via the mounting plate, pawl, and ratchet gear) with the drive shaft.<br><br>Furthermore, as described at paragraphs 57-58 and Illustrations 16-17 of the body of my declaration, when the mounting plates and first moment arm are rotated backwards and released by a user, the configuration of this counterweight in relation to the pivot axis of the mounting plates and first moment arm will cause the mounting plates and first moment to rotate forward. When the mounting plates and first moment arm rotate forward, the pawl will disengage from the ratchet gear. This motion will continue until the counterweight and mounting plate/moment arm system reaches equilibrium (or a rest position). This sequence of actions is shown in Figure 17. |

| Claim 1 | Analysis of the Accused Product |
|---|---|
| | <br><br>Figure 17:    A schematic (created by me) showing the action of the Accused Product due to the counterweight coupled to the mounting plates. When the device has ratchet handle has been rotated backwards (during a power stroke), and then released by the user, the counterweight will act to rotate the mounting plates and first moment arm forward (step A). The presence of the counterweight will continue to cause forwards rotation of the mounting plates and first moment arm (step B) until the counterweight and the mounting plate/first moment arm system has reached equilibrium about the pivot point, or a rest position.<br><br>In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |

2606003.000 - 3327

18

2606003.000 - 3327

19

| Claim 3 | Analysis of the Accused Product |
|---|---|
| The winch apparatus of claim 1, further comprising a second moment arm coupled to the drive shaft offset from the first moment arm and configured to provide leverage for rotating the drive shaft. | The Accused Product includes each and every limitation of claim 1 of the '753 Patent, see above analysis.<br><br>Furthermore, the Accused Product also includes a second moment arm coupled to the mounting plate at or near the same location as the first moment arm, see Figure 18.  As can also be seen from Figure 18, the second moment arm is offset from the first moment arm by what appears to be approximately 120°.<br><br><br><br>Figure 18:   An annotated photograph of the Accused Product showing the first and second moment arms, both coupled to the mounting plates and offset from each other.<br><br>As shown in the analysis at paragraphs 57-58 and Illustrations 16-17 of the body of my declaration, this mounting plate is, in turn, coupled to (and configured to rotate) a drive shaft when a pawl (disposed on the mounting plate) is engaged with the ratchet gear. This configuration is shown in Figure 19 and discussed below. |

2606003.000 - 3327

20



Figure 19:    A schematic (created by me) showing the likely configuration of the Accused Product when the ratchet handle (first moment arm) is rotated such that the pawl is engaged with the ratchet gear, which is also coupled with the drive shaft. As is shown from the red arrows, in this configuration, the second moment arm is rotationally coupled (via the mounting plate, pawl, and ratchet gear) with the drive shaft.

As can be seen in Figure 18, the second arm of the Accused Product is coupled to both of the mounting plates of the Accused Product and, when in the configuration shown in Figure 8, a user could apply a tensioning force on the first moment arm with their hand and applying a tensioning force on the second moment arm with their foot. The combination of these forces along the same axis of rotation would result in a torque being applied to rotate the drive shaft (i.e. provide leverage for rotation), via the mounting plates coupling with the pawl engaged with the ratchet gear, the ratchet gear in turn coupled to the shaft.

Accordingly, the second moment arm is configured to provide leverage for rotating the drive shaft.

| | In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information. |

| Claim 4 | Analysis of the Accused Product |
|---|---|
| The winch apparatus of claim 1, further comprising a stop pin coupled to the winch housing positioned to limit the rotational motion of the first moment arm. | The Accused Product includes each and every limitation of claim 1 of the '753 Patent, see above analysis.<br><br>As discussed in the main body of my declaration (see paragraph 56 and Illustration 15) and shown below in Figure 20, the Accused Product comprises a stop pin coupled to the winch housing.<br><br><br><br>Figure 20:    An annotated photograph of the Accused Product showing the stop pin (light green) coupled to the winch housing. As can be seen, the stop pin extends through slots defined in the mounting plates.<br><br>As can also be seen in Figure 20, the stop pin of the Accused Prodcut extends through a pair of slots defined in the mounting plates of the Accused Product. As the mounting plate rotate during operation the slots will rotate with, and eventaully contact the stop pin, thus preventing further rotation of the mounting plates; as the first moment arm is statically coupled to the mounting plates, when the mounting plates are prevented from rotating, so is the first moment arm. A schematic of this behavior is shown in Figure 21. |



Figure 21:    A schematic (created by me) showing the relative motion of the stop pin and slots in the mounting plates of the Accused Product during a power stroke. At (A) the stop pin is at a terminal end of the slot corresponding to the Accused Product being in a rest position. As the user provides leverage to rotate the mounting plate and first moment arm (B) the slot in the mounting plate rotates with respect to the stop pin. At (C) the stop pin reaches the end of the slot in the mounting plate, contacting the end of the slot and preventing further rotation of the mounting plate and the first moment arm.

In my opinion, a person of ordinary skill in the art would understand that the Accused Product satisfies this limitation based on this information.

2606003.000 - 3327

24